Azar Mouzari, SBN 263461
Nilofar Nouri, SBN 311871
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
Tel:  310-858-5567  Fax: 424-286-0963
Email: azar@bhtrialattorneys.com
Email: nilofar@bhtrialattorneys.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HERNANDEZ, an individual; MIRANDA SACHARIN, an individual; FATEMEH KOOHPAI, an individual; JUDITH NIKKI MCDONNELL, an individual; POLLY KO, an individual; REGINA STELLA TANGCO, an individual; TERESA CERVANTES, an individual; VICTOR WOLFE, an individual, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>LG ELECTRONICS U.S.A., INC., a Delaware Corporation; SEARS, ROEBUCK AND CO., a New York Corporation; COSTCO WHOLESALE CORPORATION, a Washington Company; LOWE'S COMPANIES, INC., a North Carolina Corporation; LOWE'S HOME CENTERS, LLC, a North Carolina Limited Liability Company; and BEST BUY CO., INC., a Minnesota Corporation, BEST BUY STORES, L.P. and DOES 1-10, inclusive,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES [CLASS-ACTION]**<br><br>**(1) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**<br><br>**(2) BREACH OF IMPLIED WARRANTY IN VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**<br><br>**(3) VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**<br><br>**(4) VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT ("WCPA")**<br><br>**(5) VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**<br><br>**(6) VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION LAW**<br><br>**(7) FRAUDULENT CONCEALMENT**<br><br>**(8) NEGLIGENT MISREPRESENTATION**<br><br>**(9) VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE ("UCL")**<br><br>**(10) UNJUST ENRICHMENT** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………......….…..2

INTRODUCTION…………………………………………………………….…...3

PARTIES………………………………………………………………….……....4

      I.     Plaintiffs……………………………………………….……..4

      II.    Defendant…………………………………………………….5

JURISDICTION AND VENUE………………………………………………….6

FACTUAL ALLEGATIONS…………………………………….……….…...…..7

CLASS ACTION ALLEGATIONS…………………………………………...…20

TOLLING OF THE STATUTE OF LIMITATIONS…………………………….24

CAUSES OF ACTION………………………………………………….….….…25

    COUNT I: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY…..25

    COUNT II: BREACH OF IMPLIED WARRANTY IN VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT……………………………..27

    COUNT III: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT…...28

    COUNT IV: VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT ("WCPA")…………………………………………………………………29

    COUNT V: VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349…………………………………………………………………31

    COUNT VI: VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION LAW……………………………………………………………32

    COUNT VII: FRAUDULENT CONCEALMENT……………………………….33

    COUNT VIII: NEGLIGENT MISREPRESENTATION……………………...…..35

    COUNT IX: VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE SECTIONS 17200 ET SEQ. ("UCL")……………………………………………36

    COUNT X: UNJUST ENRICHMENT……………………………...……..40

PRAYER FOR RELIEF……………………………………………...……………41

JURY TRIAL DEMAND……………………………………………………….42

COME NOW Plaintiffs JOHN HERNANDEZ, an individual, MIRANDA SACHARIN, an individual, FATEMEH KOOHPAI, an individual, JUDITH NIKKI MCDONNELL, an individual, POLLY KO, an individual, REGINA STELLA TANGCO, an individual, TERESA CERVANTES, an individual, VICTOR WOLFE, an individual, and on behalf of all others similarly situated (collectively "Plaintiffs"), and through their counsel of record, Beverly Hills Trial Attorneys, P.C., file this class action complaint against LG ELECTRONICS U.S.A., INC. ("LG"), a Delaware Corporation, SEARS, ROEBUCK AND CO. ("Sears"), a New York Corporation, COSTCO WHOLESALE CORPORATION ("Costco"), a Washington Company, LOWE'S COMPANIES, INC., a North Carolina Corporation, LOWE'S HOME CENTERS, LLC, ("Lowe's") a North Carolina Limited Liability Company and BEST BUY CO., INC., a Minnesota Corporation, and BEST BUY STORES, L.P., a Virginia Partnership ("Best Buy") (collectively "Retail Defendants" or "Defendants"), and DOES 1-10, seeking damages and relief on behalf of themselves and for all others similarly situated for: breach of implied warranty, violation of the Magnuson-Moss Warranty Act, violation of the Washington Consumer Protection Act, Violation of New York general business law, violation of Massachusetts consumer protection law, fraudulent concealment, negligent misrepresentation, violation of California's Unfair Competition Law - *Business & Professions Code* sections 17200, *et seq*. ("UCL"), unjust enrichment, and related claims as stated herein as below.  Unless explicitly stated to the contrary, all allegations are based upon information and belief.

## INTRODUCTION

1.     This class action is brought on behalf of individuals who purchased Kenmore and LG refrigerators (the "Refrigerators") containing a defective linear compressor manufactured by LG Electronics U.S.A., Inc. ("LG") during the time period from January 1, 2018 to the present. Defendants LG, Sears, Costco, Lowe's and Best Buy designed, manufactured, promoted, distributed, and/or sold the Refrigerators, despite being aware of and having notice of the long history of the defective nature of the linear compressors contained in these Refrigerators.

2.     These Refrigerators have a latent defect which causes failure of the refrigerator's linear compressor—a central component responsible for cooling. The compressor defect renders the LG Refrigerators unable to perform their most basic function: cooling and preserving food and beverages. When the compressor defect manifests, the refrigerator warms and its contents spoil, unless they are moved to a working refrigerator or cooler. Although refrigerators last 13 years on

average, these Kenmore and LG Refrigerators have been failing within approximately 24-36 months.

3. LG previously has settled at least two class actions alleging its refrigerators are defective. The claims extinguished by the judgment in the latest case which settled is limited to those refrigerators manufactured up until December 31, 2017, which marks the end of the class period in that case. *See Final Approval Order and* Judgment, *Bentley v. LG Elecs. USA, Inc.*, No. 2:19-CV-13554-MCA-MAH (consolidated with Case Nos. 2:19-cv-15185-MCA-MAH, 2:19-cv-15826-MCA-MAH, and 2:20-cv-07652-MCA-MAH, ECF No. 68, ¶ 3 (D.N.J. December 18, 2020). Despite the fact that LG has faced multiple class action lawsuits with similar allegations regarding the defective nature of these refrigerators, Defendants have continued selling defective refrigerators that have failed at extremely high rates—a "pandemic," according to one news report.[1] Despite their knowledge of the compressor defect, Defendants have sold and continue to sell these defective Refrigerators without alerting purchasers to the problem.

4. Moreover, even when consumers have made warranty claims for malfunctioning Refrigerators, Defendants have not replaced them with working units or offered refunds. Instead, Defendants have attempted futile repairs or replaced defective compressors with other defective compressors—a practice that, for many, has resulted in repeated refrigerator failures. Consumers who bought these Refrigerators have been forced to live out of coolers, have had to prematurely buy replacement refrigerators, or have had to pay hefty amounts of money for replacement of the compressors which in some instances have again failed after only a few months of being replaced.

5. The compressor defect existed in each Refrigerator at the time it was sold. Plaintiffs were deprived of the benefit of their bargain and bring this action to obtain relief for themselves and others who purchased a Kenmore or LG Refrigerator in the United States of America.

## **PARTIES**

## **PLAINTIFFS**

6. At all relevant times, Plaintiffs Hernandez, Ko, Tangco, Cervantes and Wolfe have been citizens of the State of California.

7. At all relevant times, Plaintiff Sacharin has been a citizen of the State of Massachusetts.

---

[1] *See* https://kutv.com/news/get-gephardt/pandemic-of-dying-lg-fridges-has-log-jammed-repair-workers (last visited November 14, 2022).

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

8.      At all relevant times, Plaintiff Koohpai has been a citizen of the State of Washington.

9.      At all relevant times, Plaintiff McDonnell has been a citizen of the State of New York.

10.     Plaintiffs purchased and used Kenmore and LG branded refrigerators because they believed these refrigerators to be high quality and long-lasting refrigerators that were in the condition marketed/advertised.  At no time during their purchase and use of these refrigerators were Plaintiffs aware that Defendants' claims with regards to the refrigerators manufactured and sold to them were false and misleading, and that these products were actually defective refrigerators that would break down after a brief period of use.

11.     Plaintiffs would not have purchased these refrigerators, at times paying premium prices, had they known that these products were defective and would break down sometimes less than a year after being purchased for thousands of dollars.

**DEFENDANTS**

12.     Upon information and belief, Defendant LG Electronics U.S.A., Inc., the North American subsidiary of LG Electronics Inc., is incorporated under Delaware law and maintains its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

13.     Upon information and belief, Defendant Sears, Roebuck and Co., is incorporated under the laws of New York with its principal place of business located at 3333 Beverly Rd., Hoffman Estates, Illinois 60179.

14.     Upon information and belief, Defendant Costco Wholesale Corporation is incorporated under the laws of Washington with its principal place of business located at 999 Lake Drive, Issaquah, Washington 98027.

15.     Upon information and belief, Defendant Lowe's Companies, Inc. is incorporated under the laws of North Carolina with its principal place of business located at 1000 Lowe's Blvd., Mooresville, NY 28117-8520.

16.     Upon information and belief, Defendant Lowe's Home Centers, LLC is a limited liability company organized under the laws of North Carolina with its principal place of business located at 1000 Lowe's Blvd., Mooresville, NY 28117-8520.

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

17.     Upon information and belief, Defendant Best Buy Co., Inc. is incorporated under the laws of Minnesota and Best Buy Stores, L.P. is organized under the laws of Virginia, both with principal place of business located at 7601 Penn Avenue S., Richfield, Minnesota 55423.

18.     At relevant times, Defendants conducted regular and sustained business and engaged in substantial commerce and business activity in the State of California, which included but was not limited to selling, marketing and/or distributing LG manufactured refrigerators in the State of California and Los Angeles County.

19.     At all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America including the State of California and including Los Angeles County, as Defendants derived substantial revenue therefrom.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiffs and Defendants are domiciled in different states.

21.     The Court has personal jurisdiction over all Defendants because they each have sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper. LG intentionally avails itself of markets within California through its promotion, distribution, and sale of its products in this State. Similarly, the Retail Defendants have sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper as they are retails stores, and each have tens and even. hundreds of physical stores throughout the state of California.

22.     Plaintiffs Hernandez, Ko, Tangco, Cervantes and Wolfe reside and purchased an LG Refrigerator in California. Plaintiffs each used their LG Refrigerators in California, experienced the defect in California, and sought repairs in California.

23.     Plaintiff Sacharin resides and purchased an LG Refrigerator in Massachusetts, and used her LG Refrigerator in Massachusetts, experienced the defect in Massachusetts, and sought repairs in Massachusetts.

24.     Plaintiff Koohpai resides and purchased an LG Refrigerator in Washington State, and used her LG Refrigerator in Washington State, experienced the defect in Washington State, and sought repairs in Washington State.

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

25.     Plaintiff McDonnell resides and purchased an LG Refrigerator in New York, and used her LG Refrigerator in New York, experienced the defect in New York, and sought repairs in New York.

26.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

27.     Refrigerators, an essential part of the modern American household, can be found in 99.9% of homes. Refrigerators allow people to preserve their food and reduce the risk of food-borne disease.

28.     According to the National Association of Home Builders, the average life span of a refrigerator is approximately 13 years, while most refrigerators are designed to last between 10 to 20 years. LG has represented that its refrigerators have a 20-year life span.

29.     The industry standard is that a refrigerator should not have any major failures within the first 10 years of use.

**A.     The Refrigerators and Representations About Them**

30.     LG designs, manufactures, distributes, and sells refrigerators throughout the country. These Refrigerators are available for purchase in large retail stores such as Sears, Costco, Lowe's, and Best Buy as well as in smaller appliance stores and online. The Manufacturer's Suggested Retail Price for these Refrigerators ranges from approximately $1,800 to $4,500, with most models falling in the $1,800 to $3,500 MSRP range.

31.     Kenmore is an affiliate of Sears and does not manufacture its own appliances. Instead, Kenmore is a brand and its appliances, including the Refrigerators at issue, are manufactured by other appliance manufacturers such as LG and sold under the brand name Kenmore through Sears as well as other retail stores including Costco and Lowe's.[2]

32.     A compressor is the central component—the "engine"—of any refrigerator. A compressor contains a motor and pump that move refrigerant, which generates cold air, throughout

---

[2] *See* https://www.kenmore.com/where-to-buy (last visited November 14, 2022).

the refrigerator. Typically, sensors in a refrigerator detect temperature increases and activate the compressor, which releases refrigerant in gas form.

33.     After being released from the compressor, refrigerant flows through the refrigerator's condenser. The condenser condenses the vaporized refrigerant to liquid form, releasing heat in the process. The liquid refrigerant then flows through the refrigerator's evaporator, which draws heat from the regions of the refrigerator that need to be cooled, causing the refrigerant to vaporize. The vaporized refrigerant then returns to the compressor, and the cycle repeats.

34.     LG developed its proprietary linear compressor in the early 2000s. LG designed the linear compressor to be an energy-efficient replacement for the reciprocating compressor used in many other refrigerators. Instead of the traditional, less efficient crank mechanism, which converts rotary motion into reciprocating motion, LG's linear compressor uses a magnet and springs to drive a piston motor.

35.     LG's proprietary linear compressor refrigerators are important to its business and are featured prominently in its public representations, including in advertisements and marketing materials. LG represented in a November 24, 2014 press release that 10 million LG Refrigerators had been sold since 2001. According to LG:

> In 2001, LG introduced the world's first refrigerator powered by an Inverter Linear Compressor, continuing to improve the technology ever since LG's technology employs a straight piston drive instead of a conventional reciprocating drive, resulting in less internal friction than conventional motors. This increases the refrigerator's reliability and durability while also generating less noise while running. LG refrigerators featuring Inverter Linear Compressor technology proved to be approximately 32 percent more energy efficient than those equipped with conventional reciprocating compressors, contributing significantly to lower electricity bills.

36.     In the same release, LG touted that the LG Refrigerators are "up to 25 percent quieter" than refrigerators powered by reciprocating compressors. LG also touted the linear compressor's reliability, stating that the component "reduced internal friction by 64.2 percent,

causing less wear to the refrigerator and helping it to achieve a 20 year life-span, a first in the industry."

37.    LG singled out the linear compressor in its public statements about its refrigerators: "LG is so confident in its technology that the Inverter Linear Compressor has been covered under a 10-year warranty since 2009, a first in the industry."

38.    LG issued another press release on March 21, 2017 to mark the sale of its "15th million refrigerator worldwide powered by its proprietary Inverter Linear Compressor"—which LG characterized as "the appliance division's most successful core technology." In the same release, LG projected that it would sell 4 million more units in 2017, or "an average of seven refrigerators sold every minute." As in the 2014 press release, LG cited statistics concerning the linear compressor's performance, claiming that it "delivers 55 percent better energy efficiency and 15 percent less noise compared [to] its first-generation compressor."

39.    Similar statements appear on the LG website's refrigerator home page and product pages such as this one: "The cutting edge design and performance of LG Refrigerators is unmatched. Designed to last long, store more, and add style to your home, an LG Refrigerator keeps food cold and fresh in a space-saving and stylish unit."[3]

40.    Statements approved by LG and made by its authorized resellers also advertised the linear compressors and the LG Refrigerators' overall functionality. These statements include the following:

- BEST BUY – "Achieve the right chill. Vents and a linear compressor will keep temperature and humidity conditions at ideal levels inside the fridge."
- LOWES – "Smart Cooling® system is designed to maintain superior conditions within the refrigerator. The Linear Compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer."

---

[3] *See* https://www.lg.com/us/refrigerators (last visited November 14, 2022).

**B.      The Defect Manifests in the Kenmore and LG Refrigerators**

41.      LG's linear compressors have caused consumers problems for many years. When an LG compressor fails, the refrigerator warms and the perishables within it spoil. In fact, as a result of this spoilation, customers have lost thousands of dollars worth of foods/drinks.

42.      LG's linear compressor contains an intake valve—where refrigerant enters—and a discharge valve—where refrigerant exists. These valves are responsible for regulating and controlling the flow of refrigerant through the compressor.

43.      LG's linear compressor works in close connection with another important component, called the evaporator. The evaporator is where heat transfer takes place. Together, the compressor and evaporator are essential components for cooling. Before refrigerant enters the compressor, it flows through the evaporator. The evaporator absorbs heat from the interior of the refrigerator and into the refrigeration system. This process causes the refrigerant to vaporize, and the vaporized refrigerant is then sent through the compressor.

44.      As used herein, "compressor defect" refers to the defective nature of the linear compressor and related parts, including the evaporator, in the Refrigerators.

45.      The tubing of the evaporator in the Refrigerators is defective and prone to corrosion and pitting from ordinary usage. Pin-holes develop in the evaporator tubing, which cause leaks and allow atmospheric air to enter. Because of the air leakage, the refrigerant that passes from the evaporator to the condenser generates excess pressure that stresses the compressor and contaminates oil in the compressor.

46.      The compressor's components are defective and incapable of withstanding the additional pressure, resulting in failure. Typically the weakest component of the compressor—the discharge valve—is the first to fail.

47.      Once the compressor in a Kenmore or LG Refrigerator fails, even if a repair is performed, the refrigerator remains substantially certain to fail again within a few years.

48.      LG's linear compressors are thus inherently defective—and the defect inevitably manifests. Kenmore and LG nevertheless have responded to warranty claims by attempting futile

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

repairs, and at times failing to even render repairs by ignoring customers' complaints or claiming that the warranty period has passed. As a result, consumers have been left without a refrigerator for weeks while they wait for service, and many have experienced repeated failures, forcing them to dispose of their new refrigerators or spend hundreds, if not thousands, on repair costs.

### C.    Defendants' Knowledge of the Compressor Defect.

49.    Many complaints of malfunctioning refrigerators, dating back years, have been made directly to LG, Sears and all other retailers on their websites and on social media pages that Defendants regularly monitor. In fact, aggrieved consumers formed a Facebook group called "LG Refrigerators – Life is NOT good" which has over 2,100 followers and contains numerous accounts of consumers who experience LG and Kenmore Refrigerator compressor failure. Below, are just a few examples of hundreds of said accounts:

 **LG Refrigerators - LIFE is NOT GOOD**
October 3 · 🌐                                                          • • •

$3500 to purchase; 21/2 yrs later, $15 for Best Buy to haul away and replace. 10 yr warranty on a compressor plus a 5 yr extended warranty doesn't help when you can't get the part or anyone to work on them! Now isn't this great advertising for what Not to Buy!  LG Life is NOT GOOD

 22                                        16 Comments  1 Share

 **LG Refrigerators - LIFE is NOT GOOD**
September 20 · 🌐                                                       • • •

I work for an appliance repair business, one of a few that repairs LG refrigerators, Every other call I get is a customer with a non cooling refrigerator. If you have one and had no issues you are on borrowed time.

Hearing it directly from a repair business says a lot.  Just not enough for LG to do something about it.  #%*& LG

 22                                        11 Comments  1 Share



**LG Refrigerators - LIFE is NOT GOOD**
September 27 · 🌐                                                    •••

Good luck! We went four months without ours. We finally found someone to repair it after waiting on parts. Two weeks later it was out again. I will NEVER buy another LG product again!   Really LG, is this the best you can do? Apparently it is according to everyone else who posts on this site.

👍😢 27                                         14 Comments  1 Share

50.     Defendants have no doubt had exclusive and direct knowledge of the scale of the compressor problems from their communications with their complaining customers as well as with their authorized repair personnel, who have been inundated by repair requests for years.

51.     Moreover, multiple class action lawsuits have been filed since 2012 placed not just LG and Kenmore, but all Defendants on notice of the widespread failures of these Kenmore and LG refrigerators containing the defective compressors.

52.     Additionally, LG and Sears have gained direct knowledge of the compressor defects through their role as designer and manufacturer of the compressor products at issue.

### D.     Inadequate Warranty Service

53.     Many of the consumers who experienced the defect have voiced frustration with LG's warranty service or the warranty service of its authorized sellers and repair providers. Despite being aware of the defect, LG and Sears replace defective parts with defective parts, exposing customers to repeat failures.

54.     Defendants also require consumers to wait for overwhelmed repair providers to obtain a replacement compressor and attempt the repair. And any repair will be temporary, at best, because the replacement part is equally defective.

55.     Further, until 2018 LG required consumers, after the first year of ownership, to pay for the labor associated with replacing the defective compressor. LG covered only the cost of replacement parts. Such costs generally range from $200 to over $1,000. For LG Refrigerators purchased after January 1, 2018, LG covers parts for ten years and parts and labor for five years, however, despite these extended warranties, multiple customers have complained that Defendants have not repaired their Refrigerators.

56.     Regardless of whether LG and/or Sears pay some costs for some consumers, its warranty performance, and the warranty performance of its authorized agents, is deficient. Plaintiffs and class members uniformly overpaid for their Kenmore and LG Refrigerators because

of the defective compressor, and those who experienced the defect have been left without a refrigerator while waiting for LG and/or Sears to potentially diagnose the problem and arrange for repairs, though in many cases it fails to do so even if there is a "warranty" coverage. Moreover, customers have lost thousands of dollars in foods/drinks that have been spoiled as a result of these failing refrigerators.

57.     Additionally, Sears has used its deceptive conduct of continuing the sale of these faulty refrigerators to make additional money by taking advantage of its customers, who paid thousands of dollars for refrigerators they believed would last them years to come, by offering them and selling them its appliance insurance at the time that its technicians are requested by a customer. In fact, Sears deceives its customers by selling them refrigerators with faulty compressors, and then when the refrigerator breaks down a short time later, Sears offers its customers its appliance insurance which costs $49.99 a month and requires a commitment of at least one-year, and in return, if a customer signs up, gives them a $150.00 discount on repair costs that they have to pay to fix their refrigerators. Thus, many customers who are left with no choice but to pay for the repair costs of their refrigerators, agree to sign up for this "insurance" given that 1) they will receive a $150.00 discount off of their Kenmore and LG repair costs, and 2) many of these customers are, correctly, told by Sears' technicians that the newly installed compressor in the Kenmore and LG refrigerators may fail again after a short amount of time. Therefore, many of these customers sign up for this "appliance insurance" in order to protect themselves from the additional compressor failures that are no doubt going to happen in the future.

58.     To date, Defendants have not implemented an effective remedy for those who suffer the compressor defect. Defendants instead continue to advise such individuals to replace their defective compressors with other defective compressors.

**Plaintiff John Hernandez ("Hernandez")**

59.     Plaintiff Hernandez purchased a LG refrigerator from Lowe's in early 2019 (Model LSXS26386D/03 – Production Date: December 2018) in California.

60.     Before purchasing the refrigerator, Plaintiff Hernandez saw sales and marketing materials from both LG and Lowe's portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Plaintiff Hernandez was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Plaintiff Hernandez see any disclosure from either LG or Lowe's that the refrigerator is defective and prone to compressor failure.

61.     Less than three years later, in 2021, the refrigerator stopped cooling and approximately over a thousand dollars worth of foods/drinks were spoiled and had to be thrown out.

62.     After weeks of waiting and being without a refrigerator, Plaintiff Hernandez was advised by LG that his refrigerator's warranty will cover the cost of replacement of the linear compressor which he was told was faulty and was the reason for his refrigerator not cooling. Plaintiff Hernandez was not compensated for the approximately $1,500 worth of foods/drinks that were lost as a result of the compressor failure. Furthermore, Plaintiff Hernandez is aware that there is a high possibility that the compressor will again fail in the near future.

63.     Before purchasing his refrigerator and until it failed, Plaintiff Hernandez did not know that the LG Refrigerators suffer from the compressor defect. Had LG and/or Lowe's disclosed the defective nature of the LG Refrigerator prior to his purchase, on the product's packaging, in the accompanying brochures, in the marketing material Lowe's posts on its website/in stores or through sales associates, he would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price he did, or would have returned his LG Refrigerator for a refund during the return period allowed by Lowe's policies.

**Plaintiff Miranda Sacharin ("Sacharin")**

64.     Plaintiff Sacharin purchased a LG refrigerator from Best Buy in late 2019 (Model LRFXC2406S) in Massachusetts for $2,899.99, plus tax.

65.     Before purchasing the refrigerator, Plaintiff Sacharin saw sales and marketing materials from both LG and Best Buy portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Plaintiff Sacharin was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Plaintiff Sacharin see any disclosure from either LG or Best Buy that the refrigerator is defective and prone to compressor failure.

66.     Less than three years later, in 2022, the refrigerator for the second time gave error codes related to the compressor and stopped cooling. Despite having a full-time job, she has been on the phone for over eight hours over the span of three days, trying to get help from LG's customer service representatives. She was advised that no LG repairmen are available and she was provided numbers to other independent service companies, many of whom declined to service the refrigerator upon finding out that it is a LG branded refrigerator and the type of refrigerator she

has. This is the second time, there have been issues with her LG refrigerator's compressor and each time, hundreds, if not thousands of dollars worth of food have been spoiled and thrown out.

67.     Plaintiff Sacharin was advised by LG that her refrigerator's warranty will cover the cost of replacement of the linear compressor, however, she has had to pay out of pocket for various repairmen to inspect her unit as LG had no availability to send someone to fix her refrigerator. Furthermore, as the compressor has now failed on two occasions, Plaintiff is aware that there is a high possibility that the compressor will again fail in the near future.

68.     Before purchasing her refrigerator and until it failed, Plaintiff Sacharin did not know that the LG Refrigerators suffer from the compressor defect. Had LG and/or Best Buy disclosed the defective nature of the LG Refrigerator prior to her purchase, on the product's packaging, in the accompanying brochures, in the marketing material Best Buy posts on its website/in stores or through sales associates, she would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price she did, or would have returned her LG Refrigerator for a refund during the return period allowed by Best Buy's policies.

**Plaintiff Fatemeh Koohpai ("Koohpai")**

69.     Plaintiff Koohpai purchased a LG refrigerator from Costco in November 2018 (Model LMXC23796S/00 – Production Date: September 2018) in Washington for $2,899.99, plus tax.

70.     Before purchasing the refrigerator, Plaintiff Koohpai saw sales and marketing materials from both LG and Costco portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Plaintiff Koohpai was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Plaintiff Koohpai see any disclosure from either LG or Costco that the refrigerator is defective and prone to compressor failure.

71.     Two and half years later, in 2021, the refrigerator stopped cooling overnight, resulting in thousands of dollars worth of food being spoiled and thrown out, costing her hundreds, if not thousands, of dollars. Plaintiff Koohpai called LG's customer service every week for over two months in order to receive assistance and reimbursement for her refrigerator and each time she was asked to send her refrigerator's sticker and her purchase receipt so that a request for reimbursement could be submitted. Plaintiff Koohpai submitted the requested sticker and receipt over five times and was eventually advised that the request for reimbursement had been submitted on her behalf.  Each time she requested a repairman be sent to repair her refrigerator, she was told

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

that LG does not have any available repair technicians in her area. On September 20, 2021, Plaintiff was told that she should wait for LG's response with regards to a request for a replacement or refund. As she did not hear anything back, she followed up with LG on September 22, 25, 29, 30 and October 1, and each time she was on hold for over an hour only to be told that the Return Authorization Department had not received her request from customer service.

72.     Finally, after over two and half months and over tens of hours wasted over the phone as a result of constantly having to call LG to get a response to their requests for repair/refund, Plaintiff Koohpai was advised that a LG technician would come out to her house on October 5, 2021 between the hours of 8 a.m. and 12 p.m. to repair her refrigerator. Upon arriving, however, the LG technician told Plaintiff that he is sick, implying that he could potentially have been infected with COVID-19, and told Plaintiff that he could not repair her refrigerator/freezer at this time.

73.     Given this interaction and the fact that after three months of calling and requesting service, no such service was provided, Plaintiff again reached out to LG and requested that a refund be issued given that as a result of her experience, Plaintiff was left feeling very disappointed, frustrated and dissatisfied with LG.

74.     Despite being provided multiple case numbers by LG, having complained for over three months through tens of telephone calls and text messages, no repair technician was sent again by LG nor was Plaintiff provided a replacement or a refund for her refrigerator unit.

75.     Moreover, Plaintiff Koohpai was told by Costco that her unit was no longer under warranty at the time that it broke down and refused to provide her a replacement or refund. Thus Plaintiff has been unable to use her refrigerator since July 2021 despite having paid premium prices for it.

76.     Before purchasing her refrigerator and until it failed, Plaintiff Koohpai did not know that the LG Refrigerators suffer from the compressor defect. Had LG and/or Costco disclosed the defective nature of the LG Refrigerator prior to her purchase, on the product's packaging, in the accompanying brochures, in the marketing material Costco posts on its website/in stores or through sales associates, she would not have bought an LG Refrigerator, would not have bought an LG Refrigerator at the price she did, or would have returned her LG Refrigerator for a refund during the return period allowed by Costco's policies.

**Plaintiff Judith Nikki McDonnell ("McDonnell")**

77.     Plaintiff McDonnel purchased a Kenmore refrigerator from Sears in August 2021 (Model 111.60512912) in New York.

78.     Before purchasing the refrigerator, Plaintiff McDonnell saw sales and marketing materials from both Sears and Kenmore portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Plaintiff McDonnell was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Plaintiff McDonnell see any disclosure from either Sears or Kenmore that the refrigerator is defective and prone to compressor failure.

79.     Less than one year later, in June 2022, the refrigerator stopped cooling and Plaintiff's foods/drinks began spoiling and having to be thrown out, costing her hundreds of dollars. When Plaintiff called repair technician and provided the model number, they knew right away that the problem was the faulty compressor. She was advised by Sears that the repair and replacement of the compressor was only half covered by warranty, forcing her to pay close to $400.00 for the replacement of the compressor and repair of her one-year old refrigerator.

80.     Before purchasing her refrigerator and until it failed, Plaintiff McDonnell did not know that Kenmore branded Sears Refrigerators suffer from compressor defects. Had Kenmore and/or Sears disclosed the defective nature of these Kenmore refrigerators prior to her purchase, on the product's packaging, in the accompanying brochures, in the marketing material Sears posts on its website/in stores or through sales associates, she would not have bought a Kenmore Refrigerator, would not have bought a Kenmore Refrigerator at the price she did, or would have returned her Kenmore Refrigerator for a refund during the return period allowed by Sears' policies.

**Plaintiff Polly Ko ("Ko")**

81.     Plaintiff Ko purchased a Kenmore Elite refrigerator from Sears in mid-2018 (Model 795.51823.411 – Production Date: June 2018) in California for approximately $1,300.00.

82.     Before purchasing the refrigerator, Plaintiff Ko saw sales and marketing materials from both Sears and Kenmore portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Plaintiff Ko was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Plaintiff Ko see any disclosure from either Sears or Kenmore that the refrigerator is defective and prone to compressor failure.

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

83.     In July 2022, the refrigerator stopped cooling and Plaintiff's foods/drinks began spoiling and having to be thrown out, costing her hundreds of dollars. When Plaintiff called Sears and Kenmore, she was advised that a repair technician would be sent out but that she would have to pay for all labor costs out of pocket. Thereafter, she was advised that the linear compressor of the refrigerator unit had to be replaced and that she would have to pay approximately $600.00 in labor costs. Plaintiff paid $600.00 and her refrigerator's compressor was repaired.

84.     In November 2022, however, the refrigerator/freezer again stopped cooling causing her to lose hundreds of dollars in food yet again. Plaintiff contacted Sears who charged her $80.00 to send a technician. The technician has advised that the linear compressor will need to be repaired/replaced again and that it would cost Plaintiff another $400.00 as the problem occurred after 90 days of the initial repair in July 2022. This has caused Plaintiff a great amount of distress and frustration.

85.     Before purchasing her refrigerator and until it failed, Plaintiff Ko did not know that Kenmore branded Sears Refrigerators suffer from compressor defects. Had Kenmore and/or Sears disclosed the defective nature of these Kenmore refrigerators prior to her purchase, on the product's packaging, in the accompanying brochures, in the marketing material Sears posts on its website/in stores or through sales associates, she would not have bought a Kenmore Refrigerator, would not have bought a Kenmore Refrigerator at the price she did, or would have returned her Kenmore Refrigerator for a refund during the return period allowed by Sears' policies.

**Plaintiff Regina Stella Tangco ("Tangco")**

86.     Plaintiff Tangco purchased a Kenmore Elite refrigerator from Sears in December 2018 (Model 795.74077.610 – Production Date: October 2018) in California for approximately $2,500.00.

87.     Before purchasing the refrigerator, Plaintiff Tangco saw sales and marketing materials from both Sears and Kenmore portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Plaintiff Tangco was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Plaintiff Tangco see any disclosure from either Sears or Kenmore that the refrigerator is defective and prone to compressor failure.

88.     In July 2022, the refrigerator and freezer stopped cooling and Plaintiff's foods/drinks began spoiling and having to be thrown out, costing her hundreds of dollars. When

Plaintiff called Sears and Kenmore, she was advised that a repair technician would be sent out. Thereafter, she was advised that the linear compressor of the refrigerator unit had to be replaced and that she would have to pay approximately $600.00 in costs. The Sears technician then told her that if she signed up for an appliance insurance with Sears which would cost $49.99 a month for a minimum of one-year, she would receive a $150.00 discount from the repair costs. Given the discount she would receive as well as because Plaintiff is afraid that her refrigerator's compressor will fail again, she agreed to sign up for the insurance through Sears.

89.     Before purchasing her refrigerator and until it failed, Plaintiff Tangco did not know that Kenmore branded Sears Refrigerators suffer from compressor defects. Had Kenmore and/or Sears disclosed the defective nature of these Kenmore refrigerators prior to her purchase, on the product's packaging, in the accompanying brochures, in the marketing material Sears posts on its website/in stores or through sales associates, she would not have bought a Kenmore Refrigerator, would not have bought a Kenmore Refrigerator at the price she did, or would have returned her Kenmore Refrigerator for a refund during the return period allowed by Sears' policies.

**Plaintiff Teresa Cervantes ("Cervantes")**

90.     Plaintiff Cervantes purchased a Kenmore Elite refrigerator from Sears in October 2018 (Model 795.51823.411 – Production Date: June 2018) in California for approximately $1,300.00.

91.     Before purchasing the refrigerator, Plaintiff Cervantes saw sales and marketing materials from both Sears and Kenmore portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Plaintiff Cervantes was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Plaintiff Cervantes see any disclosure from either Sears or Kenmore that the refrigerator is defective and prone to compressor failure.

92.     In July 2022, the refrigerator stopped cooling and Plaintiff's foods/drinks began spoiling and having to be thrown out, costing her hundreds of dollars. When Plaintiff called Sears and Kenmore, she was advised that a repair technician would be sent out. Thereafter, once the technician came out, she was advised that the linear compressor of the refrigerator unit had to be replaced and that she would have to pay approximately $700.00 out of pocket, which she did.

93.     Before purchasing her refrigerator and until it failed, Plaintiff Cervantes did

not know that Kenmore branded Sears Refrigerators suffer from compressor defects. Had Kenmore and/or Sears disclosed the defective nature of these Kenmore refrigerators prior to her purchase, on the product's packaging, in the accompanying brochures, in the marketing material Sears posts on its website/in stores or through sales associates, she would not have bought a Kenmore Refrigerator, would not have bought a Kenmore Refrigerator at the price she did, or would have returned her Kenmore Refrigerator for a refund during the return period allowed by Sears' policies.

**Plaintiff Victor Wolfe ("Wolfe")**

94.     Plaintiff Wolfe purchased a Kenmore Elite refrigerator from Sears in June 2018 (Model 795.74077.610 – Production Date: October 2018) in California for approximately $3,000.

95.     Before purchasing the refrigerator, Plaintiff Wolfe saw sales and marketing materials from both Sears and Kenmore portraying the refrigerator as high quality and fully functional. After purchasing the refrigerator, but before using it, Plaintiff Wolfe was provided with additional information about the unit, and its compressor, in product brochures and owners' manuals. At no point before using the refrigerator did Plaintiff Wolfe see any disclosure from either Sears or Kenmore that the refrigerator is defective and prone to compressor failure.

96.     In July 2022, the refrigerator stopped cooling and Plaintiff's foods/drinks began spoiling and having to be thrown out, costing hundreds of dollars. When Plaintiff called Sears and Kenmore, he was advised that a repair technician would be sent out. Thereafter, once the technician came out, he was advised that the linear compressor of the refrigerator unit had to be replaced and was provided an estimate of approximately $1300.00, the price of some of Kenmore's new refrigerators, for the total cost of repair and replacement of his refrigerator/freezer.

97.     Before purchasing his refrigerator and until it failed, Plaintiff Wolfe did not know that Kenmore branded Sears Refrigerators suffer from compressor defects. Had Kenmore and/or Sears disclosed the defective nature of these Kenmore refrigerators prior to his purchase, on the product's packaging, in the accompanying brochures, in the marketing material Sears posts on its website/in stores or through sales associates, he would not have bought a Kenmore Refrigerator, would not have bought a Kenmore Refrigerator at the price he did, or would have returned his Kenmore Refrigerator for a refund during the return period allowed by Sears' policies.

## CLASS ACTION ALLEGATIONS

98.    As further stated herein as to the following claims, Plaintiffs bring their causes of action on behalf of themselves and all others similarly situated, and certification of this class action is appropriate under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

99.    Plaintiffs seek certification of the following **Nationwide Class**: All persons in the United States who purchased, other than for resale, a Kenmore or a LG Refrigerator from Sears, LG or any other authorized retailers, including but not limited to Best Buy, Costco or Lowe's which was manufactured between January 1, 2018 and the present.

100.    In addition and/or in the alternative, Plaintiffs seek certification of the following State class:

**California Class**: All persons in California who purchased, other than for resale, a Kenmore or a LG Refrigerator from Sears, LG or its authorized retailers, including but not limited to Best Buy, Costco or Lowe's which was manufactured between January 1, 2018 and the present.

**Washington Class**: All persons in Washington who purchased, other than for resale, a Kenmore or a LG Refrigerator from Sears, LG or its authorized retailers, including but not limited to Best Buy, Costco or Lowe's which was manufactured between January 1, 2018 and the present.

**Massachusetts Class**: All persons in Massachusetts who purchased, other than for resale, a Kenmore or a LG Refrigerator from Sears, LG or its authorized retailers, including but not limited to Best Buy, Costco or Lowe's which was manufactured between January 1, 2018 and the present.

**New York Class**: All persons in New York who purchased, other than for resale,  a Kenmore or a LG Refrigerator from Sears, LG or its authorized retailers, including but not limited to Best Buy, Costco or Lowe's which was manufactured between January 1, 2018 and the present.

101.    Excluded from the Class are Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of Defendants.  Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## A.     Commonality

102.  There are questions of law and fact that are common to the claims of Plaintiffs. Among these common questions are the following:

a. Whether the LG Refrigerators were defective at the time of sale;

b. Whether and to what extent the compressor defect impairs the value of the LG Refrigerators;

c. Whether Defendants knew of the compressor defect but continued to promote the LG Refrigerators, including their linear compressors, without disclosing the defect or its consequences to consumers;

d. Whether a reasonable consumer would consider the compressor defect and its consequences important to the decision whether to purchase an LG Refrigerator;

e. Whether Defendants breached implied warranties connected with the LG Refrigerators;

f. Whether Defendants' representations and omissions relating to the LG Refrigerators and linear compressors were likely to deceive a reasonable consumer;

g. Whether Defendants' representations and/or omissions regarding their refrigerators and/or refrigerators they sold were fraudulent;

h. Whether Defendants violated California's Unfair Competition Law by misrepresenting material information to consumers regarding their refrigerators;

i. Whether Defendants violated California's Unfair Competition Law by concealing material information from consumers regarding their refrigerators and/or refrigerators they sold;

j. Whether Defendants violated California's Unfair Competition Law by using uniform, deceptive business practices;

k. Whether Defendants' conduct violates any of the applicable state or territorial consumer protection statutes;

l. Whether Defendant was unjustly enriched as a result of its conduct;

m. Whether Class Members have been injured by Defendant's conduct;

n. Whether, and to what extent, equitable relief and/or other relief should be imposed on Defendant, and, if so, the nature of such relief; and

o. Whether Defendants' conduct as set forth above injured consumers, and if so, the extent of the injury and damages

//

**B.      Numerosity**

p.   The members of the Class are so numerous that separate joinder of each member is impracticable.   Plaintiffs are informed and believe that the members of the Class would easily exceed at least thousands of individuals.

**C.      Typicality**

q. Plaintiffs' claims are typical of the claims of the Class since each of the Plaintiffs was subject to the same or similar practices by Defendant, as was each member of the Class. Plaintiffs and Class members were injured in the same manner by purchasing LG refrigerators. Plaintiffs and all Class members have the same claims against Defendants relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiffs and all Class members sustained monetary and economic injuries arising out of Defendants' conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

r. The core issues which predominate over all the other issues in the litigation involve Defendants' unfair, unlawful, negligent and fraudulent practices discussed above.

s. Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D.      Adequacy of Representation**

t. Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class.  There is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

u.   To prosecute this case, Plaintiffs have chosen the law firm of Beverly Hills Trial Attorneys, P.C., whose attorneys have represented plaintiffs in class actions and as private attorneys general in bringing public interest actions.

**E.      Superiority**

v. The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class.  All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" representations by Defendants and other acts constituting negligence, unfair competition under the UCL, and fraudulent misrepresentations.

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

w. Common issues predominate when as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

x. As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as in the case at bar, common questions are held to predominate over individual questions.

y. Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failures by Defendants, the predominance requirement needed for class action treatment is satisfied.

z. A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

    i. Joinder of all class members would create extreme hardship and inconvenience for the affected consumers because of their immense geographical dispersion.

    ii. It is highly unlikely that individual Plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or uneducated about Defendants' actions to bring separate actions;

    iii. The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

    iv. Individual suits would not be cost effective. The costs to individual Plaintiffs in a collective action are lowered through the pooling or resources and by limiting the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity; and

    v. The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

Defendants have also acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

**TOLLING OF THE STATUTE OF LIMITATIONS**

103. At all relevant times, Defendants knew that the subject Refrigerators were defective and knew that Plaintiffs and class members did not have such knowledge. Despite reasonable diligence on their part, Plaintiffs and class members were kept ignorant by Defendants of the factual bases for the claims for relief asserted below.

104.    Defendants actively concealed the compressor defect by touting these Refrigerators' high quality and functionality without disclosing their defective nature. Defendants' concealment prevented Plaintiffs and class members from discovering their injuries and pursuing legal relief from Defendants.

105.    Plaintiffs did not discover and could not reasonably have discovered the compressor defect until their refrigerators prematurely failed.

## FIRST CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability)

*On Behalf of the Class or Alternatively, the Subclasses*

106.    Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

107.    Defendants LG, Sears, Costco, Lowe's and Best Buy are "merchants" as defined under the U.C.C. and by the respective state statutes under which Plaintiff alternatively assert this claim.

108.    The Kenmore and LG Refrigerators are "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively assert this claim.

109.    Defendants impliedly warranted that the Kenmore and LG Refrigerators were of a merchantable quality and fit for their ordinary and intended use of cooling food and beverages.

110.    At the point of sale, the Refrigerators contained an unseen compressor defect whose manifestation renders the refrigerators inoperable during its useful life. The defect in the Refrigerators existed when they left Defendants' possession and rendered them unfit for their ordinary and intended purpose. At all relevant times, including when the Refrigerators entered the stream of commerce and were purchased by Plaintiffs and Class members, the Refrigerators were defective and substantially certain to fail.

111.    Defendants knew that the Refrigerators were defective and prone to premature failure.

112.    Defendants acquired such knowledge from multiple sources, including, without limitation, their own design, development, and testing of the linear compressor, linear compressor repairs it or its authorized repair personnel performed, the thousands of consumer complaints that they received, interactions with their repair personnel, media reports, and the

*multiple* class action lawsuits that have been brought against Defendant LG in the last several years.

113.    Defendants breached the implied warranty of merchantability because the Refrigerators were not of a merchantable quality, but instead contained a compressor defect. Had Plaintiffs and Class members known of the embedded, latent defect in the Refrigerators, they would not have purchased their refrigerators.

114.    Plaintiffs and Class members were in privity of contract with Defendants by virtue of their interactions with Defendants. Alternatively, privity of contract need not be established, and is not required, because Plaintiffs and Class members are the intended third-party beneficiaries of the implied warranties and other contracts between Defendant LG and Defendant retailers who sold these Refrigerators. In fact, Defendant LG's warranties were designed and intended for the benefit of consumers who purchased these Refrigerators from Defendants.

115.    Given the previous lawsuits involving similar claims with regards to refrigerators manufactured by Defendant LG, Defendants have had an opportunity to cure their breach of warranty, but have failed to do so.

116.    Defendants have refused to recall, adequately repair, replace, or refund the purchase price of failed Refrigerators, and Defendants Costco, Sears, Best Buy and Lowe's continue to sell these defective Refrigerators both in their retail stores and on their websites.

117.    Any attempt by Defendants to disclaim the implied warranty of merchantability imposed by law would be inappropriate, particularly given the parties' unequal bargaining power and Defendants' exclusive knowledge of the defect and the true quality of the Refrigerators.

118.    Defendants knowingly sold defective products without disclosing the defects and made representations concerning the reliability and quality of the Refrigerators without revealing their propensity to fail. Moreover, the remedies Defendants offered injured purchasers were inadequate and unconscionable. Fairness therefore requires invalidating the disclaimer of the implied warranty of merchantability.

119.    The strict time limit of Defendants' warranty period is also unconscionable and inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining the time limit, the terms of which unreasonably favored LG and the other Defendants, as they knew that the Refrigerators were defective at the time of sale and that they would fail shortly after the warranty period ended.

120.     Plaintiffs and Class members have complied with any and all obligations under the implied warranty of merchantability or otherwise have been excused from such compliance by reason of Defendants' conduct described herein.

121.     Defendants' breach of the implied warranty of merchantability damaged Plaintiffs and Class members in an amount to be determined at trial.

### SECOND CAUSE OF ACTION

**(Breach of Implied Warranty in Violation of the Song-Beverly Consumer Warranty Act)**

*By Plaintiffs Hernandez, Ko, Tangco, Cervantes and Wolfe, Individually and On Behalf of the California Subclass*

122.     Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

123.     Plaintiffs Hernandez, Ko, Tangco, Cervantes and Wolfe and California Subclass members are "buyers" within the meaning of California Civil Code section 1781(b). Each purchased an LG manufactured Refrigerator in California sold by one of the Defendant Retailers.

124.     LG is a manufacturer within the meaning of California Civil Code section 1791 *et seq*. LG was responsible for producing the Refrigerators, and directed and was involved in all stages of their production and manufacturing process.

125.     Defendants Sears, Best Buy, Costco and Lowe's are "retail sellers," "seller," or "retailer" within the meaning of California Civil Code section 1791 *et seq*. as they engaged in the business of selling the Refrigerators directly to retail buyers.

126.     The Refrigerators are "consumer goods" within the meaning of California Civil Code section 1791(a).

127.     Defendants impliedly warranted to Hernandez, Ko, Tangco, Cervantes and Wolfe and California Subclass members that the LG Refrigerators were "merchantable" under California Civil Code sections 1791.1(a) and 1792.

128.     Defendants breached the implied warranty of merchantability by producing, manufacturing, and/or selling unmerchantable goods. The Refrigerators Plaintiffs purchased were defective. The compressor defect invariably manifests well before the end of the useful life of each Refrigerator. When the defect manifests, the result is total failure-the refrigerator is unable to fulfill its core function of cooling. These Refrigerators are thus unfit for the ordinary purposes for which a refrigerator is used and would not pass without objection in the refrigerator trade.

129.    The compressor defect is latent. Though the Refrigerators appear to be operable when new, the defect existed within each LG Refrigerator at the time of sale and throughout the periods of the written and statutory warranties.

130.    Moreover, Defendants had reason to know that at the time of the retail sale of these refrigerators, that Plaintiffs were relying on Defendants' skill or judgment to select, furnish and sell suitable goods to their customers.

131.    Accordingly, discovery of the defect by a purchaser during or after a warranty period does not bar a Song-Beverly claim for breach of the statutory implied warranty.

132.    Any attempt by Defendants to disclaim its implied warranty obligations  under the Song-Beverly Act is ineffective due to their failure to adhere to California Civil Code sections 1792.3 and 1792.4. Those sections provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer, distributor or retailer must "in simple and concise language" state: (1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair. Defendants attempted warranty disclaimer does not conform to sections 1792.3 and 1792.4.

133.    As a direct and proximate result of Defendants' breaches of the Song-Beverly Act, Plaintiffs and the California Subclass members have been damaged in an amount to be proven at trial. They are entitled to recover, among other damages, all amounts paid towards the purchase of the Refrigerators, and other relief as appropriate.

134.    Defendants knew of the defect before selling the Refrigerators and therefore, their Song-Beverly violations were willful. Plaintiffs Hernandez, Ko, Tangco, Cervantes and Wolfe and California Subclass members accordingly seek a civil penalty of twice their actual damages.

135.    Plaintiffs Hernandez, Ko, Tangco, Cervantes and Wolfe also seeks costs and expenses, including reasonable attorneys' fees, as provided under California Civil Code section 1794.

### THIRD CAUSE OF ACTION

### (Violation of the Magnuson-Moss Warranty Act ("MMWA"))

136.    Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

137.    The subject Refrigerators are "consumer products" under the MMWA. 15 U.S.C. § 2301(1).

138.    Plaintiffs and Class members are "consumers" under the MMWA. 15 U.S.C. § 2301(3).

139.    Defendants are "suppliers" and "warrantors" under the MMWA. 15 U.S.C. §2301(4)-(5).

140.    Through their implied warranties, Defendants warranted to Plaintiffs and Class members that the Refrigerators they purchased were free from defects, of merchantable quality, and fit for the ordinary purposes for which a refrigerator is used.

141.    Defendants breached and refused to honor these implied promises. As a result of the compressor defect, the Refrigerators are inoperable and fail to perform in accordance with their ordinary and intended purposes.

142.    Defendants have been given reasonable opportunities to cure their breaches of warranty. In fact, Defendants have had actual knowledge and ample notice that the Refrigerators are defective as detailed above, but have failed to provide an adequate remedy and have continued to sell these defective products to consumers.

143.    For the reasons set forth in paragraphs 113, *supra*, Defendants' durational limitation on implied warranties is unconscionable and unenforceable under 15 U.S.C. § 2308(b).

144.    The amount in controversy for purposes of Plaintiffs' individual claims exceeds $25. The amount in controversy in this action exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be adjudicated in the suit.

145.    As a direct and proximate result of Defendants' breaches of its implied warranty pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

146.    Plaintiffs also seek costs and expenses, including reasonable attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

## FOURTH CAUSE OF ACTION

### (Violation of the Washington Consumer Protection Act ("WCPA"))

### *By Plaintiff Koohpai, Individually and On Behalf of the Washington Subclass*

147.    Plaintiffs Koohpai asserts this claim on behalf of herself and the Washington

Subclass.

148.  Koohpai, the Washington Subclass, and all Defendants are "persons" under Wash. Rev. Code § 19.86.010(1).

149.  LG's acts or practices, as set forth above, occurred in the conduct of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

150.  Washington law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or practices." Wash. Rev. Code §§ 19.86.020.

151.  Defendants' acts and practices, described herein, are unfair and deceptive in violation of Washington law for the reasons stated in paragraphs 106-121 of the First Claim for Relief, *supra*.

152.  By selling defective Refrigerators with exclusive knowledge of the defect, and by failing to disclose the defect or honor warranty claims in good faith, Defendants acted unscrupulously in a manner that is substantially oppressive and injurious to consumers.

153.  Defendants committed deceptive acts and practices with the intent that consumers, such as Koohpai and Washington Subclass members, would rely upon Defendants' representations and omissions when deciding whether to purchase a Kenmore or LG Refrigerator.

154.  Koohpai and Washington Subclass members suffered ascertainable loss as a direct and proximate result of Defendants' unfair and deceptive acts or practices. Had Koohpai and Washington Subclass members known that the Kenmore/LG Refrigerators were defective, they would not have purchased these Refrigerator or would have paid significantly less for one. Among other injuries, Koohpai and Washington Subclass members overpaid for their Refrigerators, and their Refrigerators suffered a diminution in value.

155.  Defendants' violations of the WCPA present a continuing risk to Koohpai and Washington Subclass members, as well as to the general public. Defendants' unlawful acts and practices adversely affect the public interest.

156.  Under Wash. Rev. Code § 19.86.090, Koohpai and the Washington Subclass seek an order enjoining Defendants' unfair and deceptive acts or practices, providing for appropriate monetary relief, including trebled damages, and awarding reasonable attorneys' fees and costs.

157.   In accordance with Wash. Rev. Code § 19.86.095, a copy of this Complaint has been served on the Attorney General of Washington.

## FIFTH CAUSE OF ACTION

### (Violation of New York General Business Law § 349)

### *By Plaintiff McDonnell, Individually and On Behalf of the New York Subclass*

158.   Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

159.   Plaintiff McDonnell brings this claim under New York law as New York's General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. G.B.L. § 349(a).

160.   Defendants violated § 349 by engaging in deceptive acts and practices.

161.   Defendants engaged in this misconduct on a standard and routine basis, affecting a significant number of similarly situated customers-namely, all customers residing in New York who purchased said Refrigerators.

162.   Defendants represented to Plaintiff McDonnell and New York Subclass members that they were purchasing high-quality Refrigerators that would last many years, when in fact they were selling defective Refrigerators that had a short life-span of at times less than two years.

163.   Defendants failed to disclose the defective nature of these Refrigerators and as such misled customers into believing that they were purchasing long-lasting working Refrigerators when in fact they were purchasing faulty and defective products.

164.   Defendants' practices are likely to mislead a reasonable consumer and therefore were materially misleading as Defendants' unfair or deceptive conduct caused Plaintiff and the New York Subclass to overpay on Refrigerators that lasted a fraction of the expected life of a Refrigerator.

165.   Defendants' conduct alleged herein was knowing and willful.

166.   All New York Subclass members, including Plaintiff McDonnell, suffered ascertainable losses that necessarily flowed directly from Defendants' fraud and deceit in their scheme to  sell defective Refrigerators that were worth far less than the amount they were purchased for.

167.   Plaintiffs and the New York Subclass members seek actual damages or statutory damages, whichever is greater, treble damages, punitive damages and reasonable attorneys' fees.

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

## SIXTH CAUSE OF ACTION

### (Violation of Massachusetts Consumer Protection Law)

### *By Plaintiff Sacharin, Individually and On Behalf of the Massachusetts Subclass*

168.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

169.    Plaintiff Sacharin brings this claim under Massachusetts law.

170.    Massachusetts Consumer Protection Law ("MCPL") declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. ch. 93A, § 2(a).

171.    Defendants violated the MCPL by engaging in unfair or deceptive practices in the conduct of trade or commerce.

172.    Defendants represented to Plaintiff Sacharin and the Massachusetts Subclass members that they were purchasing high-quality Refrigerators that would last many years, when in fact they were selling defective Refrigerators that had a short life-span of at times less than two years.

173.    Defendants failed to disclose the defective nature of these Refrigerators and as such, and as a result of their uniform misrepresentations and omissions, misled customers into believing that they were purchasing long-lasting working Refrigerators when in fact they were purchasing faulty and defective products that they would not have purchased had they known the truth about.

174.    Defendants' practices are likely to mislead a reasonable consumer and therefore were materially misleading.

175.    Defendants' conduct alleged herein was knowing and willful.

176.    As a result of Defendants' misconduct, all Massachusetts Subclass members, including Plaintiff Sacharin, suffered an identifiable, economic injury-namely that Defendants' unfair or deceptive conduct caused them to overpay on Refrigerators that lasted a fraction of the expected life of a Refrigerator.

177.    On information and belief, Defendants have not refunded Plaintiff Sacharin or any other Massachusetts Subclass member for the wrongfully retained overcharge on the defective Refrigerators sold to consumers, despite Defendants' clear knowledge of the defective nature of these products.

178.   As such, Plaintiff Sacharin and the Massachusetts Subclass members seek actual damages or statutory damages, whichever is greater, double or treble damages and reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**

**(Fraudulent Concealment)**

179.   Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

180.   Plaintiffs bring this claim on behalf of the Class under the law of the state in which each respective Plaintiff purchased a subject Refrigerator.

181.   Defendants intentionally suppressed and concealed material facts about the performance and quality of the Refrigerators. As alleged herein, Defendants knew about the defective nature of the compressors and related parts in the Kenmore and LG Refrigerators. Further, Defendants was aware of numerous consumer complaints concerning defect-related problems, but never disclosed the compressor defect to Plaintiffs and class members.

182.   Because the defect in the Refrigerators is latent and unobservable until it arises, Plaintiffs and class members had no reasonable means of knowing that Defendants' representations concerning the Refrigerators, and their compressors, were incomplete, false, or misleading, or that they had failed to disclose that the Refrigerators are defective. Plaintiffs and class members did not and reasonably could not have discovered Defendants' deceit before they purchased their Refrigerators or before the end of their buyer's remorse periods.

183.   Had Plaintiffs and class members known that the Refrigerators are defective, they would not have purchased these Refrigerators, would not have purchased the Refrigerators at the price they did, or would have returned their Refrigerators for a refund during their respective buyers' remorse periods.

184.   Defendants had a duty to disclose the compressor defect because the defect is material and Defendants' possessed exclusive knowledge of these defects. In fact, Defendants acquired their knowledge of the compressor defect from multiple sources, including, without limitation, thousands of consumer complaints that they received, interactions with their authorized repair personnel, media reports, and the *multiple* class action lawsuits filed in this regard.

185.   Defendants also had a duty to disclose the compressor defect because, through advertising, their sale representatives, product brochures, external labeling, statements made on

their websites, and in other sources that Plaintiffs and class members encountered before purchasing their Refrigerators, Defendants made representations regarding the supposed high quality of the Refrigerators and their linear compressor-including representations about their reliability-but failed to disclose facts that would have materially qualified these partial representations. Having volunteered information relating to the compressor to Plaintiffs and class members, Defendants had a duty to disclose the whole truth about the compressor and, in particular, its defective nature.

186.    Each Plaintiff was exposed to Defendants' specific representations about the Kenmore and LG Refrigerators before and immediately after purchase, and within the time period in which they could have returned their Refrigerators without penalty. Each Plaintiff saw Defendants' representations about the Refrigerators online or in product advertisements, and received further information from Defendants' sales representatives about these Refrigerators in both in person and in product manuals and brochures that accompanied the refrigerators. None of the informational sources Plaintiffs saw, indicated that the Refrigerators are defective or could have a faulty compressor.

187.    In fact, each time any of the Plaintiffs sought product information from one of Defendants' sales representatives in store, they had nothing but good things to say about these Refrigerators and thereby encouraged the purchase of said Refrigerators without disclosing the truth about them.

188.    Defendants concealed the compressor defect to sell more Refrigerators at a premium price, prevent damage to their brands, and avoid the costs of an effective fix and of repairs, replacements, and refunds for their customers.

189.    The suppressed and omitted information about these Refrigerators were material, and Plaintiffs and class members were unaware of them until they experienced the defect.

190.    Had Defendants disclosed the defect, including through advertising, press releases, promotional materials, or retailer statements, Plaintiffs and class members would not have purchased these Refrigerators, would have paid substantially less for it, or would have returned it for a refund.

191.    When deciding to purchase a Kenmore or LG Refrigerator, Plaintiffs and class members reasonably relied to their detriment upon Defendants' material misrepresentations and omissions regarding the quality of these Refrigerators and the absence of a product defect.

192.     Plaintiffs and class members sustained damages as a direct and proximate result of Defendants' deceit and fraudulent concealment. Among other damage, Plaintiffs and class members did not receive the value associated with the price they paid for these Refrigerators.

193.     Defendants' fraudulent concealment was malicious, oppressive, deliberate, intended to defraud Plaintiffs and class members and enrich Defendants, and in reckless disregard of Plaintiffs' and class members' rights, interests, and well-being. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

## EIGHTH CAUSE OF ACTION

### (Negligent Misrepresentation)

194.     Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

195.     At all relevant times, Defendants designed, manufactured, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed these Kenmore and LG Refrigerators into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that purchased said Refrigerators, such as Plaintiffs.

196.     Defendants were negligent, reckless, and careless and owed a duty to Plaintiffs to make accurate and truthful representations regarding these Refrigerators, Defendants breached their duty, thereby causing Plaintiff to suffer harm.

197.          Defendants represented to Plaintiffs via advertising, their websites, packaging, promotions, through their sale representatives as well as by other means, that these Refrigerators were of high-quality and failed to inform their customers about the true nature of the Refrigerators being sold to them, including that they contain a faulty compressor that fails prematurely.

198.     Additionally, Defendants represented to Plaintiffs that their Refrigerators were made for their intended use, when in fact, Defendants knew or should have known that there was a latent defect in the Refrigerators which Plaintiffs and class members had no reasonable means of knowing about. In fact, each time any of the Plaintiffs sought product information from one of

Defendants' sales representatives in store, they had nothing but good things to say about these Refrigerators and thereby encouraged the purchase of said Refrigerators without disclosing the truth about them.

199.    In particular, each of the misrepresentations made by Defendants concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether they should purchase these Refrigerators.

200.    Defendants knew or should have known that their representations were false and were negligently made without regard for their truth.

201.    Plaintiffs reasonably placed their trust and reliance in Defendants' representations that the Refrigerators were as advertised, that is that they were high-quality, working Refrigerators that would be in good working conditions for years to come. Plaintiffs' reliance on Defendants' representation was a substantial factor in causing Plaintiffs' harms.

202.    Furthermore, Defendants' acts and omissions as described herein were committed in reckless disregard of Plaintiffs' rights, interests, and well-being to enrich Defendants. Defendants have yet to correct these misrepresentations about the Refrigerators.

203.    Plaintiffs and the members of the class were injured as a direct and proximate result of Defendants' negligent misrepresentations regarding their products, as described herein.

## **NINTH CAUSE OF ACTION**

### **(Violation of *Business and Professions Code* sections 17200, *et seq*.)**

204.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

205.    Plaintiffs, pursuant to *Business and Professions Code* section 17204, bring this cause of action on behalf of themselves and as a private attorneys general.

206.    *Business and Professions Code* section 17200, *et seq*., also known as the Unfair Competition Law, defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. The Unfair Competition Law imposes strict liability.  Plaintiffs need not prove that Defendants intentionally or negligently engaged in unlawful, unfair or fraudulent business practices – but only that such practices occurred.

*"Unlawful" Prong*

207.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

208.     As detailed in Plaintiffs' Cause of Action above, Defendants' conduct is unlawful in violation of the UCL, as it violates the Song-Beverly Act, and the Magnuson-Moss Warranty Act.

209.     Defendant's unlawful business practices are ongoing, and unless enjoined under *Business & Professions Code* section 17203, and/or under section 17535, are likely to continue to deceive other members of the general public at the expense of Defendants' competitors.

210.     Defendants violated Cal. Bus. & Prof. Code sections 17200, *et seq*. by engaging in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, including:

> a.  Knowingly manufacturing, advertising, and selling Refrigerators that are unfit for their most basic function of cooling food and beverages;
>
> b.     Misrepresenting material information to consumers regarding these Refrigerators' quality, and their ability to function properly and be used by consumers;
>
> c.  Concealing material information from consumers regarding the fact that these Refrigerators are defective, so that consumers would not know that these products are faulty and would continue to purchase them;
>
> d.  Using uniform, deceptive business practices, such as telling consumers via their websites that these Refrigerators are of high quality without transparently disclosing that they contain a compressor that fails prematurely.

**"Unfair" Prong**

211.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

212.     Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class Members. These business practices include failing to inform

its customers about the true nature of the Refrigerators being sold to them, including that they contain a faulty compressor that fails prematurely, and engaging in a pattern or practice of concealing those facts and urging their customers to purchase these Refrigerators, thereby depriving consumers of sufficient information to make an informed decision when purchasing these Refrigerators.

213.   Further, the impact of the practice against Plaintiffs and the Class Members far outweighs any possible justification or motive on the part of Defendants. The impact on Plaintiffs and the Class Members has been described.  Defendants can have no possible justification for engaging in immoral, unethical and substantially injurious act of overcharging Plaintiffs and the Class Members through a misleading and deceptive conduct of failing to disclose that the Refrigerators are defective and representing through advertising on their websites, on product labeling, on product brochures, through their sales reps, etc. that these Refrigerators possess qualities Defendants knew the products did not possess;

214.   Furthermore, Plaintiffs and the Class Members could not have reasonably avoided this injury because they relied on Defendants' advertising as to the quality and characteristics of the products being sold, as all consumers who rely on the verity of product advertising must do;

215.   Specifically, Plaintiffs paid hefty prices for Defendants' Refrigerators, believing that they were high-quality products that were going to last for years;

216.   Defendants minimized the scope and severity of the problems with the Refrigerators, refusing to acknowledge that the compressor is defective, failing to provide consumers with adequate relief, and suggesting to consumers that they should resolve the problem by replacing the compressor when they knew that such a replacement would not be effective;

217.   The harm to Plaintiffs and Class members outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

218.   The Refrigerators suffer from a latent defect, and Defendants failed to disclose these defects even after receiving a large volume of consumer complaints and reports of compressor failure from their authorized repair personnel. Plaintiffs did not know of, and had no reasonable means of discovering, that these Refrigerators are defective.

219.   There were reasonably available alternatives that would have furthered Defendants' legitimate business interests of satisfying and retaining customers while maintaining profitability, such as  (a) acknowledging the defect and providing a permanent, effective fix for

the defective refrigerators; (b) adequately disclosing the defect to prospective purchasers; (c) offering refunds or suitable non-defective replacement refrigerators to consumers with failed Refrigerators; (d) and in the case of the Defendant Retailers, refusing to sell these defective Refrigerators until Defendant LG assured them that it was no longer manufacturing Refrigerators with defective compressors.

***"Fraudulent" Prong***

220.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

221.    Defendants' conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer. Among other fraudulent conduct, Defendants:

a. knowingly concealed from Plaintiffs that the Refrigerators contain a latent defect that gives them a propensity to fail;

b. volunteered information to Plaintiffs through their website, press releases, sales associates, and other means that the Refrigerators-and their linear compressors-were functional, premium products without disclosing facts that would have materially qualified those misleading partial representations; and

c. promoted the Refrigerators as being high quality and containing premium features, including a purportedly reliable linear compressor, despite knowing the Refrigerators are defective, and failed to correct their misleading representations.

222.    Defendants knew that the Refrigerators were defective and prone to premature failure. Defendants acquired such knowledge from multiple sources, including, without limitation, the thousands of consumer complaints that they received, interactions with their authorized repair personnel, media reports, and the *multiple* class action lawsuits filed in the past few years.

223.    Defendants owed a duty to disclose that the Refrigerators are defective because they had superior knowledge of the compressor defect.

224.    Defendants had ample means and opportunities to disclose to Plaintiffs prior to purchase that the Refrigerators are defective, including through advertisements, on their websites, on external labeling, and through their sales associates at their retail stores. Despite their exclusive knowledge of and these opportunities to disclose the Refrigerators' defective nature, Defendants failed to disclose the compressor defect to Plaintiffs before their respective buyers' remorse periods expired.

225.     Defendants' misrepresentations and fraudulent omissions were material.

226.     Defendants' fraud led to consumers paying for products that they would not have paid for if they knew the truth about the fact that these products were defective and would break down after approximately one to three years of use.

227.     As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Class Members were injured and lost money.  They did not receive the benefit of the bargain in purchasing the Refrigerators, and they spent their own time and money dealing with consequences of being sold defective Refrigerators.

228.     Defendants acted intentionally, knowingly, and maliciously in violation of California's Unfair Competition Law.

229.     Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs, injunctive relief, and other appropriate equitable relief.

230.     In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs also seek, in addition to damages, restitution and other equitable relief, to recover attorney fees under (i) section 1021.5 of the *Code of Civil Procedure*, and/or (ii) the "common fund" doctrine available to prevailing Plaintiffs who confer a benefit on the general public.

## TENTH CAUSE OF ACTION

### (Unjust Enrichment)

231.     Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

232.     As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and members of the Class when they purchased the defective Refrigerators containing faulty compressors.

233.     In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and members of the Class.

234.     As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*

235. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

236. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, and are still receiving, without justification, from the false and deceptive labeling and marketing of the Refrigerators to Plaintiffs and members of the Class.

237. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

238. The financial benefits derived by Defendants rightfully belong to Plaintiffs and members of the Class. Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them.

239. Accordingly, Plaintiffs and Class Members were damaged, and Defendants were unjustly enriched, given that they defrauded Plaintiffs into purchasing said Refrigerators by not disclosing the fact that these products contained faulty compressors and would break down after only a couple of years.

240. Furthermore, Defendants' conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiffs and the Class. Defendants are therefore liable to pay punitive damages.

241. Plaintiffs and Class Members are entitled to damages in the amount Defendants were unjustly enriched, to be determined at trial.

## PRAYER FOR RELIEF

Plaintiffs JOHN HERNANDEZ, an individual, MIRANDA SACHARIN, an individual, FATEMEH KOOHPAI, an individual, JUDITH NIKKI MCDONNELL, an individual, POLLY KO, an individual, REGINA STELLA TANGCO, an individual, TERESA CERVANTES, an individual, VICTOR WOLFE, an individual, and on behalf of all others similarly situated pray for relief and judgment against Defendants as follows:

(a) An order certifying the Class and JOHN HERNANDEZ, an individual, MIRANDA SACHARIN, an individual, FATEMEH KOOHPAI, an individual, JUDITH NIKKI MCDONNELL, an individual, POLLY KO, an individual, REGINA STELLA TANGCO, an individual, TERESA CERVANTES, an individual, VICTOR WOLFE, an individual, as Class Representatives and their counsel as Class Counsel;

(b)     Awarding Plaintiffs and the proposed Class members actual or compensatory damages according to proof;

(c)     Awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

(d)     Awarding declaratory and injunctive relief as permitting by law or equity to individual Plaintiffs, including enjoining Defendants from continuing the unlawful practices set forth herein, and directing Defendants to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

(e)     Exemplary and punitive damages sufficient to punish and deter the Defendants and others from future wrongful practices;

(f)      Pre-judgment and post-judgment interest;

(g)     Awarding attorneys' fees and costs; and

(h)     Providing such further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury of all issues raised in this Complaint.

DATED: December 5, 2022          **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**

*/s/ Azar Mouzari__*
Azar Mouzari, Esq.
Nilofar Nouri, Esq.
Attorneys for Plaintiffs

*PLAINTIFFS' COMPLAINT*
*[CLASS-ACTION]*