Azar Mouzari, SBN 263461
Nilofar Nouri, SBN 311871
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
Tel:  310-858-5567  Fax: 424-286-0963
Email: azar@bhtrialattorneys.com
Email: nilofar@bhtrialattorneys.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY R. CAMBRON, an individual; CHRISTOPHER BOLTON, an individual; DON FLETCHER, an individual; PAM SELLERS, an individual; RANDOL DENMAN, an individual; THERESA HATFIELD, an individual; VIRGINIA RICHMOND, an individual; SUSAN WILSON, an individual; CRISTIE HOLLIS, an individual; RONALD BRUCE RAY, an individual; CHRISTOPHER LAVIN, an individual; CRYSTAL SCHROEDER, an individual; THOMAS WEMHOFF, an individual; JANET MOSER, an individual; JETTEKE MUCHEMORE, an individual; JOHN HERNANDEZ, an individual; KASRA PEIGHAMBARI, an individual; KRSTO JELENIC, an individual; LINDA REICHELLO, an individual; MOHAMAD SHAHAB, an individual; POLLY KO, an individual; REGINA STELLA TANGCO, an individual; TERESA CERVANTES, an individual; VICTOR WOLFE, an individual; TRACI ELLIS, an individual; GINGER A. COWAN, an individual; ERIC SCHLEICH, an individual; RALPH HENDERSON, an individual; RUSSELL BROWN, an individual; TERRI GRINER-COMPROSKI, an individual; DENNIS LEEDEKERKEN, an individual; GREGORY CANNON, an individual; STEVEN BORDEN, an individual; BELLE STRICKLAND, an individual; EDWINA FRAME, an individual; JAMES CAMPBELL, an individual; SUSAN LOUISE SACK, an | Case No.: 2:22-cv-08813-SVW-JEM **FOURTH AMENDED COMPLAINT FOR DAMAGES [CLASS-ACTION]** **(1) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY** **(2) FRAUDULENT CONCEALMENT/FRAUD BY OMISSION** **(3) FRAUDULENT MISREPRESENTATION** **(4) VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT** **(5) NEGLIGENT MISREPRESENTATION** **(6) UNJUST ENRICHMENT** **(7) VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT** **(8) VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT** **(9) VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT** **(10) BREACH OF IMPLIED WARRANTY IN VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT** **(11) VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")** |

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

individual; EVAN CAREY, an individual; LARRY PAINTON, an individual; NATHAN W. NELSON, an individual; ELLEN HAWOTTE, an individual; TONYA M. BURGE, an individual; AMY WEISBERG, an individual; ANTHONY HOLDGRAFER, an individual; DALE BELL, an individual; MICHELLA JAMESON, an individual; WILLIAM FORD HEBNER, an individual; REYNA DAVIS, an individual; JAMES EATON, an individual; RANDALL SAWYERS, an individual; ERIN SCOTT, an individual; BRIAN MULLIKIN, an individual; JAVIER RIVERA, an individual; OLUWAKEMI ADEWOLE, an individual; MIRANDA SACHARIN, an individual; LINDSEY M. TAPIN, an individual; TRENT MAUK, an individual; JENNY FINKBEINER, an individual; CATHY P. FEINSTEIN, an individual; ODIS LEE, an individual; DENISE FREEMAN, an individual; RUTH SPRINGSTON, an individual; SHANNON HARRIS, an individual; SUE HOPFENSITZ, an individual; DEBRA HARGON, an individual; BRYAN REESER, an individual; LAURA PURCELL, an individual; JUDITH NIKKI MCDONNELL, an individual; VIRGINIA HETCHER, an individual; ELLEN S. MITCHELL, an individual; ANNETTE RALLO, an individual; MARIA JAMAL, an individual; NOAH GORDON, an individual; SUSAN JUANITA-OWEN BROOKS, an individual; TIM KIVLIN, an individual; BRIAN BOSTER, an individual; BRIAN STOFLINSKY, an individual; SAMANTHA KENYON, an individual;  ALAN JAMES MARSHALL, an individual; PAULA J. BREEDLOVE, an individual; ASHLEY SHRIVER, an individual; DAVID NELSON, an individual; LAUREN GILMER, an individual; DAWN I. TAYLOR, an individual; PHILIP MARTIN, an individual; ROXANN TYGER, an individual; TAMMY ALBERTELLI, an individual; MARINDA PARKS, an individual; BENETTA GILLILAND, an

**(12) VIOLATION OF THE BUSINESS & PROFESSIONS CODE ("UCL")**

**(13) VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT**

**(14) VIOLATION OF THE FLORIDA UNFAIR & DECEPTIVE TRADE PRACTICES ACT**

**(15) VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**

**(16) UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW**

**(17) VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT**

**(18) VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

**(19) VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**

**(20) VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**

**(21) VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**(22) VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**

**(23) VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION LAW**

**(24) VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**

**(25) VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT**

**(26) VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT**

**(27) VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT**

**(28) VIOLATION OF THE NEVADA TRADE PRACTICES ACT**

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

| | |
|---|---|
| individual; JOANNA MORSE, an individual; ANTHONY MILLER, an individual; BERNICE GERBO, an individual; DONALD WARD, an individual; ELI JORDAN, an individual; JACQUELYN JOHNSON, an individual; JEMILAT SULEIMAN, an individual; MARVIN MCANDERSON, an individual; MONICA MARTIN, an individual; RAFAEL GARCIA, an individual; VIRGINIA HUBBARD, an individual; JOHN L. COOK, an individual; JOSHUA SMITH, an individual; KENT MUNSCH, an individual; DANIEL LEMUS, an individual; SCOTT MITCHELL, an individual; DARRELL SCHULTZ, an individual; HAMID KOOHPAI, an individual; RONALD MCDOUGAL, an individual; EILEEN PERKINS, an individual, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LG ELECTRONICS U.S.A., INC., a Delaware Corporation; TRANSFORM SR LLC, a Delaware Limited Liability Company; TRANSFORM SR BRANDS MANAGEMENT LLC, a Delaware Limited Liability Company; COSTCO WHOLESALE CORPORATION, a Washington Company; LOWE'S HOME CENTERS, LLC, a North Carolina Limited Liability Company; BESTBUY.COM, LLC, a Virginia Limited Liability Company, BEST BUY STORES, L.P., A Virginia Limited Partnership; HOME DEPOT U.S.A., INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | **(29) VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT**<br><br>**(30) VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**<br><br>**(31) VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**<br><br>**(32) VIOLATION OF NEW GENERAL BUSINESS LAW § 350**<br><br>**(33) VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT**<br><br>**(34) VIOLATION OF THE OHIO CONSUMER SALES AND PRACTICES ACT**<br><br>**(35) VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT**<br><br>**(36) VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**<br><br>**(37) VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**<br><br>**(38) VIOLATION OF THE SOUTH DAKOTA TRADE PRACTICES AND CONSUMER PROTECTION LAW**<br><br>**(39) VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT**<br><br>**(40) VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICE ACT**<br><br>**(41) VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT**<br><br>**(42) VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT** |

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………......….……4

INTRODUCTION………………………………………….…………………......7

PARTIES…………………………………………………………….…….……....10

      I.    PLAINTIFFS………………………………………………...10

      II.   DEFENDANTS……………………………..……….……..…..18

JURISDICTION AND VENUE……………………………….……………...19

FACTUAL ALLEGATIONS……………………………………....…...….20

ALLEGATIONS BY ALL PLAINTIFFS…………………………………....48

CLASS ACTION ALLEGATIONS………………………………87

TOLLING OF THE STATUTE OF LIMITATIONS……………………….……...…103

CAUSES OF ACTION…………………………………………...……...103

PRAYER FOR RELIEF…………………………………….……….……189

JURY TRIAL DEMAND…………………………………………….191

COME NOW Plaintiffs TIMOTHY R. CAMBRON ("Cambron"), an individual, CHRISTOPHER BOLTON ("Bolton"), an individual, DON FLETCHER ("Fletcher"), an individual, PAM SELLERS ("Sellers"), an individual, RANDOL DENMAN ("Denman"), an individual, THERESA HATFIELD ("Hatfield"), an individual, VIRGINIA RICHMOND ("Richmond"), an individual, SUSAN WILSON ("Wilson"), an individual, CRISTIE HOLLIS ("Hollis"), an individual, RONALD BRUCE RAY ("Ray"), an individual, CHRISTOPHER LAVIN ("Lavin"), an individual, CRYSTAL SCHROEDER ("Schroeder"), an individual, THOMAS WEMHOFF ("Wemhoff"), an individual, JANET MOSER ("Moser"), an individual, JETTEKE MUCHEMORE ("Muchemore"), an individual, JOHN HERNANDEZ ("Hernandez"), an individual, KASRA PEIGHAMBARI ("Peighambari"), an individual, KRSTO JELENIC ("Jelenic"), an individual, LINDA REICHELLO ("Reichello"), an individual, MOHAMAD SHAHAB ("Shahab"), an individual, POLLY KO ("Ko"), an individual, REGINA STELLA TANGCO ("Tangco"), an individual, TERESA CERVANTES ("Cervantes"), an individual, VICTOR WOLFE ("Wolfe"), an individual, TRACI ELLIS ("ELLIS"), an individual, GINGER A. COWAN ("Cowan"), an individual, ERIC SCHLEICH ("Schleich"), an individual, RALPH HENDERSON ("Henderson"), an individual; RUSSELL BROWN ("Brown"), an individual, TERRI GRINER-COMPROSKI ("Griner-Comproski"), an individual, DENNIS LEEDEKERKEN ("LEEDEKERKEN"), an individual, GREGORY CANNON ("Cannon"), an individual, STEVEN BORDEN ("Borden"), an individual, BELLE STRICKLAND ("Strickland"), an individual, EDWINA FRAME ("Frame"), an individual, JAMES CAMPBELL ("Campbell"), an individual, SUSAN LOUISE SACK ("Sack"), an individual, EVAN CAREY ("Carey"), an individual, LARRY PAINTON ("Painton"), an individual, NATHAN W. NELSON ("Nelson"), an individual, ELLEN HAWOTTE ("Hawotte"), an individual, TONYA M. BURGE ("Burge"), an individual, AMY WEISBERG ("Weisberg"), an individual, ANTHONY HOLDGRAFER ("Holdgrafer"), an individual, DALE BELL ("Bell"), an individual, MICHELLA JAMESON ("Jameson"), an individual, WILLIAM FORD HEBNER ("Hebner"), an individual, REYNA DAVIS ("Davis"), an individual, JAMES EATON ("Eaton"), an

individual, RANDALL SAWYERS ("Sawyers"), an individual, ERIN SCOTT ("Scott"), an individual, BRIAN MULLIKIN ("Mullikin"), an individual, JAVIER RIVERA ("Rivera"), an individual, OLUWAKEMI ADEWOLE ("Adewole"), an individual, MIRANDA SACHARIN ("Sacharin"), an individual, LINDSEY M. TAPIN ("Tapin"), an individual, TRENT MAUK ("Mauk"), an individual, JENNY FINKBEINER ("Finkbeiner"), an individual, CATHY P. FEINSTEIN ("Feinstein"), an individual, ODIS LEE ("Lee"), an individual, DENISE FREEMAN ("Freeman"), an individual, RUTH SPRINGSTON ("Springston"), an individual, SHANNON HARRIS ("Harris"), an individual, SUE HOPFENSITZ ("Hopfensitz"), an individual, DEBRA HARGON ("Hargon"), an individual, BRYAN REESER ("Reeser"), an individual, LAURA PURCELL ("Purcell"), an individual, JUDITH NIKKI MCDONNELL ("McDonnell"), an individual, VIRGINIA HETCHER ("Hetcher"), an individual, ELLEN S. MITCHELL ("E. Mitchell"), an individual, ANNETTE RALLO ("Rallo"), an individual, MARIA JAMAL ("Jamal"), an individual, NOAH GORDON ("Gordon"), an individual, SUSAN JUANITA-OWEN BROOKS ("Brooks"), an individual, TIM KIVLIN ("Kivlin"), an individual, BRIAN BOSTER ("Boster"), an individual, BRIAN STOFLINSKY ("Stoflinsky"), an individual; SAMANTHA KENYON ("Kenyon"), an individual,  ALAN JAMES MARSHALL ("Marshall"), an individual, PAULA J. BREEDLOVE ("Breedlove"), an individual, ASHLEY SHRIVER ("Shriver"), an individual, DAVID NELSON ("D. Nelson"), an individual, LAUREN GILMER ("Gilmer"), an individual, DAWN I. TAYLOR ("Taylor"), an individual, PHILIP MARTIN, an individual, ROXANN TYGER ("Tyger"), an individual, TAMMY ALBERTELLI ("Albertelli"), an individual, MARINDA PARKS ("Parks"), an individual, BENETTA GILLILAND ("Gilliland"), an individual, JOANNA MORSE ("Morse"), an individual, ANTHONY MILLER ("Miller"), an individual, BERNICE GERBO ("Gerbo"), an individual, DONALD WARD ("Ward"), an individual, ELI JORDAN ("Jordan"), an individual, JACQUELYN JOHNSON ("Johnson"), an individual, JEMILAT SULEIMAN ("Suleiman"), an individual, MARVIN MCANDERSON ("McAnderson"), an individual, MONICA MARTIN, an individual, RAFAEL GARCIA ("Garcia"), an individual, VIRGINIA HUBBARD ("Hubbard"),

an individual, JOHN L. COOK ("Cook"), an individual, JOSHUA SMITH ("Smith"), an individual, KENT MUNSCH ("Munsch"), an individual, DANIEL LEMUS ("Lemus"), an individual, SCOTT MITCHELL ("Mitchell"), an individual, DARRELL SCHULTZ ("Schultz"), an individual, HAMID KOOHPAI ("Koohpai"), an individual, RONALD MCDOUGAL ("McDougal"), an individual, EILEEN PERKINS ("Perkins"), an individual, and on behalf of all others similarly situated (collectively "Plaintiffs"), and through their counsel of record, Beverly Hills Trial Attorneys, P.C., file this Fourth Amended Class Action Complaint ("Complaint") against LG ELECTRONICS U.S.A., INC. ("LG"), a Delaware Corporation, TRANSFORM SR LLC, a Delaware Limited Liability Company, TRANSFORM SR BRANDS MANAGEMENT LLC, a Delaware Limited Liability Company ("Transform"), COSTCO WHOLESALE CORPORATION ("Costco"), a Washington Company, LOWE'S HOME CENTERS, LLC, ("Lowe's") a North Carolina Limited Liability Company and BESTBUY.COM, LLC, a Virginia Limited Liability Company, BEST BUY STORES, L.P., a Virginia Partnership ("Best Buy"), and HOME DEPOT U.S.A., INC., a Delaware Corporation ("Home Depot") (collectively "Retailer Defendants" or "Defendants"), and DOES 1-10, seeking damages and relief on behalf of themselves and for all others similarly situated. Unless explicitly stated to the contrary, all allegations are based upon information and belief.

## INTRODUCTION

1.      This class action is brought on behalf of individuals who purchased Kenmore and LG refrigerators containing defective linear compressors sold under the brand names of LG and Kenmore. Defendants LG, Transform,[1] Costco, Lowe's, Home Depot and Best Buy designed,

---

[1] On February 11, 2019, Transform's parent company purchased the well-known retail brand Sears, its assets and its liabilities, and acquired the assets of Sears Holding Corporation including Kenmore, which is a brand of household appliances, its products which are produced by various manufacturers including LG. As stated in Section 2.3(e) of the applicable asset purchase agreement ("APA"), Transform explicitly accepted responsibility for all liabilities associated with warranties, protection agreements and other service contracts for products and services sold or provided by Sears Holding Company, which includes Kenmore products, prior to the acquisition date. *In re Sears Holdings Corp.*, 621 B.R. 563, 578 (S.D.N.Y. 2020), *aff'd*, 51 F.4th 53, 67 (2d Cir. 2022). Furthermore, Transform assumed control over Sears' brick-and-mortar stores and

manufactured, promoted, distributed, and/or sold the LG and Kenmore branded refrigerators, despite being aware of and having notice of the long history of the defective nature of the linear compressors contained in these refrigerators.

2.      These refrigerators have a latent defect which causes failure of the refrigerator's linear compressor—a central component responsible for cooling. The compressor defect renders the refrigerators unable to perform their most basic function: cooling and preserving food and beverages. When the compressor defect manifests, the refrigerator warms and its content spoils. Despite promising their customers refrigerators that last more than 20 years, many of these Kenmore and LG refrigerators have been failing within less than three years, with some failing even less than a year after purchase.

3.      LG has been previously sued at least six times as a result of manufacturing and selling refrigerators with defective compressors, including Kenmore branded refrigerators containing LG's defective compressors, and has settled at least three class actions alleging refrigerators containing its compressors are defective. The claims extinguished by the judgment in the latest class action case which settled is limited to those LG and Kenmore[2] refrigerators manufactured up until December 31, 2017. *See Final Approval Order and* Judgment, *Bentley v. LG Elecs. USA, Inc.*, No. 2:19-CV-13554-MCA-MAH (consolidated with Case Nos. 2:19-cv-15185-MCA-MAH, 2:19-cv-15826-MCA-MAH, and 2:20-cv-07652-MCA-MAH, ECF No. 68, ¶ 3 (D.N.J. December 18, 2020). Despite the fact that LG has faced multiple class action lawsuits with similar allegations regarding the defective nature of these refrigerators, Defendants have continued selling defective refrigerators that have failed at extremely high rates—a "pandemic,"

---

website, https://www.sears.com, taking direct responsibility for subsequent sales and warranties, and continuing to sell Kenmore refrigerators both in-store, online through the retail store "Sears," and through various other retailers including but not limited to Lowe's, Home Depot and Target.

[2] The Kenmore branded refrigerators which were part of the previous class-actions were only those containing LG manufactured compressors. The prior class-actions did not address Kenmore branded refrigerators sold by Transform and its predecessors with failing compressors manufactured by companies other than LG.

according to one news report.[3]   Despite their knowledge of the compressor defect, Defendants have sold and continue to sell these defective refrigerators without alerting purchasers to the problem.[4]

4.     Furthermore, there is now a new group of persons in the United States that have claims against LG and/or Kenmore as these individuals purchased, other than for resale, a LG branded refrigerator or a Kenmore branded refrigerator containing a LG compressor, prior to December 31, 2017, but these individuals *did not have a claim* at the time of the prior class action lawsuit as they experienced monetary loss and damages at a later date.

5.     Moreover, even when consumers have made warranty claims for malfunctioning refrigerators, Defendants have not replaced the defective refrigerators with working units, or have replaced the compressors contained in them with another defective compressor, have failed to offer full refunds, and in many circumstances, have failed to provide repair services to consumers after months of promising said services. Additionally, many consumers have paid Defendants for repair services out of their own pocket, only to be faced with another non-cooling event involving the newly replaced compressor, only months or a few years later.   In fact, Defendants LG and Transform have engaged in futile repairs or replaced defective compressors with other defective compressors—a practice that, for many, has resulted in repeated refrigerator failures. Additionally, many times when the faulty compressor is replaced with another faulty compressor, Plaintiffs have had to deal with loud continuous noises coming from their refrigerators, with no end in sight. Consumers who bought these refrigerators have been forced to live out of coolers, have had to prematurely buy replacement refrigerators, have had to pay hefty amounts of money for replacement of the compressors, which in some instances have again failed after only a few months of being replaced, have had to throw away hundreds of dollars' worth of spoiled food,

---

[3] *See* https://kutv.com/news/get-gephardt/pandemic-of-dying-lg-fridges-has-log-jammed-repair-workers (last visited September 15, 2023).

[4] *See* https://bestlifeonline.com/refrigerator-sears-news/ (last visited September 15, 2023) which states that "Sears, Kenmore, and LG have known about the issue with these refrigerators for nearly eight years."

have had to get rid of their LG or Kenmore refrigerator because technicians around the country refuse to repair these refrigerators, and at times have had to live without a working refrigerator while waiting for Defendants LG and Transform to perform repairs.

6.      A compressor is often referred to as the "heart" of a refrigerator because its function is to circulate refrigerant throughout the system, allowing a refrigerator to function.  The compressor defect alleged herein existed in each refrigerator at the time it was sold. Plaintiffs were deprived of the benefit of their bargain and bring this action to obtain relief for themselves and others who purchased a Kenmore or LG refrigerator in the United States of America.

**PARTIES**

**PLAINTIFFS**

7.      At all relevant times, Plaintiff Cambron has been a citizen of the State of Alabama. Specifically, Plaintiff Cambron's claims alleged herewith are against Defendants LG and Transform. Plaintiff Cambron used his refrigerator in Alabama, experienced defects in Alabama, and sought repairs in Alabama.

8.      At all relevant times, Plaintiffs Bolton, Fletcher, Sellers, Denman, Hatfield, Richmond and Wilson have been citizens of the State of Arizona. Specifically, Plaintiff Bolton's claims alleged herewith are against Defendants LG and Transform; Plaintiff Fletcher's claims alleged herewith are against Defendants LG and Home Depot. Plaintiff Sellers's claims alleged herewith are against Defendants LG and Costco. Plaintiff Denman's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Hatfield's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Richmond's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Wilson's claims alleged herewith are against Defendants LG and Best Buy. These Plaintiffs used their refrigerators in Arizona, experienced defects in Arizona, and sought repairs in Arizona.

9.      At all relevant times, Plaintiffs Hollis and Ray have been citizens of the State of Arkansas. Specifically, Plaintiff Hollis's claims alleged herewith are against Defendants LG and Transform. Plaintiff Ray's claims alleged herewith are against Defendants LG and Transform.

These Plaintiffs used their refrigerators in Arkansas, experienced defects in Arkansas, and sought repairs in Arkansas.

10.     At all relevant times, Plaintiffs Lavin, Schroeder, Wemhoff, Moser, Muchemore, Hernandez, Peighambari, Jelenic, Reichello, Shahab, Ko, Tangco, Cervantes, Wolfe and Ellis have been citizens of the State of California. Specifically, Plaintiff Lavin's claims are against Defendants LG and Transform. Plaintiff Schroeder's claims are against Defendants LG and Transform. Plaintiff Wemhoff's claims alleged herewith are against Defendants LG and Home Depot. Plaintiff Moser's claims alleged herewith are against Defendants LG and Transform. Plaintiff Muchemore's claims alleged herewith are against Defendants LG and Home Depot. Plaintiff Hernandez's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Peighambari's claims alleged herewith are against Defendant LG; Plaintiff Jelenic's claims alleged herewith are against Defendants LG and Transform.  Plaintiff Reichello's claims alleged herewith are against Defendants LG and Best Buy. Plaintiff Shahab's claims alleged herewith are against Defendants LG and Transform. Plaintiff Ko's claims are against Defendants LG and Transform; Plaintiff Tangco's claims are against Defendants LG and Transform. Plaintiff Cervantes's claims are against Defendants LG and Transform. Plaintiff Wolfe's claims are against Defendants LG and Transform. Plaintiff Ellis's claims are against Defendants LG and Transform. These Plaintiffs used their refrigerators in California, experienced defects in California, and sought repairs in California.

11.     At all relevant times, Plaintiff Cowan has been a citizen of the State of Colorado. Specifically, Plaintiff Cowan's claims alleged herewith are against Defendants LG and Costco. Plaintiff Cowan used her refrigerator in Colorado, experienced defects in Colorado, and sought repairs in Colorado.

12.     At all relevant times, Plaintiffs Schleich, Henderson, Brown, Griner-Comproski, Cannon, Borden and Leedekerken have been citizens of the State of Florida. Specifically, Plaintiff Schleich's claims alleged herein are against Defendants LG and Transform. Plaintiff Henderson's claims alleged herein are against Defendants LG and Transform. Plaintiff Brown's claims alleged

herein are against Defendants LG and Transform. Plaintiff Griner-Comproski's claims alleged herein are against Defendants LG and Transform. Plaintiff Cannon's claims alleged herein are against Defendants LG and Transform. Plaintiff Borden's claims alleged herein are against Defendants LG and Home Depot. Plaintiff Leedekerken's claims alleged herein are against Defendant LG. These Plaintiffs used their refrigerators in Florida, experienced defects in Florida, and sought repairs in Florida.

13.     At all relevant times, Plaintiffs Strickland, Frame, Campbell, Sack and Carey have been citizens of the State of Georgia. Specifically, Plaintiff Strickland's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Frame's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Campbell's claims alleged herewith are against Defendants LG and Transform. Plaintiff Sack's claims alleged herewith are against Defendants LG and Best Buy. Plaintiff Carey's claims alleged herewith are against Defendant LG. These Plaintiffs used their refrigerators in Georgia, experienced defects in Georgia, and sought repairs in Georgia.

14.     At all relevant times, Plaintiff Painton has been a citizen of the State of Hawaii. Specifically, Plaintiff Painton's claims alleged herewith are against Defendants LG and Home Depot. This Plaintiff used his refrigerator in Hawaii, experienced defects in Hawaii, and sought repairs in Hawaii.

15.     At all relevant times, Plaintiff Nelson has been a citizen of the State of Idaho. Specifically, Plaintiff Nelson's claims alleged herewith are against Defendants LG and Lowe's. This Plaintiff used his refrigerator in Idaho, experienced defects in Idaho, and sought repairs in Idaho.

16.     At all relevant times, Plaintiffs Hawotte, Burge, Weisberg and Holdgrafer have been citizens of the State of Illinois. Specifically, Plaintiff Hawotte's claims alleged herewith are against Defendants LG and Home Depot. Plaintiff Burge's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Weisberg's claims alleged herewith are against Defendant LG. Plaintiff Holdgrafer's claims alleged herewith are against Defendants LG and Transform.

These Plaintiffs used their refrigerators in Illinois, experienced defects in Illinois, and sought repairs in Illinois.

17.     At all relevant times, Plaintiffs Bell, Jameson, Hebner and Davis have been citizens of the State of Indiana. Specifically, Plaintiff Bell's claims alleged herewith are against Defendant LG. Plaintiff Jameson's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Hebner's claims alleged herewith are against Defendant LG. Plaintiff Davis's claims alleged herewith are against Defendants LG and Transform. These Plaintiffs used their refrigerators in Indiana, experienced defects in Indiana, and sought repairs in Indiana.

18.     At all relevant times, Plaintiffs Eaton and Sawyers have been citizens of the State of Kentucky. Specifically, Plaintiff Eaton's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Sawyers's claims alleged herewith are against Defendants LG and Home Depot. These Plaintiffs used their refrigerators in Kentucky, experienced defects in Kentucky, and sought repairs in Kentucky.

19.     At all relevant times, Plaintiff Scott has been a citizen of the State of Louisiana. Specifically, Plaintiff Scott's claims alleged herewith are against Defendants LG and Transform. These Plaintiffs used their refrigerators in Louisiana, experienced defects in Louisiana, and sought repairs in Louisiana.

20.     At all relevant times, Plaintiffs Mullikin, Rivera and Adewole have been citizens of the State of Maryland. Specifically, Plaintiff Mullikin's claims alleged herewith are against Defendants LG and Transform. Plaintiff Rivera's claims alleged herewith are against Defendants LG and Transform. Plaintiff Adewole's claims alleged herewith are against Defendants LG and Transform. These Plaintiffs used their refrigerators in Maryland, experienced defects in Maryland, and sought repairs in Maryland.

21.     At all relevant times, Plaintiff Sacharin has been a citizen of the State of Massachusetts. Specifically, Plaintiff Sacharin's claims alleged herewith are against Defendants LG and Best Buy. These Plaintiffs used their refrigerators in Massachusetts, experienced defects in Massachusetts, and sought repairs in Massachusetts.

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

22.     At all relevant times, Plaintiffs Tapin and Mauk have been citizens of the State of Michigan. Specifically, Plaintiff Tapin's claims alleged herewith are against Defendants LG and Transform. Plaintiff Mauk's claims alleged herewith are against Defendants LG and Lowe's. These Plaintiffs used their refrigerators in Michigan, experienced defects in Michigan, and sought repairs in Michigan.

23.     At all relevant times, Plaintiff Finkbeiner has been a citizen of the State of Minnesota. Specifically, Plaintiff Finkbeiner's claims alleged herewith are against Defendant LG. This Plaintiff used her refrigerator in Minnesota, experienced defects in Minnesota, and sought repairs in Minnesota.

24.     At all relevant times, Plaintiffs Feinstein and Lee have been citizens of the State of Mississippi. Specifically, Plaintiff Feinstein's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Lee's claims alleged herewith are against Defendants LG and Home Depot. These Plaintiffs used their refrigerators in Mississippi, experienced defects in Mississippi, and sought repairs in Mississippi.

25.     At all relevant times, Plaintiffs Freeman and Springston have been citizens of the State of Missouri. Specifically, Plaintiff Freeman's claims alleged herewith are against Defendants LG and Best Buy. Plaintiff Springston's claims alleged herewith are against Defendants LG and Best Buy. These Plaintiffs used their refrigerators in Missouri, experienced defects in Missouri, and sought repairs in Missouri.

26.     At all relevant times, Plaintiffs Harris and Hopfensitz have been citizens of the State of Nevada. Specifically, Plaintiff Harris's claims alleged herewith are against Defendant LG. Plaintiff Hopfensitz's claims alleged herewith are against Defendant LG. These Plaintiffs used their refrigerators in Nevada, experienced defects in Nevada, and sought repairs in Nevada.

27.     At all relevant times, Plaintiff Hargon has been a citizen of the State of New Hampshire. Specifically, Plaintiff Hargon's claims alleged herewith are against Defendant LG. This Plaintiff used her refrigerator in New Hampshire, experienced defects in New Hampshire, and sought repairs in New Hampshire.

28.     At all relevant times, Plaintiffs Reeser and Purcell have been citizens of the State of New Jersey. Specifically, Plaintiff Reeser's claims alleged herewith are against Defendants LG and Home Depot. Plaintiff Purcell's claims alleged herewith are against Defendants LG and Transform. Plaintiffs used their refrigerators in New Jersey, experienced defects in New Jersey, and sought repairs in New Jersey.

29.     At all relevant times, Plaintiffs McDonnell, Hetcher and E. Mitchell have been citizens of the State of New York. Specifically, Plaintiff McDonnell's claims alleged herewith are against Defendants LG and Transform. Plaintiff Hetcher's claims alleged herewith are against Defendants LG and Transform. Plaintiff E. Mitchell's claims alleged herewith are against Defendants LG and Home Depot. These Plaintiffs used their refrigerators in New York, experienced defects in New York, and sought repairs in New York.

30.     At all relevant times, Plaintiffs Rallo, Jamal, Gordon, Brooks and Kivlin have been citizens of the State of North Carolina. Specifically, Plaintiff Rallo's claims alleged herewith are against Defendants LG and Home Depot. Plaintiff Jamal's claims alleged herewith are against Defendants LG and Home Depot; Plaintiff Gordon's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Brooks's claims alleged herewith are against Defendants LG and Transform. Plaintiff Kivlin's claims alleged herewith are against Defendants LG and Best Buy. These Plaintiffs used their refrigerators in North Carolina, experienced defects in North Carolina, and sought repairs in North Carolina.

31.     At all relevant times, Plaintiffs Boster, Stoflinsky and Kenyon have been citizens of the State of Ohio. Specifically, Plaintiff Boster's claims alleged herewith are against Defendant LG; Plaintiff Stoflinsky's claims alleged herewith are against Defendants LG and Transform. Plaintiff Kenyon's claims alleged herewith are against Defendants LG and Transform. These Plaintiffs used their refrigerators in Ohio, experienced defects in Ohio, and sought repairs in Ohio.

32.     At all relevant times, Plaintiffs Marshall, Breedlove and Shriver have been citizens of the State of Oklahoma. Specifically, Plaintiff Marshall's claims alleged herewith are against Defendant LG. Plaintiff Breedlove's claims alleged herewith are against Defendants LG and

Lowe's. Plaintiff Shriver's claims alleged herewith are against Defendants LG and Lowe's. These Plaintiffs used their refrigerators in Oklahoma, experienced defects in Oklahoma, and sought repairs in Oklahoma.

33.     At all relevant times, Plaintiffs D. Nelson, and Gilmer have been citizens of the State of Oregon. Specifically, Plaintiff Nelson's claims alleged herewith are against Defendants LG and Home Depot; Plaintiff Gilmer's claims alleged herewith are against Defendant LG. These Plaintiffs used their refrigerators in Oregon, experienced defects in Oregon, and sought repairs in Oregon.

34.     At all relevant times, Plaintiffs Taylor, Philip Martin, Tyger and Albertelli have been citizens of the State of Pennsylvania. Specifically, Plaintiff Taylor's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Philip Martin's claims alleged herewith are against Defendants LG and Transform. Plaintiff Tyger's claims alleged herewith are against Defendants LG and Transform; Plaintiff Albertelli's claims alleged herewith are against Defendants LG and Transform. These Plaintiffs used their refrigerators in Pennsylvania, experienced defects in Pennsylvania, and sought repairs in Pennsylvania.

35.     At all relevant times, Plaintiff Parks has been a citizen of the State of South Dakota. Specifically, Plaintiff Parks's claims alleged herewith are against Defendants LG and Transform. These Plaintiffs used their refrigerators in South Dakota, experienced defects in South Dakota, and sought repairs in South Dakota.

36.     At all relevant times, Plaintiffs Gilliland and Morse have been citizens of the State of Tennessee. Specifically, Plaintiff Gilliland's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Morse's claims alleged herewith are against Defendants LG and Transform. These Plaintiffs used their refrigerators in Tennessee, experienced defects in Tennessee, and sought repairs in Tennessee.

37.     At all relevant times, Plaintiffs Miller, Gerbo, Ward, Jordan, Johnson, Suleiman, McAnderson, Monica Martin, Garcia, Hubbard, Cook, Smith, Munsch and Lemus have been citizens of the State of Texas. Specifically, Plaintiff Miller's claims alleged herewith are against

Defendants LG and Home Depot. Plaintiff Gerbo's claims alleged herewith are against Defendants LG and Costco. Plaintiff Ward's claims alleged herewith are against Defendants LG and Home Depot. Plaintiff Jordan's claims alleged herewith are against Defendants LG and Transform. Plaintiff Johnson's claims alleged herewith are against Defendant LG. Plaintiff Suleiman's claims alleged herewith are against Defendant LG. Plaintiff McAnderson's claims alleged herewith are against Defendant LG. Plaintiff Monica Martin's claims alleged herewith are against Defendants LG and Transform. Plaintiff Garcia's claims alleged herewith are against Defendants LG and Costco. Plaintiff Hubbard's claims alleged herewith are against Defendants LG and Transform. Plaintiff Cook's claims alleged herewith are against Defendants LG and Transform. Plaintiff Smith's claims alleged herewith are against Defendants LG and Lowe's. Plaintiff Munsch's claims alleged herewith are against Defendants LG and Home Depot. Plaintiff Lemus's claims alleged herewith are against Defendants LG and Home Depot. These Plaintiffs used their refrigerators in Texas, experienced defects in Texas, and sought repairs in Texas.

38.     At all relevant times, Plaintiffs Mitchell and Schultz have been a citizen of the State of Virginia. Specifically, Plaintiff Mitchell's claims alleged herewith are against Defendants LG and Costco. Plaintiff Schultz's claims alleged herewith are against LG and Lowe's. These Plaintiffs used their refrigerators in Virginia, experienced defects in Virginia, and sought repairs in Virginia.

39.     At all relevant times, Plaintiffs Koohpai, McDougal and Perkins have been citizens of the State of Washington. Specifically, Plaintiff Koohpai's claims alleged herewith are against Defendants LG and Costco. Plaintiff McDougal's claims are against Defendants LG and Lowe's. Plaintiff Perkins's claims alleged herewith are against Defendants LG and Lowe's. These Plaintiffs used their refrigerators in Washington, experienced defects in Washington, and sought repairs in Washington.

40.     Plaintiffs purchased and used Kenmore and/or LG branded refrigerators because they believed these refrigerators to be high quality and long-lasting refrigerators that were in the condition marketed/advertised.  At no time during their purchase and use of these refrigerators

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

were Plaintiffs aware that Defendants' claims with regards to the refrigerators manufactured and sold to them were false and misleading, and that these products were actually defective refrigerators that would break down after a brief period of use.

41.     Plaintiffs would not have purchased these refrigerators, at times paying premium prices and thousands of dollars, had they known that these products were defective and would break down, sometimes less than a year after being purchased.

**DEFENDANTS**

42.     Upon information and belief, Defendant LG Electronics U.S.A., Inc., the North American subsidiary of LG Electronics Inc., is incorporated under Delaware law and maintains its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

43.     Upon information and belief, Defendants Transform SR LLC and Transform SR Brands Management LLC ("Transform") are limited liability companies organized under the laws of Delaware and maintain their principal place of business at 5407 Trillium Boulevard, Suite B120, Hoffman Estates, Illinois 60192. On information and belief, these Transform entities were formed in 2019 to purchase the surviving assets of Sears Holding Company, which owned Sears Roebuck and Co. and Kenmore. These two entities now own and operate Sears as well as the Kenmore Appliance brand, which is produced by various manufacturers including LG.

44.     Upon information and belief, Defendant Costco Wholesale Corporation is incorporated under the laws of Washington with its principal place of business located at 999 Lake Drive, Issaquah, Washington 98027.

45.     Upon information and belief, Defendant Lowe's Home Centers, LLC is a limited liability company organized under the laws of North Carolina with its principal place of business located at 1000 Lowe's Blvd., Mooresville, NY 28117-8520.

46.     Upon information and belief, both Defendants BestBuy.Com, LLC and Best Buy Stores, L.P. are organized under the laws of Virginia, both with principal place of business located at 7601 Penn Avenue S., Richfield, Minnesota 55423.

47.     Upon information and belief, Defendant Home Depot U.S.A., Inc. is incorporated under Delaware law and maintains its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339.

48.     At relevant times, Defendants conducted regular and sustained business and engaged in substantial commerce and business activity in the State of California, which included but was not limited to selling, marketing and/or distributing both LG branded and Kenmore branded refrigerators in the State of California and Los Angeles County.

49.     At all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America including the State of California and including Los Angeles County, as Defendants derived substantial revenue therefrom.

## JURISDICTION AND VENUE

50.     This Court has jurisdiction over the lawsuit under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiffs and Defendants are domiciled in different states. The Court also has supplemental jurisdiction over the claim brought under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, because that claims arises from the same controversy as the state law claims over which this court has jurisdiction under CAFA.

51.     The Court has personal jurisdiction over all Defendants because they each have sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper.  LG and Transform have intentionally availed themselves of markets within California through their promotion, distribution, and sale of their products in this State. Similarly, the Retailer Defendants have sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper as they are retail stores, and each have tens and even hundreds of physical stores throughout the state of California.

52.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

53.     Refrigerators, an essential part of the modern American household, can be found in 99.9% of homes. Refrigerators allow people to preserve their food and reduce the risk of food-borne disease.

54.     Refrigerators are one of the longest lasting appliances, and are designed to last many years. In fact, LG and Kenmore have represented to the public that their refrigerators containing LG's linear compressors are very durable and have been tested and shown to surpass "the 20-year lifespan test."[5] Indeed, LG publicly states that "the testing was conducted according to LG's internal accelerated 20-year life-test protocol," and that because of these purported results, "LG is so confident it backs the compressor with a 10 year warranty."[6]

### A.     The Refrigerators and Representations About Them

55.     Defendants design, manufacture, distribute, and/or sell refrigerators throughout the country under the brand names "LG" and "Kenmore." These refrigerators are available for purchase in large retail stores such as Sears, Costco, Lowe's, Best Buy and Home Depot as well as in smaller appliance stores and online. The Manufacturer's Suggested Retail Price for these refrigerators ranges from approximately $1,800 to $4,500, with most models falling in the $1,800 to $3,500 MSRP range.

56.     On February 11, 2019, Transform's parent company purchased the well-known retail brand Sears, its assets and liabilities, and acquired the assets of Sears Holding Corporation including Kenmore, which is a brand of household appliances, its products which are produced by various manufacturers including LG. Kenmore does not manufacture its own appliances.

---

[5] *See, e.g.,* https://www.lg.com/levant_en/home-appliances/coretech/refrigerator#:~:text=Last%2010%2B%20Years,accelerated%20and%20proper%20use%20conditions; https://www.lg.com/ph/home-appliances/coretech/refrigerator; https://www.lg.com/eg_en/home-appliances/coretech/refrigerator; https://gp1stg.lg.com/uk/coretech/refrigerator/; https://www.lg.com/ae/appliances/coretech/refrigerator (last visited September 15, 2023). The same statements were contemporaneously disclosed on LG's American website but recently removed as a result of the asserted claims.

[6] *Id.*

---

Kenmore refrigerators are manufactured by appliance manufacturers such as LG and sold under the brand name Kenmore at Sears, as well as at other retail stores including Costco and Lowe's.[7] Transform assumed control over Sears' brick-and-mortar stores and website, https://www.sears.com, taking direct responsibility for subsequent sales and warranties, and continued to sell Kenmore refrigerators both in-store, online through the retail store "Sears," and through various other retailers including but not limited to Lowe's, Home Depot and Target.

57.     A compressor is the central component—the "engine"—of any refrigerator. A compressor contains a motor and pump that move refrigerant, which generates cold air, throughout the refrigerator. Typically, sensors in a refrigerator detect temperature increases and activate the compressor, which releases refrigerant in gas form.

58.     After being released from the compressor, refrigerant flows through the refrigerator's condenser. The condenser condenses the vaporized refrigerant to liquid form, releasing heat in the process. The liquid refrigerant then flows through the refrigerator's evaporator, which draws heat from the regions of the refrigerator that need to be cooled, causing the refrigerant to vaporize. The vaporized refrigerant then returns to the compressor, and the cycle repeats.

59.     LG developed its proprietary linear compressor in the early 2000s. LG designed the linear compressor to be an energy-efficient replacement for the reciprocating compressor used in many other refrigerators. Instead of the traditional, less efficient crank mechanism, which converts rotary motion into reciprocating motion, LG's linear compressor uses a magnet and springs to drive a piston motor.

60.     LG's proprietary linear compressor refrigerators are important to its business and are featured prominently in its public representations, including in advertisements and marketing materials. LG represented in a November 24, 2014 press release that 10 million LG refrigerators had been sold since 2001.[8] According to LG:

---

[7] *See* https://www.kenmore.com/where-to-buy (last visited September 15, 2023).

[8] *See* https://www.lgnewsroom.com/2014/11/10-million-homes-benefiting-from-lg-refrigerators-

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

In 2001, LG introduced the world's first refrigerator powered by an Inverter Linear Compressor, continuing to improve the technology ever since LG's technology employs a straight piston drive instead of a conventional reciprocating drive, resulting in less internal friction than conventional motors. This increases the refrigerator's reliability and durability while also generating less noise while running. LG refrigerators featuring Inverter Linear Compressor technology proved to be approximately 32 percent more energy efficient than those equipped with conventional reciprocating compressors, contributing significantly to lower electricity bills.

61.     In the same release, LG touted that the LG refrigerators are "up to 25 percent quieter" than refrigerators powered by reciprocating compressors.[9] LG also touted the linear compressor's reliability, stating that the component "reduced internal friction by 64.2 percent, causing less wear to the refrigerator and helping it to achieve a 20-year-life-span, a first in the industry."[10]

62.     LG singled out the linear compressor in its public statements about its refrigerators: "LG is so confident in its technology that the Inverter Linear Compressor has been covered under a 10-year warranty since 2009, a first in the industry."[11]

63.     LG issued another press release on March 21, 2017 to mark the sale of its "15th million refrigerator worldwide powered by its proprietary Inverter Linear Compressor"—which LG characterized as "the appliance division's most successful core technology." In the same release, LG projected that it would sell 4 million more units in 2017, or "an average of seven refrigerators sold every minute." As in the 2014 press release, LG cited statistics concerning the linear compressor's performance, claiming that it "delivers 55 percent better energy efficiency and 15 percent less noise compared [to] its first-generation compressor."

---

with-inverter-linear-compressor-technology/ (last visited September 15, 2023).

[9] Id.

[10] Id.

[11] See https://www.lgnewsroom.com/2014/11/10-million-homes-benefiting-from-lg-refrigerators-with-inverter-linear-compressor-technology/ (last visited September 15, 2023).

---

64.     Similar statements appear on LG's website, on its product pages, on its YouTube
Channels and social media pages. Some examples of the statements made by LG concerning the
subject compressors and refrigerators are:

- "The cutting edge design and performance of LG Refrigerators is unmatched. Designed to last long, store more, and add style to your home, an LG Refrigerator keeps food cold and fresh in a space-saving and stylish unit."[12]

- "LG provides reliable & state-of-the-art compressor and motors based on advanced technology that keep customers up to date with the latest part."[13]

- "LG's Inverter Linear Compressor is a critical component of every premium refrigerator and is considered a core technology behind the success of the company's appliances. Unlike conventional rotary compressors that utilize circular motion, LG's Linear Compressor converts linear motion into cooling power much more efficiently. This process reduces energy consumption and noise level compared to refrigerators with conventional motors."[14]

- "Why LG Linear Compressors? LG Linear Compressor has higher efficiency and less efficiency variation. LG Linear compressor runs stable without causing noise. Fewer friction points reduce the noise level. LG linear compressor has better responsiveness of control."[15]

- "With 20 years lifetime warranty, we are confident that our fridges are one of the most durable and reliable products available in the market."[16]

- "Freshness, Energy Efficiency, Durability, Quiet."[17]

- "LG's Inverter Linear technology is designed only with essential parts, improving performance and durability."[18]

- "LG is the first to add Linear Technology to its refrigerators, ensuring food stays fresher for longer."[19]

- "10-Year Warranty – Peace of mind for 10-years with Inverter Linear

---

[12] *See* https://www.lg.com/us/refrigerators (last visited September 15, 2023).

[13] *See* https://www.lg.com/global/business/compressor-motor (last visited September 15, 2023).

[14] *See* https://lgcorp.com/media/release/7242 (Press Release dated May 12, 2017) (last visited September 15, 2023).

[15] *See* https://www.lg.com/global/business/download/resources/CT00000308/LG_Leaflet_Linear_Compressor[20201204_165059].pdf (last visited September 15, 2023).

[16] *See* https://www.youtube.com/watch?v=5KZUJelwHZ4 (last visited September 15, 2023).

[17] *See* https://www.youtube.com/watch?v=_lsrYCBPReE (last visited September 15, 2023).

[18] *See* https://www.youtube.com/watch?v=_lsrYCBPReE (last visited September 15, 2023).

[19] *Id.*

Compressor."[20]

- "The Linear Compressor, a core technology of LG, is quiet and efficient. Its unique direct transmission mechanism minimizes mechanical loss, thus saving energy, increasing durability and making less noise."[21]

- "The innovative Linear Compressor, featured on LG refrigerators, helps to ensure a more consistent temperature inside your fridge, to help all your favorites stay fresh longer."[22]

- "The LG Inverter Linear Compressor has surpassed the 20-year lifespan test," "the testing was conducted according to LG's internal accelerated 20-year life-test protocol," and that because of these purported results, "LG is so confident it backs the compressor with a 10 year warranty."[23]

65.   Various misleading representations have also been made by Transform with regards to its Kenmore refrigerators and the LG refrigerators it sells. Some examples include:

- "Kenmore Elite 74022 French Door Bottom-Freezer Fridge—Keep Food Fresh and Accessible."

- "Fresher Food Longer GeniusCool technology uses Digital Temperature Control, Multi Air Flow and Electronic sensors to keep all of your foods fresh. The linear compressor adjusts to quick temperature changes and a CleanFlow Air filter circulate air through a charcoal filter to eliminate odors and help maintain freshness."

- "Multi-Air Flow freshness systems monitors and maintains ideal conditions inside the refrigerator to help keep your food fresh."[24]

66.   Moreover, on the various LG and Kenmore refrigerators' product webpages on Defendant Retailers' websites, there are links to manufacturer LG's website. As such, Defendant Retailers have incorporated by reference all relevant content on Defendant LG's website,

---

[20] See https://www.youtube.com/watch?v=_Gzmxz2ocWw (last visited September 15, 2023).

[21] See https://www.youtube.com/watch?v=XREmacrlZ-0 (last visited September 15, 2023).

[22] See https://www.youtube.com/watch?v=1T3kaHjwMJU (last visited September 15, 2023).

[23] See https://www.lg.com/eg_en/home-appliances/coretech/refrigerator (last visited September 15, 2023).

[24] See https://www.sears.com/lg-lrfs28xbs-27.7-cu-ft-3-door/p-A116901765 (last visited September 15, 2023).

including but not limited to statements made as to the durability of these refrigerators as listed in paragraphs 60 to 65 of this complaint. Below, are a few examples:



67.     Additionally, beyond the statements made by LG which the Defendant Retailers incorporated by reference on their websites, each Defendant Retailer also attained, disseminated, and marketed other information about the lifespan and reliability of the subject refrigerators, including the compressors contained within them. Statements approved by LG and Transform (and its predecessor) and made by its authorized resellers also advertised the linear compressors and the refrigerators' overall functionality. These statements include the following:

- BEST BUY – (1) "Achieve the right chill. Vents and a linear compressor will keep temperature and humidity conditions at ideal levels inside the fridge." (2) "Along with a linear compressor, dual evaporators and vents helps [sic] ensure food is constantly surrounded by cool air."

- LOWES – (1) "Smart Cooling® system is designed to maintain superior conditions within the refrigerator. The Linear Compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer." (2) "Smart Cooling System monitors and maintains temperature and humidity levels to help keep food fresh."

- SEARS – "For fresher food longer, Kenmore and Kenmore Elite refrigerators with GeniusCool™ technology use Digital Temperature Control, Multi Air Flow

and electronic sensors to keep all of your food fresh while the linear compressor adjusts to quick temperature changes."

- HOME DEPOT – (1) "Linear Compressor reacts quickly to temperature fluctuations and helps keep your food fresher, longer; strategically-placed vents in every section help to surround your food with cool air no matter where you put it." (2) "Smart Cooling Plus System uses a fresh air filter, dual evaporator linear compressor, multi-air flow technology, digital sensors, and digital controls to keep your food at its freshest. . . ."

- COSTCO – (1) LG's Smart Inverter Compressor controls the temperature of your refridgerator [sic] evenly, allowing your food to taste fresher, longer." (2) "Multi-Air Flow Technology – Smart Cooling System – Inverter Linear Compressor – Smart Diagnosis"

68.   Moreover, at the point of sale, many of the Defendant Retailers' employees expressly discussed the new compressor technology contained in the LG and Kenmore refrigerators, and the extended lifespan and increased efficiency and reliability of these refrigerators, to market, sell and convince customers to purchase these refrigerators. Moreover, Defendant Retailers' employees made representations about the linear compressors contained in the LG and Kenmore refrigerators and made representations to many of the Plaintiffs about the exceptional quality and durability of these refrigerators.  At the point of sale, the Defendant Retailers' employees represented to numerous Plaintiffs that the LG and Kenmore refrigerators were best-selling refrigerators, priced at a premium due to their outstanding quality and durability.  At the point of sale, the Defendants Retailers' employees attributed the exceptional quality and durability of the LG and Kenmore refrigerators to this new linear compressor technology innovated by LG. These representations made by the Defendant Retailers were intended to influence Plaintiffs to purchase these faulty refrigerators when, in reality, Defendants have been well aware of the systemic compressor failures of these refrigerators, and therefore have engaged in making misrepresentations to consumers merely to make sales and profit from unknowing consumers.

**B.**     **The Defect Manifests in the Kenmore and LG Refrigerators**

69.     LG and Kenmore's linear compressors have caused consumers problems for many years. When an LG or Kenmore compressor fails, the refrigerator warms and the perishables within it spoil. In fact, as a result of this spoilation, customers have lost thousands of dollars worth of foods/beverages, and at times medication, and have had to face the risk of ingesting spoiled or otherwise unsafe food, which can cause serious illnesses.

70.     LG and Kenmore's linear compressors contain an intake valve—where refrigerant enters—and a discharge valve—where refrigerant exists. These valves are responsible for regulating and controlling the flow of refrigerant through the compressor.

71.     LG and Kenmore's linear compressors work in close connection with another important component, called the evaporator. The evaporator is where heat transfer takes place. Together, the compressor and evaporator are essential components for cooling. Before refrigerant enters the compressor, it flows through the evaporator. The evaporator absorbs heat from the interior of the refrigerator and into the refrigeration system. This process causes the refrigerant to vaporize, and the vaporized refrigerant is then sent through the compressor.

72.     As used herein, "compressor defect" refers to the defective nature of the linear compressor and related parts, including the evaporator, in the refrigerators.

73.     The tubing of the evaporator in the refrigerators is defective and prone to corrosion and pitting from ordinary usage. Pin-holes develop in the evaporator tubing, which cause leaks and allow atmospheric air to enter. Because of the air leakage, the refrigerant that passes from the evaporator to the condenser generates excess pressure that stresses the compressor and contaminates oil in the compressor.

74.     The compressor's components are defective and incapable of withstanding the additional pressure, resulting in failure. Typically, the weakest component of the compressor—the discharge valve—is the first to fail.

75.     Once the compressor in a Kenmore or LG refrigerator fails, even if a repair is performed, the refrigerator remains substantially certain to fail again within a few years.

76.     LG and Kenmore's linear compressors are thus inherently defective—and the defect inevitably manifests. Kenmore and LG nevertheless have responded to warranty claims by attempting futile repairs, and at times failing to even render repairs by ignoring customers' complaints or claiming that the warranty period has passed. As a result, consumers have been left without a refrigerator for months while they wait for service, and many have experienced repeated failures, forcing them to dispose of their new refrigerators or spend hundreds, if not thousands, on repair costs.

**C.      Defendants' Knowledge of the Compressor Defect**

77.     Many complaints of malfunctioning refrigerators, dating back a decade, have been made directly to LG, Transform (and its predecessor) and all Defendant Retailers on their websites and on social media pages that Defendants regularly monitor. Consumers, including Plaintiffs in this action, have contacted LG, Transform and all Retailer Defendants numerous times by telephone, e-mail and text message and put them on notice of the defective compressors contained within these LG and Kenmore branded refrigerators.  Additionally, consumers have left reviews on Defendants' websites, have posted on social media accounts of Defendants and have even complained to their own State's Attorney General's office about the unlawful practices of Defendants LG and Kenmore in selling defective products in the market. Just a few examples of hundreds of reviews left regarding these refrigerators on Defendants' websites, which include responses from Defendant LG, establishing that Defendants were on notice of these defects, are as follows:[25]

_____

[25] *See, e.g.,* https://www.homedepot.com/p/LG-28-cu-ft-4-Door-French-Door-Smart-Refrigerator-with-Ice-and-Water-Dispenser-in-PrintProof-Stainless-Steel-LMXS28626S/302253240;

https://www.sears.com/kenmore-73315-30.5cu-ft-french-door-refrigerator-stainless/p-A084330105;

https://www.costco.com/lg-27-cu.-ft.-4-door-french-door-refrigerator-with-smartdiagnosis.product.100711321.html;

https://www.lowes.com/pd/LG-Smart-Wi-Fi-Enabled-27-8-cu-ft-4-Door-French-Door-Refrigerator-with-Ice-Maker-Fingerprint-Resistant-Stainless-Steel-ENERGY-STAR/1000297793;



https://www.bestbuy.com/site/reviews/lg-24-5-cu-ft-french-door-smart-refrigerator-with-external-tall-ice-and-water-stainless-steel/6360730?variant=A&skuId=6360730&rating=1 (last visited September 15, 2023).

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*



78.    In fact, aggrieved consumers have even formed multiple Facebook groups, including one called "LG Refrigerators – Life is NOT good" which has over 2,200 followers and contains numerous accounts of consumers who experience LG and Kenmore refrigerator compressor failure. Below, are just a few examples of hundreds of said accounts:[26]



_____

[26] *See* https://www.facebook.com/LgRefrigerators/ (last visited September 15, 2023).



**LG Refrigerators - LIFE is NOT GOOD**
September 27 · 🌐

Good luck! We went four months without ours. We finally found someone to
repair it after waiting on parts. Two weeks later it was out again. I will NEVER buy
another LG product again!   Really LG, is this the best you can do? Apparently it is
according to everyone else who posts on this site.

 27                                    14 Comments  1 Share

**LG Refrigerators - LIFE is NOT GOOD**
April 20 · 🌐

Just when I thought LG couldn't get any lower I read this post....

LG doesn't pay repair providers either after they purchase the compressors and
try to fix for customers. My husband is out $1000s of dollars in unpaid claims that
LG isn't reimbursing.

 27                                    43 comments  3 shares

79.     As evidenced above, consumers, including Plaintiffs, have for many years made
innumerable daily complaints to Defendants, including each Retailer Defendant in-person, by
telephone and by written communication.

80.     Moreover, Defendants have no doubt had exclusive and direct knowledge of the
scale of the compressor problems not only from their communications with their complaining
customers but also from communications with their authorized repair personnel, who have been
inundated by repair requests for years.[27]

81.     Based on Plaintiffs' experiences, when they contacted various appliance repair
personnel, many repair technicians outright refused to work on LG and Kenmore refrigerators
due to their knowledge that the refrigerators were defective, their inability to warrant their work
and the expectation that any replaced LG compressor would fail again given its inherent defect,
making the repair personnel potentially liable and prone to lose credibility. [28] When Plaintiffs

_____

[27] *See* https://kutv.com/news/get-gephardt/pandemic-of-dying-lg-fridges-has-log-jammed-repair-workers (last visited September 15, 2023).

[28] *Id.* ("Knight says she called repairman after repairman and, as soon as she told them her fridge
is an LG, she says they each told her they were months out or that they don't work on LGs

_____

were able to secure appliance repair personnel, on many occasions it was certified LG service companies, which directly report the issues to LG and *may* get reimbursed for their work by LG or other Defendants.[29]

82.     Notably, many Plaintiffs were told by LG certified repair companies, hired and sent by LG, that they would have to pay out of pocket for the repair costs on the day of the repair, and then would have to pursue a refund from LG, because LG has not been paying the repair technicians it hires and as such, they were not willing to make repairs without being paid on the day of. These LG hired technicians stated to Plaintiffs that unless Plaintiffs paid them on the day of service, they would not service and repair the refrigerator despite having been hired by LG. Having no other choice, many Plaintiffs agreed to pay the repair costs to the LG hired technicians with the hopes of getting back their money from LG. However, LG has not refunded Plaintiffs the money which Plaintiffs were not supposed to pay for in the first place.

83.     The oversized inundation of repair requests of LG compressors is well-known by Defendants, as it documented and dates to several years ago, having been characterized as an outsized "national" and "pandemic" failure.[30] Defendants have known that LG compressors within the refrigerators fail "significantly more [than other brands]."[31] In response to negative

---

anymore….Worse, LG problems were starting to hurt his brand because customers were beginning to associate their fridges dying with Appliance Service by Paul, he said.").

[29] *Id.* ("Appliance Service by Paul was among the service companies who turned Knight down in her quest for fridge repair. Dodge says Appliance Service by Paul was a certified LG service company for many years but, after months of frustration, he told LG his company is done working on LGs. 'We're just getting buried in it,' he said…Worse, LG problems were starting to hurt his brand because customers were beginning to associate their fridges dying with Appliance Service by Paul, he said. Worst, when his team would go out and fix fridges for LG, Dodge says he struggled to get LG to reimburse his company. 'They've taken months to even pay us the claims,' he said.").

[30] *Id.*

[31] *Id.* ("Appliance Service by Paul technician Tyler Murphy showed Get Gephardt a pile of about 50 bad LG fridge compressors, as well as photos showing they have repaired dozens more. Murphy says those compressors are from service calls over a period of just a couple of months.

'It's significantly more [than other brands],' Murphy said. 'The other brands, we maybe replace a couple compressors a month.'").

news reports dating back years, which outlined the systematic failure of the LG compressors within the refrigerators and the customers' inability to get the issues resolved, LG even publicly recognized the need to hire more authorized repair personnel to address the litany of defective LG compressors by saying that it was hiring "more LG technicians to assist customers quickly and effectively."[32]

84.     Furthermore, many consumers, including many of the Plaintiffs in this action, have been told by Defendants LG and Transform's ***own*** authorized repair personnel that the issue with the dying compressors is one that "happens all the time." Defendants LG and Transform's ***own*** authorized repair technicians have also advised many of the Plaintiffs that even if they replace the old compressor with a brand new one, the maximum expected life of the new compressor is no more than two-years, as the replacement compressor is also defective. Moreover, Defendants LG and Transform's ***own*** authorized repair technicians have also stated to many of the Plaintiffs that on average they replace a minimum of two of these faulty compressors a day, and one Plaintiff was even told by Defendants' ***own*** authorized repair personnel that he has replaced over 2000 defective compressors in the last four years. This number is vastly greater than repairs to any other type of compressor and refrigerator.

85.     Defendant Retailers have also had knowledge of the defective compressors contained in these refrigerators as they have known about the high rate of customers' attempts to return these refrigerators as Defendant Retailers independently track this information. Each of the Retailer Defendants has detailed product information management systems, that track the sales, returns and profitability of products.  This allows each Retailer Defendant to possess knowledge about the LG and Kenmore refrigerators' rate of returns and customer complaints.  Many of the Defendants, including Transform, Costco and Lowe's, also market and sell their own extended warranty policies when the purchase of an appliance is made.

---

[32] *Id.* ("'The problem was LG's poor design of products and lack of support for both the service company and the consumer,' [a LG authorized repair service] added. 'We have NOTHING to do with the national failure of these products.'").

86.     Retailer Defendants also have their own return policies and individualized systems to recall certain defective products.  The Retailer Defendants extend these services and safeguards to their customers, irrespective of a manufacturer's policy.  Given their singular tracking systems and specific interactions with consumers, the Retailer Defendants possess superior knowledge about defective products they sell directly to customers.  Here, in addition to this personalized information, the Retailer Defendants were also aware of the prior lawsuits filed against Defendant LG (for its LG and Kenmore refrigerators), because of their ongoing relationships with Defendant LG.

87.     Moreover, multiple lawsuits have been filed since 2012 which have placed not just LG and Transform, but all Defendants on notice of the widespread failures of these Kenmore and LG refrigerators containing the defective compressors. In fact, this is even more clear by the fact that in the prior class action lawsuits against LG regarding its refrigerators containing faulty compressors, some, if not all, of the Retail Defendants were subpoenaed, leaving no doubt that they had full knowledge of the pressing and ongoing issues with the LG and Kenmore refrigerators they have been selling to customers. Nonetheless, and despite their knowledge, these Retail Defendants continued to sell and profit from these faulty refrigerators at the expense of their unknowing consumers.

88.     Furthermore, multiple technicians from various refrigerator repair companies which Plaintiffs have contacted in order to repair their LG or Kenmore model refrigerators have stated to Plaintiffs that they specifically do not repair LG and Kenmore refrigerators because of the high rate of compressor failures and LG and Kenmore's failure to adequately respond to the problem by providing non-defective parts for repairs. The fact that technicians are not willing to work on these branded refrigerators has made it even more difficult on Plaintiffs and the class members who wish to have their refrigerators repaired in order to continue using them, given the high cost of purchasing a new refrigerator.

89.     Additionally, multiple technicians who do work on LG and Kenmore refrigerators have advised Plaintiffs and the class members that at times they replace up 5 to 10 LG and

Kenmore compressors per day given the high rate of compressor failures in LG and Kenmore branded refrigerators. This number is vastly greater than repairs to any other type of compressor and refrigerator. Some of these technicians have been in contact with LG and Kenmore specifically about the compressor failures, and in order to obtain the necessary replacement parts. Many of these technicians are also LG authorized service personnel, and, consequently, report directly to LG with respect to all LG repair requests.  These LG authorized service personnel also request and obtain reimbursement for certain repairs of LG compressors. Almost all of these technicians have further advised those Plaintiffs who had their compressors replaced that the replaced compressor will likely fail, and their refrigerator will stop cooling again within a few months. Many of them have suggested that Plaintiffs purchase other branded refrigerators as another compressor failure is imminent.

90.     Finally, LG and Transform have gained direct knowledge of the compressor defects through their role as designer and manufacturer of the compressor products at issue.

### D.     Inadequate Warranty Service

91.     Many of the consumers who experienced this defect have voiced frustration with LG's warranty service and the warranty service of its authorized sellers and repair providers. Despite being aware of the defect, LG and Transform replace defective parts with defective parts, exposing customers to repeat failures. They also charge customers hefty amounts for labor costs associated with replacing the compressor part, even if they provide the new (also defective) compressor free of charge. Moreover, in the case of Kenmore refrigerators, many customers, including many of the Plaintiffs, had to pay out of pocket for both the cost of a new compressor and the labor associated with replacing it, as they were told by Transform that there is no warranty on the compressor part, given Kenmore's one-year warranty on parts, despite Plaintiffs/consumers having had purchased the refrigerators less than three years prior.

92.     Defendants also require consumers to wait for weeks, and at times several months, for overwhelmed repair providers to obtain a replacement compressor and attempt the repair, leaving customers with no refrigerator for many weeks and forcing them to 1) have to live out of

small coolers; 2) spend money on fast food in order to be able to survive; and in many cases 3) putting them in a financially dire situation by forcing them to purchase another refrigerator for thousands of dollars while they wait for their previous one to be repaired, as many, including the elderly and families with young children, cannot survive without a working refrigerator.

93.     Moreover, hundreds, if not thousands of repair technicians around the country, _**refuse**_ to work on LG and Kenmore branded refrigerators, leaving customers with no choice but to 1) use LG and Transform's own technicians which charge exponentially higher fees for diagnostic fees, compressor parts and labor fees; or (2) have no choice but to throw out their refrigerators, that are no more than a few years old, refrigerators because local repair technicians refuse to work on their refrigerator, LG and Transform charge much higher fees for repairs and will not honor their warranties and repair the refrigerators they sold, there are no LG and Transform technicians around them in their area and none are willing to travel to them, at bottom, any repair will be temporary, at best, because the replacement part is equally defective.

94.     Further, until 2018 LG required consumers, after the first year of ownership, to pay for the labor associated with replacing the defective compressor. LG covered only the cost of replacement parts. Such costs generally range from $200 to over $1,000. For LG refrigerators purchased after January 1, 2018, LG allegedly covers parts for ten years and parts and labor for five years, however, despite these extended warranties, multiple customers, and many of the Plaintiffs in this action, have complained that Defendants _have not_ repaired their Refrigerators and have refused to cover the labor costs.

95.     Regardless of whether LG and/or Transform pay some costs for some consumers, its warranty performance, and the warranty performance of its authorized agents, is deficient. Plaintiffs and class members uniformly overpaid for their Kenmore and LG refrigerators because of the defective compressor contained within them, and those who experienced the defect have been left without a refrigerator while waiting for LG and/or Transform to potentially diagnose the problem and arrange for repairs, though in many cases it fails to do so even if there is a "warranty" coverage. Moreover, customers have lost thousands of dollars in foods/beverages, and at times

medication, that have been spoiled as a result of these failing refrigerators, and many have suffered additional damages by way of damage to their property as a result of the melting of the food which has caused water damage to their kitchens' flooring and cabinets.

96.     Additionally, Transform has used its deceptive conduct of continuing the sale of these faulty refrigerators to make additional money by taking advantage of its customers, who paid thousands of dollars for refrigerators they believed would last them years to come, by offering them and selling them its appliance insurance at the time that its technicians are requested by a customer. In fact, Transform deceives its customers by selling them refrigerators with faulty compressors, and then when the refrigerator breaks down a short time later, Transform offers its customers its appliance insurance which costs $49.99 a month and requires a commitment of at least one-year, and in return, if a customer signs up, gives them a $150.00 discount on repair costs that they have to pay to fix their refrigerators. Thus, many customers who are left with no choice but to pay for the repair costs of their refrigerators, agree to sign up for this "insurance" given that 1) they will receive a $150.00 discount off of their Kenmore and LG repair costs, and 2) many of these customers are, correctly, told by Transforms' technicians that the newly installed compressor in the Kenmore and LG refrigerators may fail again after a short amount of time. Therefore, many of these customers sign up for this "appliance insurance" in order to protect themselves from the additional compressor failures that are no doubt going to happen in the future.

97.     Similarly, other Defendant Retailers market and sell their own extended warranties to customers at the time of purchase of these refrigerators, and offer services such as delivery and installation, as well as costly repair services, profiting from these customers' purchase of the refrigerators. In fact, several of the Plaintiffs in this action paid for and purchased extended warranties through the respective Defendant Retailers they purchased their LG or Kenmore refrigerator from. To date, Defendants have not implemented an effective remedy for those who suffer the compressor defect, and instead continue to profit from the sale of these defective refrigerators, the extended warranties they offer as well as the additional costly services they offer, including delivery, installation and repair services.

E.      <u>Allegations Made by All Plaintiffs</u>

<u>In-Store Purchases</u>

98.      Each of the Plaintiffs who made an in-store purchase looked at a sample model of the refrigerator they were going to purchase, saw promotional material for the refrigerator at the retail store they visited, and prior to purchase, was provided information about the subject LG or Kenmore refrigerator by the Defendant Retailers' employees. The information provided to each of the Plaintiffs who made an in-store purchase portrayed the refrigerators as high quality, fully functional and extremely durable. Furthermore, Plaintiffs who purchased their refrigerators in person at Sears, Lowe's, Costco, Best Buy and Home Depot, were told by employees of Retailer Defendants that these LG and Kenmore branded refrigerators were of top quality, very durable and highly recommended. At no point in time prior to purchasing the refrigerators, nor after purchasing each respective refrigerator, were any of the Plaintiffs advised by any of the Defendants or their employees, nor were any disclosures made, that each of these refrigerators purchased by Plaintiffs was defective and prone to compressor failure.

99.      Furthermore, at no point in time prior to or after the purchase of the subject refrigerators in-store, was a disclosure of an arbitration clause or class action waiver made to any of the Plaintiffs. Plaintiffs did not see any Notice of Arbitration inside or on any of the models displayed in the retail stores, including at Sears, Lowe's, Costco, Best Buy or Home Depot. Indeed, Plaintiffs allege that the display refrigerators they inspected at the Defendant Retailers' stores did not contain any Notice of Arbitration inside or on the refrigerator.  Further, Plaintiffs attest that at all times leading up to and after the sale of the refrigerator, the manufacturer's Notice of Arbitration insert was inaccessible for them to inspect or review as it was missing. Similarly, Plaintiffs did not see any refrigerator boxes on display at the Defendant Retailers' stores.  Indeed, Plaintiffs allege that the manufacturer's boxes containing the refrigerators were not accessible to any customer shopping at the Defendant Retailers' stores.  Further, Plaintiffs attest that at all times leading up to and after the sale of the refrigerator, the manufacturer's box was not only inaccessible to them but also not available for them to inspect or examine. Furthermore, no statements regarding arbitration were made or disclosed by any of Defendants' employees to any

of the Plaintiffs prior to or after Plaintiffs made their purchase. These facts are further confirmed by photos taken of LG branded refrigerators at some of the Defendant Retailers' stores in September 2023 which showcase that no Notice of Arbitration is attached outside or inside these refrigerators, and that there are no refrigerator boxes on display at these stores.

Photos taken of an LG refrigerator at a Home Depot in Los Angeles, California in September 2023:









Photos taken of a LG refrigerator at a Best Buy in Los Angeles, California in September 2023:





*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*



*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

100.    None of the Plaintiffs had knowledge of the alleged arbitration clause or class action waiver when they purchased the refrigerator, when they had it installed, or when they began using it.

**Online, Open-Box, or Used Purchases**

101.    Each of the Plaintiffs who made an online, open-box or used purchase of LG and Kenmore branded refrigerators, looked at promotional online material made available by Defendants on their various websites, through videos, and on their various social media pages. The information provided online to each of the Plaintiffs who made an online purchase portrayed the LG and Kenmore branded refrigerators as high quality, fully functional and extremely durable. At no point in time prior to purchasing the refrigerators, nor after purchasing his/her respective refrigerator, were any disclosures made, online or otherwise, that each of these refrigerators purchased by Plaintiffs was defective and prone to compressor failure.

102.    Moreover, the product listings online on Defendants' various websites did not include any reference to an arbitration agreement or class-action waiver, nor had any pictures of the manufacturer's product box, Notice of Arbitration insert or any arbitration notice. This is confirmed by the fact that even as of the date of filing of this Fourth Amended Complaint, there are no images showing these refrigerators' manufacturer boxes or any Notice of Arbitration inside or outside these refrigerators, on the product listing pages on the Defendant Retailers' websites.[33]

103.    Furthermore, it is undisputed that Plaintiffs who made open-box purchases or purchased used LG or Kenmore branded refrigerators did not have access to the manufacturer's box, Notice of Arbitration inserts or even manual that came with the refrigerators they purchased.

---

[33] *See* https://www.kenmore.com/products/kenmore-73105-27-9-cu-ft-french-door-smart-refrigerator-active-finish-stainless-steel/; https://www.lowes.com/pd/LG/5014123647; https://www.costco.com/lg-26-cu.-ft.-smart-counter-depth-max-french-door-refrigerator.product.4000103974.html; https://www.bestbuy.com/site/lg-22-5-cu-ft-4-door-french-door-counter-depth-refrigerator-with-door-in-door-and-craft-ice-stainless-steel/6397168.p?skuId=6397168; https://www.homedepot.com/p/LG-28-cu-ft-4-Door-French-Door-Smart-Refrigerator-with-Ice-and-Water-Dispenser-in-PrintProof-Stainless-Steel-LMXS28626S/302253240 (last visited September 15, 2023).

**Delivery and Installation**

104.    Each refrigerator that was delivered and installed at Plaintiffs' residences, regardless of whether the purchase was made online or in-store, was taken out of the box by the installers prior to being brought into each Plaintiff's house. This was the case as it was each Defendants' policy to dispose and haul away the manufacturer's box, packaging and other related items, and to ensure proper installation and function of the newly purchased refrigerator. Indeed, the Retailer Defendants, by way of their delivery and/or installation personnel, installed the subject refrigerators, removing them out of their manufacturer box even before the item was brought in the residence, and disposed or hauled away the manufacturer's box, packaging and other related items. This is customary and how the Retailer Defendants provide appliance delivery and installation to customers, and is in fact confirmed by each of the Retailer Defendants on their respective websites:

- COSTCO – "Our delivery team will: . . . Connect new appliance(s) to existing home utilities and test for proper operation. . . Remove all packaging materials from your home"[34]
- SEARS – "Our deliver team will. . . Connect delivered appliances to existing home utilities per the "Product-Specific Guidelines" supplied by the manufacturer or by Sears. . . Remove Packing materials from the delivery premises."[35]
- LOWE'S – "Delivery includes: . . . Connection of appliance to existing water source and ice maker or ice and water dispenser connection (if applicable). . .Unboxing and Inspection of your appliance . . . Removal of Packaging from your home. . . Level and Test of the appliance to ensure it's connected properly"[36]
- HOME DEPOT – "Safe Setup – The delivery team will uncrate, set in place, level and connect your appliance – The team will test the appliance for functionality and inspect it for damage - Clean Removal – The delivery team will dispose of all new appliance packaging."[37]

---

[34] *See* https://customerservice.costco.com/app/answers/GuidedAssistant/a_id/1001246/loc/en_US/g_id/122 (last visited September 15, 2023).

[35] *See* https://www.sears.com/en_us/customer-service/shipping-delivery-returns/delivery.html (last visited September 15, 2023).

[36] *See* https://www.lowes.com/l/help/appliance-delivery-haulaway (last visited September 15, 2023).

[37] *See* https://www.homedepot.com/c/Appliance_Delivery_Installation?mtc=SHOPPING-RM-

---

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

- BEST BUY – "We'll deliver, install and make sure your new refrigerator is working. We'll also remove all packaging from your home."[38]

105.    As part of their delivery and installation procedure, Defendants Sears, Costco, Home Depot, Best Buy and Lowe's each deliver and install the purchased refrigerators, removing any inserts, packaging, and box. These Defendants also turn on the new appliance to ensure it is working before they leave (*see* footnotes 34 through 38). As such, and even assuming that arbitration and class-waiver disclosures were somehow attached to the refrigerators' boxes and the refrigerators themselves when they left the manufacturer's possession, which is disputed, these disclosures were removed if they were still there once these items were delivered and installed by the various Defendant Retailers. In fact, Plaintiffs allege that as to every single Plaintiff, such information was removed and hauled away by the installers and delivery personnel before each Plaintiff could access these disclosures, much less read them.

106.    Any refrigerator box or insert that accompanies these refrigerators comes from the manufacturer, and not the retailers that Plaintiffs purchased their refrigerators from. In fact, evidence confirms that the retailers do not display or maintain the boxes and supposed insert, as the retailers have complete say about how to display and package items that are being delivered to their customers. Therefore, there is no evidence that any of the retailers, including Defendant Retailers, maintained the manufacturer box and any insert that supposedly came from the manufacturer's factory. *See* photos showcasing the same in paragraph 96.

107.    None of the Plaintiffs ever saw, came into contact with or had access to his/her refrigerator's box and the manufacturer's packaging inserts, including a Notice of Arbitration. As such, no arbitration disclosure was ever disclosed to them either prior to or after the sale of the

---

RMP-GGL-D29A-029_015_COOKING-PB-SAMSUNG-NA-PMAX-NA-NA-MK681222200-NA-NBR-37-CON-NA-FY23_37&cm_mmc=SHOPPING-RM-RMP-GGL-D29A-029_015_COOKING-PB-SAMSUNG-NA-PMAX-NA-NA-MK681222200-NA-NBR-37-CON-NA-FY23_37-71700000113734794--&gclid=CjwKCAjwu4WoBhBkEiwAojNdXmjXHmcr9_Fq6_Dgz3pEvJXgnStS8yQigR6gxpmdKg6HP6nNw2MBzRoCxmgQAvD_BwE&gclsrc=aw.ds (last visited September 15, 2023).

[38] *See* https://www.bestbuy.com/site/services/appliance-services/pcmcat255100050002.c?id=pcmcat255100050002 (last visited September 15, 2023).

---

47

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

refrigerator given that the Plaintiffs did not have possession of the manufacturer's box, packaging or supposed inserts. In fact, the lack of boxes on display at Defendant Retailers' stores, the lack of disclosures inside or outside the refrigerators, the online product listings, as well as each Defendants' delivery and installation protocols for these refrigerators, showcase Defendants' efforts in taking steps to obstruct the arbitration disclosure from their customers.

108.    Additionally, the Owner's Manuals that contain any alleged Notice of Arbitration, were not provided to Plaintiffs and the Class Members until after purchase of the refrigerators, and in some cases where the refrigerator was sold open-box, in used-condition, or was purchased and installed prior to a Plaintiff's purchase of a home containing the refrigerator, they were not provided at all. In fact, Plaintiffs have only come to know about the Notice of Arbitration purportedly contained in the Owner's Manuals by way of this action. Furthermore, and even in instances where the Owner's Manuals were provided post-sale, none of the Plaintiffs who received them knew about the purported Notice of Arbitration contained within the Owner's Manuals as it was not reasonable conspicuous to put Plaintiffs on notice of such a term.

## ALLEGATIONS BY ALL PLAINTIFFS

109.    All Plaintiffs were advised that the faulty linear compressor within their respective refrigerators, was the reason for his/her refrigerator not cooling. Prior to purchase of his/her refrigerator, none of the Plaintiffs knew about the ongoing compressor defect issues that LG and Kenmore branded refrigerator had, as all Defendants' information and marketing material with regards to these refrigerators discussed the opposite. In fact, Defendants boasted about the durability of these linear compressors and their 20-year life span. Moreover, none of the Plaintiffs who purchased a home containing a LG or Kenmore branded refrigerator knew about the compressor defect issues that LG and Kenmore branded refrigerators had at the time of their home purchase.

110.    Prior to each Plaintiff's purchase, Defendants never provided information about the faulty nature of these refrigerators including the defective compressor contained within them, and instead highly promoted these products. Had disclosures about the true nature of these

compressors and refrigerators been made prior to each Plaintiff's purchase, Plaintiffs would not have bought these LG and Kenmore branded refrigerators, would not have bought these LG and Kenmore branded refrigerators at the prices they did, or would have returned these LG and Kenmore branded refrigerator for a refund during the return period allowed by Defendant Retailers.

**TIMOTHY R. CAMBRON**

111.    Plaintiff Cambron purchased a Kenmore Elite refrigerator from Sears in approximately February 2019 (Model 795.74025.410 – Production Date: June 2014) in Alabama. Plaintiff also paid hundreds of dollars by purchasing an extended warranty at that time.

112.    In August 2023, the compressor of his refrigerator failed and resulted in his refrigerator no longer cooling, causing hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

113.    Plaintiff contacted Defendant Transform but was told that his extended warranty has expired, and that the earliest a repair technician could go out to repair his refrigerator is mid-September, leaving him without a working refrigerator for weeks, and resulting in additional monetary damages.

**CHRISTOPHER BOLTON**

114.    Plaintiff Bolton originally purchased a Kenmore Elite refrigerator from sears in March 2013 (Model 795.72053112 – Production Date July 2012) in Arizona. In 2020, his refrigerator stopped cooling and service was requested from Defendant Transform (Sears). He was advised that the compressor parts were backordered and that he would have to wait over a month for the repairs to take place.

115.    As a result, and because a refrigerator is a necessity to every household, he purchased another Kenmore Elite refrigerator from Defendant Transform in August 2020 (Model 111.72695910 – Production Date November 2019). In November 2022, his refrigerator's compressor stopped cooling and his refrigerator stopped working, causing hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages. He paid hundreds

of dollars for repair costs, only to have the refrigerator completely stop working again in July 2023, resulting in him having to purchase a brand-new refrigerator, his third in ten years.

**DON FLETCHER**

116.    Plaintiff Fletcher purchased a house in January 2020 which came equipped with a LG refrigerator (Model LFXS28596S /00 – Production Date: June 2018), which had been purchased by the prior owner from Home Depot, in the state of Arizona. The prior owner had also purchased an extended warranty from Home Depot for hundreds of dollars.

117.    In August 2023, the compressor failed and the refrigerator stopped cooling, resulting in hundreds of dollars' in spoiled foods/beverages which had to be thrown out, as well as other damages.

118.    He contacted Defendant LG and was told that despite the purported warranty that comes with the refrigerators and the extended warranty that was purchased on this refrigerator, Defendant LG had no available appointments for repair. In fact, Defendant LG told Plaintiff to call a repair technician himself, and he had no choice but to do so, costing him hundreds of dollars out of pocket for a diagnostic fee, and thousands for the repair of the refrigerator. Furthermore, Defendant Home Depot told Plaintiff that there is nothing they can do for him, despite having had sold an extended warranty with his refrigerator.

**PAM SELLERS**

119.    Plaintiff Sellers purchased a LG refrigerator from Costco in approximately June 2019 (Model LFXS30796S /01 – Production Date: May 2019) in Arizona.

120.    In August 2023, the compressor of her refrigerator failed and resulted in her refrigerator no longer cooling. The LG technician who diagnoses the issue in September 2023, weeks later, told Plaintiff that the issue was the compressor which needed to be replaced and replaced her compressor.

121.    Plaintiff was without a working refrigerator for weeks, while waiting for Defendant LG to send a technician, resulting in additional monetary damages.

**RANDOL DENMAN**

122.    Plaintiff Denman purchased a LG refrigerator from Lowe's in September 2021 (Model LRSES2706) in Arizona.

123.    In approximately May 2023, the compressor failed, and the refrigerator stopped cooling, resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

124.    Plaintiff contacted Defendant LG and was advised that he would have to pay hundreds of dollars out of pocket for repair costs despite the refrigerator being less than two years old. As such, Plaintiff decided to not spend money on repairs as he was told that the refrigerator could fail again, and bought a brand-new refrigerator, having to spend thousands of dollars on a new refrigerator yet again, less than two years after the purchase of the LG one.

**THERESA HATFIELD**

125.    Plaintiff Hatfield purchased a LG refrigerator from Lowe's in September 2017 (Model LFXC24726D /01 – Production Date: July 2017) in Arizona.

126.    In 2022, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG covered the cost of the new compressor, but Plaintiff had to pay hundreds of dollars for the cost of labor associated with Defendant LG replacing the compressor.

127.    Approximately six months after the new compressor had been installed and repaired, in April 2023, the new compressor also failed and stopped cooling the refrigerator, again resulting in spoiled foods/beverages that had to be thrown out and other damages. The same appliance company previously sent by LG came out again and diagnosed the issue as the compressor. Plaintiff had to pay out of pocket for the diagnosis fee and was told that in order to repair her refrigerator she would again have to pay hundreds, if not thousands, of dollars out of pocket. Plaintiff decided not to spend any further money on her defective refrigerator.

**VIRGINIA RICHMOND**

128.    Plaintiff Richmond purchased a LG refrigerator from Lowe's in approximately 2017 in Arizona.

129.    Approximately three years later, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG covered the cost of the repairs; however, it took over six months for the refrigerator to be repaired.

**SUSAN WILSON**

130.    Plaintiff Wilson purchased a house in April 2021 which came equipped with a LG refrigerator (Model LFXC24726S /03 – Production Date: July 2018), which had been purchased by the prior owner from Best Buy, in the state of Arizona. The prior owner had also purchased an extended warranty from Best Buy for hundreds of dollars.

131.    In August 2023, the compressor failed, and the refrigerator stopped cooling, resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

132.    Plaintiff was without a working refrigerator, while waiting for Defendant LG to send a technician, resulting in additional monetary damages. Her refrigerator was eventually repaired, and the compressor replaced by a technician sent by Defendant LG. The LG certified technician told Plaintiff that she would be lucky if her refrigerator lasts another three years.

**CRISTIE HOLLIS**

133.    Plaintiff Hollis purchased a LG refrigerator from Sears, owned by Defendant Transform, in approximately September 2019 (Model LSXS26366D /02 – Production Date: May 2018) in Arkansas.

134.    In or around June 2023, the compressor of her refrigerator failed and resulted in her refrigerator no longer cooling, resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages. The LG technician who diagnoses the issue

told Plaintiff that the issue was the compressor which needed to be replaced and replaced her compressor.

135.    The LG certified technician told Plaintiff that the compressors in these LG refrigerators are faulty and defective.

**RONALD BRUCE RAY**

136.    Plaintiff Ray purchased a Kenmore refrigerator from Sears, owned by Defendant Transform, in approximately 2017 or 2018 (Model 795.74033.412 – Production Date: May 2017) in Arkansas.

137.    In or around September 2023, the compressor of his refrigerator failed and resulted in his refrigerator no longer cooling, resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

138.    The technician who diagnosed the issue told Plaintiff that the issue was the compressor which needed to be replaced. He told him that the best thing to do was to buy another refrigerator since the cost of repair was like the cost of buying a brand-new refrigerator. He also told Plaintiff that there was no guarantee of how long his Kenmore refrigerator would work if the compressor was replaced since the issue with these compressors, is a known problem.  As such, Plaintiff had no choice but to purchase a brand-new refrigerator.

**CHRISTOPHER LAVIN**

139.    Plaintiff Lavin purchased a house in August 2022 which came equipped with a Kenmore Elite refrigerator (Model 795.51823.410 – Production Date: July 2016) in the state of California.

140.    Less than a month after the purchase of the subject property, Plaintiff returned home after a brief vacation to find that the compressor had completely gone out, the refrigerator had stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

141.    He contacted Defendant Transform and was told that even if they provide him a new compressor, Plaintiff will have to pay close to a thousand dollars for labor costs associated with replacing the compressor.

**CRYSTAL SCHROEDER**

142.    Plaintiff Schroeder purchased a Kenmore Elite refrigerator from Sears, owned by Defendant Transform, in approximately July 2015 (Model 795.74015.411 – Production Date: March 2015) in California.

143.    In 2020, the compressor of her refrigerator failed and resulted in her refrigerator no longer cooling, resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages. Finally, after two months, a technician was sent by Defendant Transform who fixed the refrigerator.

**THOMAS WEMHOFF**

144.    Plaintiff Wemhoff purchased a LG refrigerator from Home Depot in July 2018 (Model LFXC23796S /00 – Production Date: May 2018) in California.

145.     In May 2022, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG sent a repair technician who diagnosed the issue as a faulty compressor.

146.    As multiple repair attempts were unsuccessful, Plaintiff was told by Defendant LG several times since November 2022 that she would be refunded the full amount paid for her refrigerator. However, no check was ever processed, and Plaintiff was not ever refunded for the defective refrigerator sold to her despite being told that she would be. In fact, in November 2022, Plaintiff had no choice but to spend thousands of dollars on a new refrigerator.

**JANET MOSER**

147.    Plaintiff Moser purchased a Kenmore Elite refrigerator from Sears, owned by Defendant Transform, in approximately April 2018 (Model 795.73132.411 – Production Date: February 2018) in California.

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

148.    In or around June 2023, the compressor of her refrigerator failed and resulted in her refrigerator no longer cooling, resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

149.    A technician was sent by Defendant Transform who stated the issue was the compressor which had to be replaced. The compressor was replaced, and Plaintiff was charged over five hundred dollars for the repair cost associated with the repair.

**JETTEKE MUCHEMORE**

150.    Plaintiff Muchemore purchased a LG refrigerator from Home Depot in November 2016 (Model LFXS29766S – Production Date: November 2016) in California.

151.    In late 2020, the compressor of her refrigerator failed and resulted in her refrigerator no longer cooling, resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

152.    Technicians around her refused to work on her refrigerator as it was LG branded, and as such she had a difficult time finding someone to repair her refrigerator. She finally found someone and had to pay hundreds of dollars for the repair costs.

**JOHN HERNANDEZ**

153.    Plaintiff Hernandez purchased a LG refrigerator from Lowe's in early 2019 (Model LSXS26386D/03 – Production Date: December 2018) in California. It was a brand new returned item, that did not come in a box, nor had any notices posted on it, or accompanying it.

154.    Less than three years later, in 2021, the refrigerator stopped cooling resulting in over a thousand dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

**KASRA PEIGHAMBARI**

155.    Plaintiff Peighambari purchased a house in August 2021 which came equipped with a LG refrigerator (Model LFX25991ST/05) in the state of California.

156.    In late 2022, Plaintiff's refrigerator stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars worth of damage.

157.     As calls to Defendant LG were unhelpful, Plaintiff had no choice but to spend over to hire a technician and repair his refrigerator, which he was told had a faulty compressor that needed to be replaced.

**KRSTO JELENIC**

158.     Plaintiff Jelenic purchased a Kenmore Elite refrigerator from Defendant Transform (Sears) in June 2019 (Model 111.73035910) in California.

159.     Since purchasing the subject refrigerator, his refrigerator has needed repairs including the replacement of its compressor, at least four times. Plaintiff has had to pay hundreds of dollars in repair costs each time that his refrigerator has stopped cooling due to compressor issues. Furthermore, hundreds of dollars in spoiled foods/beverages has had to be thrown out.

**LINDA REICHELLO**

160.     Plaintiff Reichello purchased a LG refrigerator from Best Buy in March 2019, and it was delivered in May 2019 (Model LSXS26326S /03 – Production Date: November 2018) in California. Plaintiff also purchased an extended warranty through Best Buy at the time of her purchase of the refrigerator.

161.     In August 2023, the compressor of her refrigerator failed and resulted in her refrigerator no longer cooling, resulting in over a thousand dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

162.     Plaintiff contacted Defendant LG and was advised that her extended warranty is over. She was also told that there are no repairmen around her that would be willing to go to her house to fix her refrigerator. After spending three weeks without a refrigerator, Plaintiff had no choice but to spend thousands of dollars on a new refrigerator.

**MOHAMAD SHAHAB**

163.     Plaintiff Shahab purchased a LG refrigerator from Sears in July 2015 (Model LFXC24726S /01 – Production Date: January 2015) in California.

164.    In late 2020, the compressor of his refrigerator failed and resulted in his refrigerator no longer cooling, resulting in over a thousand dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

165.    Defendants replaced the compressor in Plaintiff's refrigerator, however, a few months after repairs took place, the refrigerator again stopped cooling, resulting in additional damages.

**POLLY KO**

166.    Plaintiff Ko purchased a Kenmore Elite refrigerator from Sears in mid-2018 (Model 795.51823.411 – Production Date: June 2018) in California.

167.    In July 2022, the refrigerator stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff paid $600.00 for her refrigerator's compressor to be repaired. In November 2022, however, the refrigerator/freezer again stopped cooling again causing her to lose hundreds of dollars in food yet again. Plaintiff contacted Transform who charged her $80.00 to send a technician. The technician advised that the linear compressor will need to be repaired/replaced again and that it would cost Plaintiff another $400.00 as the problem occurred after 90 days of the initial repair in July 2022.

**REGINA STELLA TANGCO**

168.    Plaintiff Tangco purchased a Kenmore Elite refrigerator from Sears in December 2018 (Model 795.74077.610 – Production Date: October 2018) in California.

169.    In July 2022, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages. When Plaintiff contacted Defendant Transform, she was advised that a repair technician would be sent out. Thereafter, she was advised that the linear compressor of the refrigerator unit had to be replaced and that she would have to pay approximately $600.00 in costs. The Sears technician then told her that if she signed up for an appliance insurance with Sears which would cost $49.99 a month for a minimum of one-year, she would receive a $150.00 discount from the repair costs.

Given the discount she would receive as well as because Plaintiff is afraid that her refrigerator's compressor will fail again, she agreed to sign up for the insurance through Defendant Transform.

**TERESA CERVANTES**

170.     Plaintiff Cervantes purchased a Kenmore Elite refrigerator from Sears in October 2018 (Model 795.51823.411 – Production Date: June 2018) in California.

171.     In July 2022, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages. When Plaintiff called Defendant Transform, she was advised that a repair technician would be sent out. Thereafter, once the technician came out, she was advised that the linear compressor of the refrigerator unit had to be replaced and that she would have to pay approximately $700.00 out of pocket for the repairs, which she did.

**VICTOR WOLFE**

172.     Plaintiff Wolfe purchased a Kenmore Elite refrigerator from Sears in June 2018 (Model 795.74077.610 – Production Date: October 2018) in California.

173.     In July 2022, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

174.     Thereafter, once the technician came out, he was advised that the linear compressor of the refrigerator unit had to be replaced and was provided an estimate of approximately $1300.00 for the total cost of repair and replacement of his refrigerator/freezer.

**TRACI ELLIS**

175.     Plaintiff Ellis purchased a Kenmore Elite refrigerator from Defendant Transform (Sears) in September 2019 (Model 795.74077.610 – Production Date: July 2019) in California. Plaintiff also paid over $500 for an extended three-year warranty.

176.     In May 2023, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

177.     After three weeks of waiting for a technician to be sent by Defendant Transform, one was finally sent on May 25, 2023. The technician advised Plaintiff that her refrigerator needed

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

a new compressor. At Defendant's request, Plaintiff paid over $440 for Defendant's technician to order the necessary parts. The technician told Plaintiff that if the new parts are installed and the refrigerator does not work, she would be refunded for the parts she paid for. After the new parts were installed, the refrigerator did not work.

178.    The repair technicians had to come back and work on refrigerator at least two more times, and each time, Plaintiff was asked to pay out of pocket for the various parts needed. In total, Plaintiff paid over $600 for the various parts the Defendant's technician told her was necessary. After multiple repair attempts, Plaintiff was advised by Defendant's technician that her refrigerator unit was non-repairable.

**GINGER A. COWAN**

179.    Plaintiff Cowan purchased a LG refrigerator from Costco in October 2018 (Model LFXS28596M/ 00 – Production Date: August 2018) in Colorado.

180.    In March 2022, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

181.    Plaintiff hired a repairman who stated that there was a compressor failure but that her refrigerator is still under warranty with Defendant LG. Defendant LG was contacted and a repair technician was supposed to be sent out. However, Plaintiff was told by Defendant LG that there were no technicians around her area, and she later learned that the repair technicians refused to work on LG refrigerators.

**ERIC SCHLEICH**

182.    Plaintiff Schleich purchased a Kenmore refrigerator from Defendant Transform (Sears) in April 2019 (Model 795.73165.610 – Production Date: January 2019) in Florida.

183.    In August 2023, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

184.    Defendant Transform repaired Plaintiff's refrigerator and replaced the compressor, however, Plaintiff had to pay over $550 in labor costs associated with the repair.

**RALPH HENDERSON**

185.   Plaintiff Henderson purchased a Kenmore Elite refrigerator from Defendant Transform (Sears) in March 2018 (Model 795.73153.610 – Production Date: September 2017) in Florida.

186.   In May 2021, the refrigerator and freezer stopped cooling resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

187.   Weeks later, in June 2021, Defendant sent a technician who repaired Plaintiff's refrigerator. Plaintiff had to pay approximately $500 in labor costs associated with the repair of his refrigerator.

**RUSSELL BROWN**

188.   Plaintiff Brown purchased a Kenmore Elite refrigerator from Defendant Transform (Sears) in January 2019 (Model 795.51833.413) in Florida.

189.   In 2021, the refrigerator and freezer stopped cooling. Defendant Transform sent a technician who told Plaintiff that while the compressor was under warranty, Plaintiff would have to pay over $800 for labor costs if he wished to get it repaired. The technician, who was hired and sent by Defendant Transform, further told Plaintiff that even if the compressor is replaced, the maximum it would continue working is another two years. Plaintiff chose not to repair his refrigerator and had no choice but to spend thousands of dollars on a new refrigerator, his second one in two years.

**TERRI GRINER-COMPROSKI**

190.   Plaintiff Griner-Comoproski purchased a Kenmore Elite refrigerator from Defendant Transform (Sears) in January 2019 (Model 795.73132.411) in Florida.

191.   In 2022, the refrigerator and freezer stopped cooling. Plaintiff reached out to a local repairman who told her he will not work on Kenmore refrigerator. After unplugging and re-plugging, the refrigerator worked for a few months longer. In August 2023, the refrigerator again failed. Plaintiff hired a repairman who told her the compressor had to be replaced, and that it was

not worth fixing given the chances that it will die again and stop cooling. Plaintiff chose not to repair her refrigerator and had no choice but to spend thousands of dollars on a new refrigerator.

**DENNIS LEEDEKERKEN**

192.    Plaintiff Leedekerken purchased a LG refrigerator in approximately 2018 (Model LFXC24726S /03 – Production Date: June 2017) in Florida.

193.    In September 2023, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars, as well as other damages.

**GREGORY CANNON**

194.    Plaintiff Cannon purchased a Kenmore refrigerator from Sears in December 2018 (Model 795.7259) in Florida.

195.    In January 2021, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars, as well as other damages.

196.    Defendant Transform (Sears) refused to cover the compressor cost and labor associated with the repairs. Plaintiff chose not to repair his refrigerator given that the cost to repair his refrigerator was well over a thousand dollars, and had no choice but to spend thousands of dollars on a new refrigerator.

**STEVEN BORDEN**

197.    Plaintiff Borden purchased a LG refrigerator from Home Depot in approximately May 2018 (Model LSXS26366S /02 – Production Date: April 2018) in Florida.

198.    In March 2022, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars, as well as other damages.

199.    Defendant LG sent a technician who repaired Plaintiff's refrigerator and replaced the compressor. The technician told Plaintiff that he should expect to have the same problem within the next few years.

**BELLE STRICKLAND**

200.   Plaintiff Strickland purchased a LG refrigerator from Lowe's in approximately March 2018 (Model LFXS28566M /00 – Production Date: November 2017) in Georgia.

201.   In October 2022, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing her hundreds of dollars, as well as other damages.

202.   Plaintiff contacted Defendant LG but the repair technician scheduled by Defendant LG canceled the appointment because they told Plaintiff that they would not work on LG refrigerators. After a month, Defendant LG sent another technician to Plaintiff's house in order to repair her refrigerator. The technician, hired by LG, told Plaintiff that unless Plaintiff paid him the $1,200 in costs to repair the refrigerator upfront, he would not repair her refrigerator. Said technician told Plaintiff that Defendant LG will hire him and other technicians to go to customers' residence and perform repairs, but that Defendant will not pay their invoices.

203.   Plaintiff had no choice but to pay the $1200, which the technician told her she should get refunded for from Defendant LG by submitting a claim. Despite numerous attempts, Plaintiff was not able to get a refund from Defendant LG for the monies she paid for the repair of her refrigerator, despite being told that the repair costs were covered.

**EDWINA FRAME**

204.   Plaintiff Frame purchased a LG refrigerator from Lowe's in approximately April 2019 (Model LSX26326S-04 – Production Date: February 2019) in Georgia.

205.   In February 2023, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing her hundreds of dollars. Despite contacting LG multiple times over a course of numerous days, LG failed to send a technician to Plaintiff in a timely manner. She was also advised that even if the parts are covered, she would have to pay hundreds of dollars for the labor cost associate with replacing her refrigerator's compressor. She was also advised by other servicemen she contacted that even if she replaces her compressor, there was a high chance that it will likely fail again, even within a few months.

**JAMES CAMPBELL**

206.   Plaintiff Campbell purchased a Kenmore refrigerator in 2017 from Sears (Model 795.73157.610 – Production Date: October 2016) in Georgia.

207.   In September 2023, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars, as well as other damages.

208.   Defendant Transform (Sears) sent someone out for diagnosis and Plaintiff was told that the compressor was bad, but he was recommended that it would be best to buy a new refrigerator rather than repair the one he had. However, after seeing the high prices of refrigerators, Plaintiff had no choice but to spend over $1300 in repair costs in order to replace his Kenmore refrigerator's compressor.

**SUSAN LOUISE SACK**

209.   Plaintiff Sack purchased a LG refrigerator from Best Buy in September 2018 (Model LSX26366S /02 – Production Date: July 2018) in Georgia.

210.   In September 2023, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing her hundreds of dollars.

**EVAN CAREY**

211.   Plaintiff Carey purchased a house in December 2016 which came equipped with a LG refrigerator (Model LSXS26366D – Production Date: 2016) in the state of Georgia.

212.   In April 2022, Plaintiff's refrigerator stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars worth of damage.

213.   Defendant LG referred Plaintiff to an "authorized repair person" who charged Plaintiff approximately $650.00 for labor fees. However, even after the repairs, the refrigerator did not fully cool, and the authorized repair person stopped responding to Plaintiff. Therefore, Plaintiff had no choice but to purchase a brand-new refrigerator in June 2022.

**LARRY PAINTON**

214.    Plaintiff Painton purchased a LG refrigerator in approximately 2016 from Home Depot (Model LFXC24726D /00 – Production Date: August 2015) in the state of Hawaii.

215.    In late 2020, Plaintiff's refrigerator stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars' worth of damage. Defendant LG repaired his refrigerator and replaced the compressor.

216.    However, in June 2023, Plaintiff's refrigerator stopped cooling again, resulting in hundreds of dollars' worth of damage and food loss. Plaintiff LG refused to cover the labor costs and Plaintiff had to pay over $700 in labor costs in order to get his refrigerator fixed. Furthermore, it took Defendant LG over six weeks to send a repairman to fix Plaintiff's refrigerator, causing further damages.

**NATHAN W. NELSON**

217.    Plaintiff Nelson purchased a LG refrigerator in approximately 2020 from Lowe's in Idaho.

218.    Within a month or two after purchasing the subject refrigerator, Plaintiff's refrigerator stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars' worth of damage. Plaintiff has had to pay over $400 in repair costs.

**ELLEN HAWOTTE**

219.    Plaintiff Hawotte purchased a LG refrigerator in November 2017, which was delivered in January 2018, from Home Depot (Model LMXC23796S /00 – Production Date: November 2017) in Illinois.

220.    In July 2022, Plaintiff's refrigerator stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars' worth of damage. Plaintiff was told that his refrigerator is not worth repairing as the compressor is defective.

**TONYA M. BURGE**

221.    Plaintiff Burge purchased a LG refrigerator in March 2018, from Lowe's (Model LFCS22520D /01 – Production Date: March 2018) in Illinois.

222.    In 2023, Plaintiff's refrigerator stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars' worth of damage. Plaintiff was told that her refrigerator is not worth repairing as it is the compressor that is defective. As such, she reluctantly purchased a new refrigerator.

**AMY WEISBERG**

223.    Plaintiff Weisberg purchased a LG refrigerator in May 2019, from ABT (Model LFXS30796S /01 – Production Date: March 2019) in Illinois.

224.    In August 2023, Plaintiff's refrigerator stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars' worth of damage. The retailer she purchased her refrigerator from told her that it was the compressor that was the issue. Plaintiff contacted Defendant LG and Defendant LG told her that they would provide a new compressor, but she would have to pay for the labor costs associated with the repair and replacement of the compressor.

**ANTHONY HOLDGRAFER**

225.    Plaintiff Holdgrafer purchased a Kenmore refrigerator in 2019 from Sears (Model 111.73025711) in Illinois.

226.    In 2020, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars, as well as other damages. Plaintiff had to pay hundreds of dollars in labor costs to have his refrigerator fixed. However, six months later, the refrigerator died again and stopped cooling. Plaintiff had no choice but to spend thousands of dollars on a new refrigerator.

**DALE BELL**

227.    Plaintiff Bell purchased a LG refrigerator in July 2018, from Lorenz (Model LFC24770ST /03 – Production Date: January 2018) in Illinois, and now resides in Indiana.

228.    In March 2023, Plaintiff's refrigerator stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars' worth of damage. Despite having an extended warranty, Plaintiff could not find anyone willing to repair his LG refrigerator as Defendant LG is known amongst technicians not to pay them. Plaintiff has been unable to get his refrigerator repaired as a result.

**MICHELLA JAMESON**

229.    Plaintiff Jameson purchased a LG refrigerator in June 2016 from Lowe's (Model LFXS30766S /02 – Production Date: March 2016) in Indiana.

230.    In June 2022, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars, as well as other damages. Defendant LG told Plaintiff that it would cover the cost of the new compressor but not labor costs. Plaintiff chose not to repair her refrigerator given that the cost to repair her refrigerator was well over a thousand dollars and had no choice but to spend thousands of dollars on a new refrigerator.

**WILLIAM FORD HEBNER**

231.    Plaintiff Hebner purchased a LG refrigerator in July 2018 from J.C. Penny (Model LFX25974ST /07 – Production Date: April 2018) in Indiana.

232.    In August 2023, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars, as well as other damages. Defendant LG told Plaintiff that it would cover the cost of the new compressor but not labor costs. Plaintiff chose not to repair his refrigerator given that the cost to repair his refrigerator was well over a thousand dollars. Furthermore, all repair technicians around his area have stated that they will not work on LG branded refrigerators.

**REYNA DAVIS**

233.    Plaintiff Davis purchased a house in 2023 which came equipped with a Kenmore Elite refrigerator (Model 795.74093.411 – Production Date: November 2015) in the state of Indiana.

234.    In August 2023, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars, as well as other damages. A repair technician told her that the compressor was faulty and needed to be replaced, but that it was not worth doing so.

**JAMES EATON**

235.    Plaintiff Eaton purchased a LG refrigerator in 2019 from Lowe's (Model LFX259730 /00) in Kentucky.

236.    In August 2023, the refrigerator stopped cooling and Plaintiff's foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars, as well as other damages. Defendant LG told Plaintiff that it would not cover the cost of the new compressor or the labor costs. Furthermore, a repair technician told Plaintiff that it was not worth fixing this refrigerator as they are known to be defective. Plaintiff chose not to repair his refrigerator and had no choice but to spend thousands of dollars on a new refrigerator.

**RANDALL SAWYERS**

237.    Plaintiff Sawyers purchased a LG refrigerator from Home Depot in November 2018 (Model LSXS26386D – Production Date: September 2018) in Kentucky.

238.    Mr. Sawyers' LG refrigerator has had two complete failures since he purchased it. The first time was in 2020 when the freezer stopped cooling and melted all foods within the freezer compartment, costing him hundreds of dollars in damages. Mr. Sawyers had the issue fixed only to have his entire refrigerator break down and stop cooling again in December 2020, and all of his foods/beverages began spoiling and having to be thrown out, costing him hundreds of dollars in damages again, as well as other damages.

239.    Mr. Sawyers contacted multiple different repair companies to have someone come out and diagnose/repair his refrigerator but every person he contacted advised him that LG refrigerators are "terrible," that they would "not work on LG refrigerators," and that they would "receive calls from customers with the same issues" regarding LG refrigerators every day. After contacting LG numerous times, spending tens of hours on the phone just trying to speak to

someone who was actually willing to help him, he was finally told that a LG technician would come out to see his refrigerator. On December 28, 2020, weeks after first contacting LG, a repairman was sent to his house. The technician said that it was a compressor issue and that the compressor needed to be replaced. Mr. Sawyers was also advised that the likelihood of the compressor failing again is very high, and as such, it is not worth it to have the refrigerator fixed as it will fail again.

**ERIN SCOTT**

240.    Plaintiff Scott purchased a Kenmore refrigerator from Sears in April 2018 (Model 795.51839.412 – Production Date: March 2018) in Louisiana.

241.    In March 2022, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

242.    Plaintiff contacted Defendant Transform (Sears) and was told that the diagnostic fee alone is $150. As such, she had another technician check out her refrigerator who stated that her refrigerator contained one of the bad compressors that Kenmore was using. Plaintiff contacted Defendant Transform who told her to contact the manufacturer Defendant LG. She then contacted Defendant LG who told her to contact Defendant Transform.

243.    As it was clear that each Defendant was blaming the other and not actually interested in repairing her unit, Plaintiff had no choice but to buy a new refrigerator.

**BRIAN MULLIKIN**

244.    Plaintiff Mullikin purchased a Kenmore refrigerator from Sears in June 2018 (Model 795.74015.412 – Production Date: May 2018) in Maryland.

245.    In 2022, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

246.    Plaintiff contacted Defendant Transform (Sears) and a technician was sent who diagnosed the problem as the compressor. Defendants' technician told Plaintiff not to bother getting the refrigerator fixed because it was a "piece of junk" and would cost Plaintiff a significant amount of money to have it fixed.

247.    the technician also told Plaintiff that her refrigerator was the sixth LG/Kenmore refrigerator he had seen that day with the same defective compressor issue.

**JAVIER RIVERA**

248.    Plaintiff Rivera purchased a Kenmore Elite refrigerator from Sears in February 2020 (Model 111.73305911) in Maryland.

249.    In late 2020, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

250.    Plaintiff contacted Defendant Transform (Sears) and was told, after hours on the phone, that the earliest a repairman could come out was three weeks later. Having no choice but to wait, Plaintiff and his family had to live out of a cooler and had to purchase bags of ice every day in order to keep their food from spoiling.

251.    By the time the technician came out to inspect the refrigerator, the refrigerator had started cooling again on its own. Defendant Transform's technician confirmed that the compressor needed to be changed but shortly after a call, changed his mind and told Plaintiff that since the refrigerator had started cooling again on its own, he would not be changing the part.

252.    Less than one year later, the refrigerator's compressor died, again resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. When Defendant Transform was again contacted, Plaintiff was advised that his refrigerator is no longer under warranty.

253.    Having no other choice, Plaintiff had to spend thousands of dollars yet again and purchase a new refrigerator.

**OLUWAKEMI ADEWOLE**

254.    Plaintiff Adewole purchased a Kenmore refrigerator from Sears in June 2015 (Model 106.51793.410 – Production Date: March 2015) in Maryland.

255.    In 2020, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

256.     Plaintiff contacted Defendant Transform (Sears) but was told Plaintiff there were no technicians in her area. Plaintiff hired her own technician and paid over a thousand dollars out of pocket to have her refrigerator get fixed. However, her refrigerator again stopped cooling in late 2020, forcing her to pay hundreds of dollars yet again for repair costs, and to lose hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out.

**MIRANDA SACHARIN**

257.     Plaintiff Sacharin and her landlord jointly purchased a LG refrigerator from Best Buy in late 2019 (Model LRFXC2406S) in Massachusetts for $2,899.99, plus tax for Plaintiff Sacharin's unit. In doing so, Plaintiff Sacharin agreed that she would pay half of the cost of the refrigerator, and in fact paid $1,500.00 to her landlord for her portion of the cost of the subject refrigerator.

258.     Less than three years later, in 2022, the refrigerator for the second time gave error codes related to the compressor and stopped cooling, resulting in hundreds of dollars in spoiled foods/beverages which had to be thrown out, as well as other damages.

**LINDSEY M. TAPIN**

259.     Plaintiff Tapin purchased a Kenmore refrigerator in 2014 which died due to a faulty compressor in 2017. Again, she purchased a Kenmore refrigerator with her boyfriend, paying half of the cost, from Sears in April 2017 (Model 795.73133.410 – Production Date: January 2017) in Michigan.

260.     In June 2021, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff had to pay the labor costs for Defendant Transform's technicians to replace the compressor. However, in August 2023, the compressor has again failed and Plaintiff has been told that not only does she have to pay $150 in diagnostic fees, but she also has to pay for the labor costs (again).

**TRENT MAUK**

261.    Plaintiff Mauk purchased a LG refrigerator in May 2018 from Lowe's (Model LMXC23796D – Production Date: April 2018) in Michigan.

262.    In July 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG told Plaintiff that it would not cover the cost of the labor which would cost over one thousand dollars. Plaintiff chose not to repair his refrigerator and had no choice but to spend thousands of dollars on a new refrigerator.

**JENNY FINKBEINER**

263.    Plaintiff Finkbeiner purchased a LG refrigerator in September 2021 from an appliance store (Model LRDCS2603S – Production Date: March 2021) in Minnesota.

264.    In July 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, and well as multiple viles of medication that had to also be thrown out, as well as other damages. Defendant LG sent a repairman to Plaintiff's house who stated that the compressor was faulty and needed to be replaced. The technician told Plaintiff that he spends "all my time replacing these," referring to the compressor.

**CATHY P. FEINSTEIN**

265.    Plaintiff Feinstein purchased a LG refrigerator in early 2022 from Lowe's (Model LFXS26596S /10– Production Date: November 2021) in Mississippi.

266.    One year after purchase, in early 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG sent a technician out who told Plaintiff that he cannot repair the refrigerator because he does not have a new compressor. He also told her that no other repair technician in the state of Mississippi will fix her refrigerator because this is a known issue and no one will fix LG refrigerators. Plaintiff had no choice but to purchase a new refrigerator.

**ODIS LEE**

267.    Plaintiff Lee purchased a LG refrigerator in May 2018 from Home Depot (Model LFDS22520S /01– Production Date: April 2018) in Mississippi.

268.    In early 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG did not repair the refrigerator. As such, Plaintiff had no choice but to purchase a new refrigerator.

**DENISE FREEMAN**

269.    Plaintiff Freeman purchased a LG refrigerator in 2016 from Best Buy (Model LFXS29626S /01– Production Date: August 2016) in Missouri.

270.    In July 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG did not repair the refrigerator nor sent any technicians out to repair the refrigerator. As such, Plaintiff had no choice but hire her own who told her the compressor was defective and needed to be replaced.

**RUTH SPRINGSTON**

271.    Plaintiff Springston purchased a LG refrigerator in September 2019 from Best Buy (Model LMXS30796S /00) in Missouri.

272.    In August 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff spoke to a repair technician who LG had assigned to come to her house and was told by the technician, over the phone, that her refrigerator has a known compressor defect. Plaintiff's compressor was replaced. However, a few days later, the refrigerator again stopped working, and has not been fixed since.

**SHANNON HARRIS**

273.    Plaintiff Harris purchased a LG refrigerator in April 2017 from R.C. Willey (Model LMXS30776S /02 – Production date: February 2017) in Nevada.

274.    In April 2022, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG sent a repair technician who replaced her compressor and said that she will be lucky to get six months to a year with the new compressor.

275.    In May 2023, Plaintiff's compressor died again. As a result, she had no choice but to purchase a brand new refrigerator.

**SUE HOPFENSITZ**

276.    Plaintiff Hopfensitz purchased a LG refrigerator in November 2019 from R.C. Willey (Model LFXS28968D /01 – Production Date: December 2018) in Nevada.

277.    In September 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

**DEBRA HARGON**

278.    Plaintiff Hargon purchased a LG refrigerator in May 2021 from Manny's Appliances (Model LRFCS25D3S /00 – Production date: April 2021) in New Hampshire. Plaintiff also paid extra for an extended warranty.

279.    In May 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. In June, technicians were sent that replaced the compressor. The refrigerator worked for a week and again stopped cooling, resulting in more spoiled food/beverages. Eventually, Plaintiff had no choice but to obtain another refrigerator.

**BRYAN REESER**

280.    Plaintiff Reeser purchased a LG refrigerator in 2017 from Home Depot (Model LFXS29766S /01) in New Jersey.

281.    Since 2020, the refrigerator has failed at least six times. In fact, the compressor has been replaced twice. Each time the refrigerator stopped cooling, hundreds of dollars' worth of spoiled foods/beverages have had to be thrown out, as well as other damages have been caused.

**LAURA PURCELL**

282.     Plaintiff Purcell purchased a Kenmore refrigerator from Sears in May 2019 (Model 795.51823.411) in New Jersey.

283.     In June 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

284.     Plaintiff contacted Defendant Transform (Sears) and was forced to pay over $550.00 for labor costs associated with replacing the compressor. Despite the repairs that were done, Plaintiff's refrigerator continues to have problems.

**JUDITH NIKKI MCDONNELL**

285.     Plaintiff McDonnel purchased a Kenmore refrigerator from Sears in August 2021 (Model 111.60512912) in New York.

286.     Less than one year later, in 2022, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. When Plaintiff called repair technician and provided the model number, they knew right away that the problem was the faulty compressor. She was advised by Defendant Transform (Sears) that the repair and replacement of the compressor was only half covered by warranty, forcing her to pay close to $400.00 for the replacement of the compressor and repair of her one-year-old refrigerator.

**VIRGINIA HETCHER**

287.     Plaintiff Hetcher purchased a LG refrigerator from Sears in approximately 2018 (Model LFXS246230 – Production Date: 2018) in New York.

288.     Two years after purchase, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

289.     Since then, the refrigerator has failed and a technician has been sent by Defendant LG at least 6 times. In November 2022, a new compressor was installed. Plaintiff is disabled and each time she would call Defendant LG for help with her refrigerator, they would tell her to go

watch videos or step on a stool to tell them her model number, all things which are extremely difficult for her given her age and disability.

**ELLEN S. MITCHELL**

290.    Plaintiff Mitchell purchased a LG refrigerator from Home Depot in July 2017 (Model LMXC23796D /00 – production date: April 2017) in New York.

291.    In September 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

292.    Defendant LG told Plaintiff that it would not cover the cost of the labor which would cost over one thousand five hundred dollars, per quotes received from repair technicians around Plaintiff.

**ANNETTE RALLO**

293.    Plaintiff Rallo purchased a LG refrigerator from Home Depot in 2018 (Model LMXC24796S /00 – production date: July 2018) in North Carolina.

294.    In January 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG told Plaintiff that it would not cover the cost of the labor, forcing Plaintiff to pay over $1500 out of pocket for labor costs of replacing the compressor.

**MARIA JAMAL**

295.    Plaintiff Jamal purchased a LG refrigerator from Home Depot in 2017 (Model LSXS26366S /02 – production date: February 2017) in North Carolina. Plaintiff also purchased an extended warranty through Home Depot.

296.    Twice in 2019, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Through the extended warranty, the compressor was replaced. However, again in April 2023, the compressor stopped working, resulting in additional damages.

**NOAH GORDON**

297.    Plaintiff Gordon purchased a LG refrigerator from Lowe's in July 2020 (Model LRDCS2603S /00) in North Carolina.

298.    In December 2022, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. One of the reasons Plaintiff purchased the refrigerator was because an employee at Lowe's bragged about the linear compressors on the refrigerator he ended up purchasing.

299.    After two months, the refrigerator was finally repaired and a new compressor was replaced with the old one. However, since then, the refrigerator has failed two more times and is currently not working.

**SUSAN JUANITA-OWEN BROOKS**

300.    Plaintiff Brooks purchased a Kenmore refrigerator from Sears in October 2020 (Model 111.61209714) in North Carolina.

301.    In August 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

**TIM KIVLIN**

302.    Plaintiff Kivlin purchased a LG refrigerator from Pacific Kitchen & Home, owned by Defendant Best Buy, in September 2018 (Model LFXC24726S – production date: July 2018) in North Carolina.

303.    In August 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages, including damage to Plaintiff's kitchen flooring which was damages from the water of the melted food/beverages.

304.    Plaintiff's compressor was replaced by a technician sent by Defendant LG. The technician told Plaintiff that on average he replaced two compressors in these LG and Kenmore refrigerators and that he has probably replaced over 2000 LG compressors in the last four years.

**BRIAN BOSTER**

305.    Plaintiff Boster purchased a house in 2020 which came equipped with a LG refrigerator (Model LFXS28566S /00 – Production Date: January 2018) in Ohio.

306.    In May 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff had to pay over $550 for labor costs associated with replacing the compressor.

**BRIAN STOFLINSKY**

307.    Plaintiff Stoflinsky purchased a Kenmore refrigerator from Sears, in May 2017 (Model 795.75043.610 – production date: May 2017) in Ohio.

308.    In April 2022, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. He contacted Defendant Transform who told him they are fully aware that the compressor in his refrigerator is faulty. They also told him that there is a backlog for repairs and as such it would be weeks before someone could go out to his house. Plaintiff paid $1,200 for the cost of a new compressor and the labor associated with installing it.

**SAMANTHA KENYON**

309.    Plaintiff Kenyon purchased a house in March 2023 which came equipped with a Kenmore Elite refrigerator (Model 795.79022.310 – Production Date: July 2014) in Ohio.

310.    In September 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages that were caused as a result.

**ALAN JAMES MARSHALL**

311.    Plaintiff Marshall purchased a LG refrigerator from Dent & Ding Appliances in December 2018 (Model LSXS26336S – Production Date: 2018) in Oklahoma.

312.    In January 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. He used his home warranty to have someone come out and diagnose the problem. The technician that came

out advised him that the linear compressor of the refrigerator unit had to be replaced and that he would have to pay approximately $1,000.00 out of pocket. He had no choice but to pay this amount in order for the compressor to be replaced. He was advised that despite the replacement of his compressor, there was a high chance that it will likely fail again, even within a few months.

**PAULA J. BREEDLOVE**

313.    Plaintiff Breedlove purchased a LG refrigerator from Lowe's in April 2019 (Model LFXS26326S /02) in Oklahoma. Plaintiff also purchased an extended warranty through Lowe's at the time of purchase.

314.    In July 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

315.    Defendant LG was contacted multiple times but Plaintiff was advised each time by Defendant LG that there are not technicians around her that would work on her refrigerator. As such, Plaintiff has been unable to repair her refrigerator.

**ASHLEY SHRIVER**

316.    Plaintiff Shriver purchased a LG refrigerator from Lowe's in early 2021 (Model LFXS26973D /04) in Oklahoma. The refrigerator she purchased was brand new but open-box.

317.    Less than one and half years later, in July 2022, the refrigerator stopped cooling resulting in thousands of dollars' worth of spoiled foods/beverages that had just been purchased, including for a 4th of July party of over 30 people, and other damages. After hours spent being on the phone with Defendant LG, Plaintiff was not even offered repair services and was simply placed on hold and not assisted. Plaintiff was forced to pay out of pocket for a technician to come out, only to be told that the compressor had failed, and she would have to pay thousands of dollars to get it repaired/replaced.

**DAVID NELSON**

318.    Plaintiff Nelson purchased a LG refrigerator in December 2018 from Home Depot (Model LSXS26336S /00 – Production Date: October 2018) in Oregon.

319.    In July 2023, Plaintiff's refrigerator stopped cooling and all foods/beverages within the refrigerator had spoiled and melted, resulting in hundreds of dollars worth of damage. Defendant LG repaired his refrigerator and replaced the compressor. Defendant has not sent any repairman despite Plaintiff having requested one numerous times, causing additional damages.

**LAUREN GILMER**

320.    Plaintiff Gilmer purchased a LG refrigerator from an appliance store in May 2019 (Model LFXC24726S /03) in Oregon.

321.    In March 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

322.    Plaintiff contacted Defendant LG and was told that it would be weeks before someone could go out to her house. She asked if she could hire someone and get reimbursed for it instead of waiting for LG's technicians and was told that she could do that. Plaintiff hired a technician who charged her $1150 for a new compressor and for labor. Since then she has called Defendant LG numerous times to be refunded for the repair costs but has not been refunded.

**DAWN I. TAYLOR**

323.    Plaintiff Taylor purchased a LG refrigerator from Lowe's in November 2018 (Model LSXS26386D /02 – Production Date: August 2018) in Pennsylvania.

324.    In May 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Despite two new compressors haven't been replaced with the old on, the refrigerator is still not working and Plaintiff has been told that her unit is unfixable.

**PHILIP MARTIN**

325.    Plaintiff Martin purchased a Kenmore refrigerator from Sears in November 2017 (Model 795.72493.611-Production date: June 2017) in Pennsylvania.

326.    In February 2022, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff was quoted over $1,100 for repair costs and did not repair his refrigerator. He was charged $149

diagnostic fee by Defendant Transform, only to be told that the compressor needs to be replaced. He had no choice but to purchase a new refrigerator.

**ROXANN TYGER**

327.    Plaintiff Tyger purchased a Kenmore Elite refrigerator from Sears in March 2016 (Model 795.74025.411-Production date: October 2015) in Pennsylvania.

328.    In August 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff did not wish to spend over a thousand dollars on repair costs as a repairman told her it was a compressor issue. As such, she had no choice but to purchase a new refrigerator.

**TAMMY ALBERTELLI**

329.    Plaintiff Albertelli purchased a Kenmore refrigerator from Sears in 2019 (Model 795.51833.413 - Production date: April 2019) in Pennsylvania.

330.    In September 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff did not wish to spend over a thousand dollars on repair costs as a repair man told her it was a compressor issue. As such, she had no choice but to purchase a new refrigerator.

**MARINDA PARKS**

331.    Plaintiff Parks purchased a Kenmore Elite refrigerator from Sears in 2016, delivered in 2017 (Model 795.73165.610) in South Dakota.

332.    In February 2022, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff paid over $700 for repair costs to replace the compressor.

**BENETTA GILLILAND**

333.    Plaintiff Gilliland purchased a LG refrigerator from Lowe's in May 2020 (Model LMXS28596S /01) in Tennessee.

334.    In approximately April 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

other damages. Plaintiff's refrigerator and compressor were not fixed until July 2023 as LG could not find a technician to fix her refrigerator.

**JOANNA MORSE**

335.    Plaintiff Morse purchased a Kenmore Elite refrigerator from Sears in July 2020 (Model 795.74307.810 – Production Date: November 2018) in Tennessee.

336.    In June 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff was told that there is warranty to cover the repairs on her refrigerator. As such, she had no choice but to purchase a new refrigerator.

**ANTHONY MILLER**

337.    Plaintiff Miller purchased a LG refrigerator from Home Depot in late 2017 (Model LMXS30776S /03 – Production Date: August 2017) in Texas.

338.    In approximately March 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG covered the compressor but not the labor costs, which had to be paid out of pocket.  The refrigerator's compressor again died for a second time in approximately May 2023. Plaintiff again had to pay out of pocket for the labor costs to get his refrigerator fixed.

**BERNICE GERBO**

339.    Plaintiff Gerbo purchased a LG refrigerator from Lowe's in August 2017 (Model LMXS30796 – Production Date: July 2017) in Texas.

340.    In May 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. A week later, Defendant LG sent a technician who replaced Plaintiff's compressor and told her it could be up to 48 hours before her refrigerator works again. However, days passed and her refrigerator still did not cool. As such, she had no choice but to purchase a new refrigerator.

**DONALD WARD**

341.    Plaintiff Ward purchased a LG refrigerator from Home Depot in 2017 (Model LFXS30766D /01 – Production Date: August 2016) in Texas.

342.    In 2020, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. The compressor of the refrigerator has been replaced at least once since, and there continues to be ongoing issues with the refrigerator's ice maker.

**ELI JORDAN**

343.    Plaintiff Jordan purchased a Kenmore refrigerator from Defendant Transform (Sears) in December 2020 (Model 111.75505020) in Texas.

344.    In August 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff has tried numerous times to reach Defendant Transform to obtain help, however, no one will respond or return his calls. Moreover, this is the second Kenmore refrigerator he has purchased which has completely failed.

**JACQUELYN JOHNSON**

345.    Plaintiff Johnson purchased a LG refrigerator from an appliance store in September 2018 (Model LFXS29766S /01 – Production Date: April 2018) in Texas.

346.    In August 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. A technician was sent from her home warranty who told her that her compressor would need to be replaced.

**JEMILAT SULEIMAN**

347.    Plaintiff Suleiman purchased a LG refrigerator from an appliance store in November 2016 (Model LMXS30776S /03 – Production Date: September 2016) in Texas.

348.    In 2021, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Despite paying

multiple times for repair costs, the refrigerator was not fixed. As such, she had no choice but to pay for a brand new refrigerator.

**MARVIN MCANDERSON**

349.    Plaintiff McAnderson purchased two LG refrigerator from JC Pennys and another appliance store. The first was purchased in February 2016 (Model LSXS26326S) and the second was purchased in October 2018 (Model LSXS263660). Plaintiff is a resident of Texas.

350.    Both of Plaintiff's refrigerators have failed due to defective compressors resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages, including but not limited to, clean up fees. Most recently, in 2023, his second refrigerator that was purchased in 2018 stopped cooling. Defendant LG replaced the compressor.

**MONICA MARTIN**

351.    Plaintiff Martin purchased a Kenmore Elite French Door refrigerator from Sears in September 2018 in Texas.

352.    In 2021, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. A technician was sent by Defendant Transform who told her that her compressor would need to be replaced, which would cost her between $800 to $1,200 for repairs. Plaintiff chose not to repair her refrigerator, and had no choice but to buy a new refrigerator.

**RAFAEL GARCIA**

353.    Plaintiff Garcia purchased a LG refrigerator from Costco in October 2017 (Model LMXS28626S /00 – Production Date: October 2017) in Texas.

354.    In April 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. A technician was sent by Defendant LG who replaced the compressor, for which he had to pay over $500 in labor costs. However, in July 2023 and again August 2023, the refrigerator stopped cooling, and a technician was sent. Eventually, Plaintiff was told that his refrigerator is not repairable. As such, he had no choice but to buy a new refrigerator.

**VIRGINIA HUBBARD**

355.    Plaintiff Hubbard purchased a LG refrigerator from Sears in 2017 (Model LFXS30766S /00 – Production Date: June 2014) in Texas.

356.    In August 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff was told that she would have to wait for a new compressor to be ordered, which could take weeks. She was also told that she would have to pay out of pocket for the labor costs if she decides to replace her compressor.

**JOHN L. COOK**

357.    Plaintiff Cook purchased a Kenmore Elite refrigerator from Sears in 2015 (Model 795.74015.411– Production Date: May 2015) in Texas.

358.    In May 2022, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff was also told that he would have to pay over $1,500 for repair costs to have a new compressor installed. As such, and given the high cost of repairing his refrigerator, he had no choice but to buy a new refrigerator.

**JOSHUA SMITH**

359.    Plaintiff Smith purchased a LG refrigerator from Lowe's in July 2023 (Model LRFLC2706S /00 – Production Date: November 2022) in Texas.

360.    In August 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff has been told that the compressor in his new refrigerator is faulty and needs to replaced.

**KENT MUNSCH**

361.    Plaintiff Munsch purchased a LG refrigerator from Home Depot in 2018 (Model LSXS26336S /00 – Production Date: January 2018) in Texas.

362.    In August 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff

was told that the compressor in his refrigerator would need to be replaced. As such, and given the high cost of repairing his refrigerator, he had no choice but to buy a new refrigerator.

**DANIEL LEMUS**

363.    Plaintiff Lemus purchased a LG refrigerator from Home Depot in July 2022 (Model LRMDS3006S /01 – Production Date: January 2022) in Texas.

364.    In July 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Plaintiff was told that the compressor in his refrigerator would need to be replaced, which Defendant replaced in September 2023.

**SCOTT MITCHELL**

365.    Plaintiff Mitchell purchased a LG refrigerator from Costco in May 2019 (Model LMXS28626S /01 – Production Date: March 2019) in Virginia.

366.    In January 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG sent a technician who told Plaintiff the compressor in his refrigerator would need to be replaced. However, the technician would not replace the compressor unless Plaintiff paid him out of pocket that day, and then tried to get reimbursed from Defendant LG. The technician sent by Defendant LG told Plaintiff that Defendant LG was not paying their invoices. Plaintiff had no choice but to pay the technician so that he could have a working refrigerator.

**DARRELL SCHULTZ**

367.    Plaintiff Schultz purchased a LG refrigerator from Lowe's in June 2018, which was delivered in September 2018, (Model LFXS28968D /00 – Production Date: May 2018) in Virginia.

368.    In September 2023, the refrigerator stopped cooling resulting in hundreds of dollars' worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

**HAMID KOOHPAI**

369.    Plaintiff Koohpai purchased a LG refrigerator from Costco in November 2018 (Model LMXC23796S/00 – Production Date: September 2018) in Washington State.

370.    Less than 2 and half years later, in 2021, the refrigerator stopped cooling resulting in hundreds of dollars worth of spoiled foods/beverages which had to be thrown out, as well as other damages.

371.    Plaintiff Koohpai and his wife called LG's customer service every week for over two months in order to receive assistance and reimbursement for their refrigerator and each time they were asked to send the refrigerator's sticker and their purchase receipt so that a request for reimbursement could be submitted. Plaintiff Koohpai submitted the requested sticker and receipt over five times and was eventually advised that the request for reimbursement had been submitted on his behalf.  Each time he requested a repairman be sent to repair the refrigerator, he and his wife were told that LG does not have any available repair technicians in their area. In September 2021, Plaintiff was told that he should wait for LG's response with regards to a request for a replacement or refund. As he did not hear anything back, his wife followed up with LG several more times, and each time she was on hold for over an hour only to be told that the Return Authorization Department had not received their request from customer service.

372.    After three months of calling and requesting service, no such service was ever provided. Despite being provided multiple case numbers by LG, having complained for over three months through tens of telephone calls and text messages, no repair technician was sent by LG nor was Plaintiff provided a replacement or a refund for the refrigerator unit.

**RONALD MCDOUGAL**

373.    Plaintiff McDougal purchased a LG refrigerator from Lowe's in approximately 2014 (Model LMXS30746S/00 – Production Date: October 2014) in Washington.

374.    In May 2022, the refrigerator stopped cooling resulting in hundreds of dollars worth of spoiled foods/beverages which had to be thrown out, as well as other damages. He contacted LG who sent a technician that diagnosed the problem as being the compressor. The technician

advised that the compressor would have to be replaced. Plaintiff McDougal immediately contacted LG to schedule the actual repair of the refrigerator. After multiple canceled appointments, and four months of constantly contacting LG, it was agreed that LG would send a technician to replace the compressor. Plaintiff had to pay $400.00 out of pocket for the labor associated with replacing the compressor. Despite this, three (3) days after the compressor was replaced, it went out again and the refrigerator/freezer stopped cooling.

375. Plaintiff continued contacting LG in order to a working compressor installed in his refrigerator, but no such installment took place. LG merely sent another technician who advised him that the new compressor would also have to be replaced, something he already knew. No further work was done by LG and Plaintiff was forced out of desperation to purchase a new refrigerator.

**EILEEN PERKINS**

376. Plaintiff Perkins purchased a LG refrigerator from Lowe's (Model LSXS26386S /00 – Production Date: October 2015) in Washington.

377. In late 2020, the refrigerator stopped cooling resulting in hundreds of dollars worth of spoiled foods/beverages which had to be thrown out, as well as other damages. Defendant LG replaced the compressor, however, as of September 2023, the refrigerator's compressor has again failed as it has stopped cooling resulting in spoiled foods/beverages, as well as other damages.

## CLASS ACTION ALLEGATIONS

378. As further stated herein as to the following claims, Plaintiffs bring their causes of action on behalf of themselves and all others similarly situated, and certification of this class action is appropriate under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

379. Plaintiffs seek certification of the **Nationwide Class**: All persons in the United States who purchased, other than for resale, a Kenmore branded or a LG branded Refrigerator from

LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

380.    As a second and separate class, Plaintiffs seek certification of a second **Nationwide Class**: All persons in the United States who purchased, other than for resale, a Kenmore branded or a LG branded Refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

381.    In addition and/or in the alternative, Plaintiffs seek certification of the following State class:

**Alabama Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Alabama Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Arizona Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Arizona Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Arkansas Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Arkansas Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**California Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **California Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Colorado Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Colorado Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Florida Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Florida Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Georgia Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Georgia Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Hawaii Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Hawaii Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Idaho Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Idaho Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Illinois Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Illinois Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Indiana Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Indiana Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

**Kentucky Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Kentucky Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Louisiana Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Louisiana Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Maryland Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Maryland Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Massachusetts Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Massachusetts Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Michigan Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Michigan Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Minnesota Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Minnesota Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Mississippi Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Mississippi Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Missouri Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Missouri Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Nevada Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Nevada Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**New Hampshire Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **New Hampshire Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**New Jersey Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **New Jersey Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**New York Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **New York Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**North Carolina Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **North Carolina Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Ohio Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Ohio Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Oklahoma Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Oklahoma Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Oregon Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Oregon Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Pennsylvania Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Pennsylvania Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**South Dakota Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **South Dakota Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Tennessee Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Tennessee Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Texas Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Texas Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

**Virginia Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Virginia Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

**Washington Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailers, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured between January 1, 2018 and the present.

As a second, and separate **Washington Class**: All persons in California who purchased, other than for resale, a Kenmore branded or a LG branded refrigerator from LG, Transform or any other authorized retailer, including but not limited to Sears, Best Buy, Costco, Lowe's or Home Depot, which was manufactured prior to December 31, 2017, and which had a no-cooling event after September 2020.

381.    Excluded from the Class are Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of Defendants.  Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

**A.    Commonality**

382.  There are questions of law and fact that are common to the claims of Plaintiffs. Among these common questions are the following:

a. Whether the LG branded and Kenmore branded refrigerators were defective at the time of sale;

b. Whether and to what extent the compressor defect impairs the value of the LG branded and Kenmore branded refrigerators;

c. Whether Defendants knew of the compressor defect but continued to promote the LG branded and Kenmore branded refrigerators, including their linear compressors, without disclosing the defect or its consequences to consumers;

d. Whether a reasonable consumer would consider the compressor defect and its consequences important to the decision whether to purchase a LG branded or Kenmore branded refrigerator;

e. Whether Defendants breached implied warranties connected with the LG branded and Kenmore branded refrigerators;

f. Whether Defendants' representations and omissions relating to the LG branded and Kenmore branded refrigerators and their linear compressors were likely to deceive a reasonable consumer;

g. Whether Defendants' representations and/or omissions regarding the LG branded and Kenmore branded refrigerators were fraudulent;

h. Whether Defendants violated California's Unfair Competition Law by misrepresenting material information to consumers regarding the LG branded and Kenmore branded refrigerators;

i. Whether Defendants violated California's Unfair Competition Law by concealing material information from consumers regarding the LG branded and Kenmore branded refrigerators they sold;

j. Whether Defendants violated California's Unfair Competition Law by using uniform, deceptive business practices;

k. Whether Defendants' conduct violates any of the applicable state or territorial consumer protection statutes;

l. Whether Defendants were unjustly enriched as a result of its conduct;

m. Whether Class Members have been injured by Defendants' conduct;

n. Whether, and to what extent, equitable relief and/or other relief should be imposed on Defendants, and, if so, the nature of such relief; and

o. Whether Defendants' conduct as set forth above injured consumers, and if so, the extent of the injury and damages.

**B.      Numerosity**

p.   The members of the Class are so numerous that separate joinder of each member is impracticable.  Plaintiffs are informed and believe that the members of the Class would easily exceed at least tens of thousands of individuals.

**C.      Typicality**

q. Plaintiffs' claims are typical of the claims of the Class since each of the Plaintiffs was subject to the same or similar practices by Defendant, as was each member of the Class. Plaintiffs and Class members were injured in the same manner by purchasing LG and Kenmore branded refrigerators.  Plaintiffs and all Class members have the same claims against Defendants relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiffs and all Class members sustained monetary and economic injuries arising out of Defendants' conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

r. The core issues which predominate over all the other issues in the litigation involve Defendants' unfair, unlawful, negligent and fraudulent practices discussed above.

s. Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D.      Adequacy of Representation**

t. Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class.  There is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

u.   To prosecute this case, Plaintiffs have chosen the law firm of Beverly Hills Trial Attorneys, P.C., whose attorneys have represented plaintiffs in class actions and as private attorneys general in bringing public interest actions.

**E.      Superiority**

v. The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class.  All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" representations by Defendants and other acts constituting negligence, fraudulent misrepresentations and concealments, and violations of various consumer protection acts, and breach of implied warranty of merchantability.

w. Common issues predominate when as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

x. As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as in the case at bar, common questions are held to predominate over individual questions.

y. Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failures by Defendants, the predominance requirement needed for class action treatment is satisfied.

z. A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

      i.   Joinder of all class members would create extreme hardship and inconvenience for the affected consumers because of their immense geographical dispersion.

      ii.  It is highly unlikely that individual Plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or uneducated about Defendants' actions to bring separate actions;

      iii. The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

      iv.  Individual suits would not be cost effective.  The costs to individual Plaintiffs in a collective action are lowered through the pooling or resources and by

limiting the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity; and

v.  The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

Defendants have also acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

383.   At all relevant times, Defendants knew that the subject refrigerators were defective and knew that Plaintiffs and class members did not have such knowledge. Despite reasonable diligence on their part, Plaintiffs and class members were kept ignorant by Defendants of the factual bases for the claims for relief asserted below.

384.   Defendants actively concealed the compressor defect by touting these refrigerators as high quality and functionality without disclosing their defective nature. Defendants' concealment prevented Plaintiffs and class members from discovering their injuries and pursuing legal relief from Defendants.

385.   Plaintiffs did not discover and could not reasonably have discovered the compressor defect until their refrigerators prematurely failed.

## **FIRST CAUSE OF ACTION**

### **(Breach of Implied Warranty of Merchantability)**

(Ala. Code. §§ 7-2-314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code Ann. §§ 4-2-314 and 4-2A-212; Cal. Com. Code § 2314; Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212; F.S.A. §§ 672.314 and 680.212; Ga. Code. Ann. §§ 11-2-314 and 11-2A-212; Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212; Idaho Code §§ 28-2-314 and 28-12-212; 810 Ill. Comp. Stat. 5/2-314; Ind. Code §§ 26-1-3-314 and 26-1-2.1-212; Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212; La. Civ. Code Art. 2520, 2524; Md. Code Com. Law §§ 2-314 and 2a-212; Mass. Gen. Laws C. 106 §§ 2-314 and 2A-212; Mich. Comp. Laws § 440.314; Minn. Stat. §§ 336.2-314 and 336.2A-212; Miss. Code §§ 75-2-314 and 75-2A-212; Mo. Stat. §§ 400.2-314 and 400.2A-212; N.R.S. §§ 104.2314 and 104A.2212; N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212; N.J. Stat. Ann. § 12A:2-314; N.Y. U.C.C. Law §§ 2-314 and 2A-212; N.C. Gen. Stat. §§ 25-2-314; Ohio Rev. Code Ann. §§ 1302.27 and 1310.19; Okla. Stat. Tit. 12A §§ 2-314 and 2A-212; Or. Rev. Stat. § 72.8020 et seq.; Pa. Cons. Stat. §§ 2314 and 2A212; S.D. Codified Laws §§ 57A-2-314 and 57-2A-212; Tenn. Code Ann. §§ 47-2-314 and 47-2A-212; Tex. Bus. & Com. Code § 2.314; Va. Code §§ 8.2-314 and 8.2A-212; Rev. Code Wash. § 62A.2-314/315)

*By All Plaintiffs Against All Defendants*

386.    Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

387.    Defendants LG, Transform, Costco, Lowe's, Home Depot and Best Buy are "merchants" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively assert this claim.

388.    The Kenmore and LG refrigerators are "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively assert this claim.

389.    Defendants impliedly warranted that the Kenmore and LG refrigerators were of a merchantable quality and fit for their ordinary and intended use of cooling food and beverages.

390.    At the point of sale, the refrigerators contained an unseen compressor defect whose manifestation renders the refrigerators inoperable during its useful life. The defect in the refrigerators existed when they left Defendants' possession and rendered them unfit for their ordinary and intended purpose. At all relevant times, including when the refrigerators entered the stream of commerce and were purchased by Plaintiffs and Class members, the refrigerators were defective and substantially certain to fail.

391.    Defendants knew that the refrigerators were defective and prone to premature failure.

392.    Defendants acquired such knowledge from multiple sources, including, without limitation, their own design, development, and testing of the linear compressor, linear compressor repairs it or its authorized repair personnel performed, the thousands of consumer complaints that they received, interactions with their repair personnel, media reports, and the *multiple* class action lawsuits that have been brought against Defendant LG in the last several years.

393.    Defendants breached the implied warranty of merchantability because the refrigerators were not of a merchantable quality, as they contained a compressor defect. Had

Plaintiffs and Class members known of the embedded, latent defect in the refrigerators, they would not have purchased their refrigerators.

394.    Plaintiffs and Class members were in privity of contract with Defendants by virtue of their interactions with Defendants. Alternatively, privity of contract need not be established, and is not required, because Plaintiffs and Class members are the intended third-party beneficiaries of the implied warranties and other contracts between Defendant LG, Defendant Transform and Defendant Retailers who sold these refrigerators. In fact, Defendant LG's warranties were designed and intended for the benefit of consumers who purchased these refrigerators from Defendants.

395.    Given the previous lawsuits involving similar claims with regards to refrigerators manufactured and sold by Defendant LG and Defendant Transform, Defendants have had an opportunity to cure their breach of warranty, but have failed to do so.

396.    Defendants have refused to recall, adequately repair, replace, or refund the purchase price of failed refrigerators, and Defendants continue to sell these defective refrigerators both in their retail stores and on their websites.

397.    Any attempt by Defendants to disclaim the implied warranty of merchantability imposed by law would be inappropriate, particularly given the parties' unequal bargaining power and Defendants' exclusive knowledge of the defect and the true quality of the refrigerators.

398.    Defendants knowingly sold defective products without disclosing the defects and made representations concerning the reliability and quality of the refrigerators without revealing their propensity to fail. Moreover, the remedies Defendants offered injured purchasers were inadequate and unconscionable. Fairness therefore requires invalidating the disclaimer of the implied warranty of merchantability.

399.    The strict time limit of Defendants' warranty period is also unconscionable and inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining the time limit, the terms of which

unreasonably favored LG, Kenmore and the other Defendants, as they knew that the refrigerators were defective at the time of sale and that they would fail.

400.    Plaintiffs and Class members have complied with any and all obligations under the implied warranty of merchantability or otherwise have been excused from such compliance by reason of Defendants' conduct described herein.

401.    Defendants' breach of the implied warranty of merchantability damaged Plaintiffs and Class members in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## (COMMON LAW FRAUD – FRAUDULENT CONCEALMENT/FRAUD BY OMISSION)

*By All Plaintiffs Against All Defendants*

402.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

403.    Plaintiffs assert this fraudulent concealment theory on behalf of themselves and the Nationwide Classes or, in the alternative, on behalf of the State Subclasses under the law of the state in which each respective Plaintiff purchased a LG or Kenmore branded refrigerator.

404.    Defendants intentionally suppressed and concealed material facts about the performance and quality of the refrigerators. As alleged herein, Defendants knew about the defective nature of the compressors and related parts in the Kenmore and LG Refrigerators. Further, Defendants was aware of numerous consumer complaints concerning defect-related problems, but never disclosed the compressor defect to Plaintiffs and class members.

405.    Because the defect in the refrigerators is latent and unobservable until it arises, Plaintiffs and class members had no reasonable means of knowing that Defendants' representations concerning the refrigerators, and their compressors, were incomplete, false, or misleading, or that they had failed to disclose that the refrigerators are defective. Plaintiffs and class members did not and reasonably could not have discovered Defendants' deceit before they purchased their refrigerators or before the end of their buyer's remorse periods.

406.    Had Plaintiffs and class members known that the refrigerators are defective, they would not have purchased these refrigerators, would not have purchased the refrigerators at the price they did, or would have returned their Refrigerators for a refund during their respective buyers' remorse periods.

407.    Defendants had a duty to disclose the compressor defect because the defect is material and Defendants possessed exclusive knowledge of these defects. In fact, Defendants acquired their knowledge of the compressor defect from multiple sources, including, without limitation, thousands of consumer complaints that they received, interactions with their authorized repair personnel, media reports, and the *multiple* class action lawsuits filed in this regard.

408.    Defendants also had a duty to disclose the compressor defect because, through advertising, their sale representatives, statements made on their websites, and in other sources that Plaintiffs and class members encountered before purchasing their refrigerators, Defendants made representations regarding the supposed high quality and durability of the refrigerators and their linear compressor-including representations about their reliability-but failed to disclose facts that would have materially qualified these partial representations. Having volunteered information relating to the compressor to Plaintiffs and class members, Defendants had a duty to disclose the whole truth about the compressor and its defective nature.

409.    Given Defendants' concealments, each Plaintiff was unaware of the latent defects the Kenmore and LG refrigerators had before and immediately after purchase, and within the time period in which they could have returned their refrigerators without penalty. In fact, Plaintiff saw Defendants' positive representations about the refrigerators online or in product advertisements, and received further information from Defendants' sales representatives about these refrigerators in person. None of the informational sources Plaintiffs saw, indicated that the refrigerators are defective or could have a faulty compressor.

410.    In fact, each time any of the Plaintiffs sought product information from one of Defendants' sales representatives in store, they had nothing but good things to say about these

refrigerators and thereby encouraged the purchase of said refrigerators without disclosing the truth about them.

411.    Defendants concealed the compressor defect to sell more refrigerators at premium prices, prevent damage to their brands, and avoid the costs of an effective fix. Defendants also concealed the compressor defect to avoid repairing, replacing, and refunding their customers.

412.    The suppressed and omitted information about these refrigerators were material, and Plaintiffs and class members were unaware of them until they experienced the defect.

413.    Had Defendants disclosed the defect, including through advertising, press releases, promotional materials, or retailer statements, Plaintiffs and class members would not have purchased these refrigerators, would have paid substantially less for them, or would have returned them for a refund.

414.    When deciding to purchase a Kenmore or LG refrigerator, Plaintiffs and class members reasonably relied to their detriment upon Defendants' material omissions regarding these products' defects.

415.    Plaintiffs and class members sustained damages as a direct and proximate result of Defendants' deceit and fraudulent concealment. Among other damages, Plaintiffs and class members did not receive the value associated with the price they paid for these refrigerators.

416.    Defendants' fraudulent concealment was malicious, oppressive, deliberate, intended to defraud Plaintiffs and class members and enrich Defendants, and in reckless disregard of Plaintiffs' and class members' rights, interests, and well-being. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof at trial.

### THIRD CAUSE OF ACTION

### (COMMON LAW FRAUD – FRAUDULENT MISREPRESENTATION)

*By All Plaintiffs Against All Defendants*

417.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

418.    Plaintiffs assert this affirmative misrepresentation theory on behalf of themselves and the Nationwide Classes or, in the alternative, on behalf of the State Subclasses under the law of the state in which each respective Plaintiff purchased a LG or Kenmore branded refrigerator.

419.    Defendants have represented to the public that LG and Kenmore refrigerators containing LG's linear compressors are very durable and have been tested and shown to surpass "the 20-year lifespan test." As stated in detail in paragraphs 64 and 65 above, Defendants LG and Transform, through their websites, product pages, YouTube Channels and social media pages, have made several misleading representations concerning the subject compressors and refrigerators.

420.    Additionally, beyond the statements made by LG and Kenmore, which the Defendant Retailers incorporated by reference on their websites, each Defendant Retailer also attained, disseminated, and marketed other information about the lifespan and reliability of the subject refrigerators, including the compressors contained within them. Statements approved by LG and Transform (and its predecessor) and made by its authorized resellers also advertised the linear compressors and the refrigerators' overall functionality. Some examples of these statements are listed in paragraph 67, above.

421.    Moreover, at the point of sale, many of the Defendant Retailers' employees expressly discussed the new compressor technology contained in the LG and Kenmore refrigerators, and the extended lifespan and increased efficiency and reliability of these refrigerators, to market, sell and convince customers to purchase these refrigerators. Moreover, Defendant Retailers' employees made representations about the linear compressors contained in the LG and Kenmore refrigerators and made representations to many of the Plaintiffs about the exceptional quality and durability of these refrigerators.  At the point of sale, the Defendant Retailers' employees represented to numerous Plaintiffs that the LG and Kenmore refrigerators were best-selling refrigerators, priced at a premium due to their outstanding quality and durability. At the point of sale, the Defendants Retailers' employees attributed the exceptional quality and durability of the LG and Kenmore refrigerators to this new linear compressor technology innovated by LG.

422.    All of these representations made by the Defendants were intended to influence Plaintiffs to purchase these faulty refrigerators when, in reality, Defendants have known of the systemic compressor failures of these refrigerators at the time these statements were made.

423.    When deciding to purchase a Kenmore or LG refrigerator, Plaintiffs and class members reasonably relied to their detriment upon Defendants' material misrepresentations and regarding the excellent quality and durability of these refrigerators.

424.    Plaintiffs and class members sustained damages as a direct and proximate result of Defendants' misrepresentations as these misrepresentations were a substantial factor in causing Plaintiffs' harm. Among other damages, Plaintiffs and class members did not receive the value associated with the price they paid for these refrigerators.

425.    Defendants' fraudulent misrepresentations were malicious, oppressive, deliberate, intended to defraud Plaintiffs and class members and enrich Defendants, and in reckless disregard of Plaintiffs' and class members' rights, interests, and well-being. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof at trial.

<u>**FOURTH CAUSE OF ACTION**</u>

**(VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT)**

**15 U.S.C. § 2301, ET SEQ. ("MMWA")**

*By All Plaintiffs Against Defendant LG*

426.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

427.    Plaintiffs assert this claim on behalf of themselves and the Nationwide Classes or, in the alternative, on behalf of the State Subclasses, against Defendant LG.

428.    The LG and Kenmore branded refrigerators are "consumer products" under the MMWA. 15 U.S.C. § 2301(1).

429.    Plaintiffs and Class Members are "consumers" under the MMWA. 15 U.S.C. § 2301(3).

430.     Defendant LG is a "supplier" and "warrantor" under the MMWA. 15 U.S.C. §
2301(4)-(5).

431.     Through its implied warranty, LG warranted to Plaintiffs and Class members that
the LG manufactured refrigerators they purchased were free from defects, of merchantable
quality, and fit for the ordinary purpose for which a refrigerator is used.

432.     Defendant LG breached and refused to honor these implied promises. As a result
of the compressor defect, the LG manufactured refrigerators are inoperable and fail to perform in
accordance with their ordinary and intended purposes.

433.     Defendant LG has been given reasonable opportunities to cure its breaches of
warranty, as it had actual knowledge and ample notice that the LG manufactured refrigerators are
defective as detailed above, but failed to provide an adequate remedy. Alternatively, Plaintiffs
and the Class Members are not required to do so because affording LG a reasonable opportunity
to cure its breach of warranties was, and is, futile.

434.     Defendant LG's breach of its warranties has deprived Plaintiffs and the other Class
Members of the benefit of their bargain.

435.     The amount in controversy of Plaintiffs' individual claims exceeds the sum or
value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of
$50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in
this suit.

436.     As a direct and proximate result of Defendant LG's breaches of its implied
warranty pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class Members have suffered
damages in an amount to be determined at trial.

437.     Plaintiffs also seek costs and expenses, including reasonable attorneys' fees, under
the MMWA. 15 U.S.C. § 2310(d)(2).

## FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

*By All Plaintiffs Against All Defendants*

438.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

439.    Plaintiffs assert this negligent misrepresentation theory on behalf of themselves and the Nationwide Classes or, in the alternative, on behalf of the State Subclasses under the law of the state in which each respective Plaintiff purchased a LG or Kenmore branded refrigerator.

440.    At all relevant times, Defendants designed, manufactured, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed these Kenmore and LG branded refrigerators into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that purchased said refrigerators, such as Plaintiffs.

441.    Defendants were negligent, reckless, and careless and owed a duty to Plaintiffs to make accurate and truthful representations regarding these refrigerators, Defendants breached their duty, thereby causing Plaintiffs to suffer harm.

442.    Defendants represented to Plaintiffs via advertising, their websites, through their sale representatives as well as by other means, that these refrigerators were of high-quality and failed to inform their customers about the true nature of the refrigerators being sold to them, including that they contain a faulty compressor that fails prematurely.

443.    Additionally, Defendants represented to Plaintiffs that their refrigerators were made for their intended use, when in fact, Defendants knew or should have known that there was a latent defect in the refrigerators which Plaintiffs and class members had no reasonable means of knowing about. In fact, each time any of the Plaintiffs sought product information from one of Defendants, either online or in store, Defendants had nothing but good things to say about these refrigerators and thereby encouraged the purchase of said refrigerators without disclosing the truth about them.

444.    In particular, each of the misrepresentations made by Defendants concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether they should purchase these refrigerators.

445.    Defendants knew or should have known that their representations were false and were negligently made without regard for their truth.

446.    Plaintiffs reasonably placed their trust and reliance in Defendants' representations that the refrigerators were as advertised, that is that they were high-quality, durable, working refrigerators that would be in good working conditions for years to come. Plaintiffs' reliance on Defendants' representation was a substantial factor in causing Plaintiffs' harms.

447.    Furthermore, Defendants' acts and omissions as described herein were committed in reckless disregard of Plaintiffs' rights, interests, and well-being to enrich Defendants. Defendants have yet to correct these misrepresentations about these LG and Kenmore branded refrigerators.

448.    Plaintiffs and the members of the class were injured as a direct and proximate result of Defendants' negligent misrepresentations regarding their products, as described herein.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)
*By All Plaintiffs Against All Defendants*

449.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

450.    Plaintiffs assert this affirmative misrepresentation theory on behalf of themselves and the Nationwide Classes or, in the alternative, on behalf of the State Subclasses under the law of the state in which each respective Plaintiff purchased a LG or Kenmore branded refrigerator.

451.    As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiffs and members of the Class when they purchased the defective refrigerators containing faulty compressors.

452.    In so doing, Defendants acted with conscious disregard of the rights of Plaintiffs and members of the Class.

453.    As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

454.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

455.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, and are still receiving, without justification, from the false and deceptive labeling and marketing of the refrigerators to Plaintiffs and members of the Class.

456.    Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

457.    The financial benefits derived by Defendants rightfully belong to Plaintiffs and members of the Class. Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them.

458.    Accordingly, Plaintiffs and Class Members were damaged, and Defendants were unjustly enriched, given that they defrauded Plaintiffs into purchasing said refrigerators by not disclosing the fact that these products contained faulty compressors and would break down after only a couple of years.

459.    Furthermore, Defendants' conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiffs and the Class. Defendants are therefore liable to pay punitive damages.

460.    Plaintiffs and Class Members are entitled to damages in the amount Defendants were unjustly enriched, to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Violation of the Alabama Deceptive Trade Practices Act – Ala. Code § 8-19-1, *et seq.*)

*By Plaintiff Cambron, Individually and On Behalf of the Alabama Subclass*

461.     Plaintiff Cambron realleges and incorporates here by reference each of the foregoing paragraphs, and further allege as follows.

462.     Plaintiff Cambron brings this claim on behalf of himself and the Alabama State Class against all Defendants.

463.     Plaintiff and Alabama State Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

464.     Defendants are "persons" within the meaning of Ala. Code § 8-19-3(5).

465.     The LG and Kenmore branded refrigerators are "goods" within the meaning of Ala. Code § 8-19-3(3).

466.     Defendants were and are engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

467.     The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

468.     In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiff and Alabama State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Alabama State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Alabama State Class members did not and could not unravel Defendants' deception on their own.

469.    Defendants thus violated the Alabama DTPA by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not.

470.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiff and the Alabama State Class.

471.    Defendants knew or should have known that their conduct violated the Alabama DTPA.

472.     Defendants owed Plaintiff and the Alabama State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

473.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiff and the Alabama State Class.

474.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Alabama Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

475.    Plaintiff and the Alabama State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

476.    Defendants have been on notice of the issues raised in this count and this Complaint by way of communications received from Plaintiff and the Alabama Class, as well as through the various prior lawsuits they have been a part of with regards to the same issue. Plaintiff and the Alabama State Class seek all damages and relief to which they are entitled.

**EIGHTH CAUSE OF ACTION**

**(Violation of the Arizona Consumer Fraud Act – Ariz. Rev. Stat. § 44-1521,** *et seq.***)**

*By Plaintiffs Bolton, Fletcher, Sellers, Denman, Hatfield, Richmond and Wilson, Individually and On Behalf of the Arizona Subclass*

477.    Plaintiffs Bolton, Fletcher, Sellers, Denman, Hatfield, Richmond and Wilson reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

478.    Plaintiffs Bolton, Fletcher, Sellers, Denman, Hatfield, Richmond and Wilson bring this claim on behalf of themselves and the Arizona State Class against all Defendants.

479.    Plaintiffs and Arizona State Class members are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

480.    The LG and Kenmore branded refrigerators are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

481.     The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

482.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Arizona State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Arizona State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiff and Arizona State Class members did not and could not unravel Defendants' deception on their own.

483.    Defendants thus violated the Arizona CFA by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which

they do not have; and representing that they are of a particular standard, quality, and grade when they are not.

484.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Arizona State Class.

485.    Defendants knew or should have known that their conduct violated the Arizona CFA.

486.    Defendants owed Plaintiffs and the Arizona State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

487.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Arizona State Class.

488.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Arizona State Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

489.    Plaintiffs and the Arizona State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

490.    Plaintiffs and the Arizona State Class seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs and the Arizona State Class also seek punitive damages because Defendants engaged in aggravated and outrageous conduct.

491.    Plaintiffs and the Arizona State Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## NINTH CAUSE OF ACTION

**(Violation of the Arkansas Deceptive Trade Practices Act – Ark. Code Ann. § 4-88-101 *et seq.*)**

*By Plaintiffs Hollis and Ray, Individually and On Behalf of the Arkansas Subclass*

492.    Plaintiffs Hollis and Ray reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

493.    Plaintiffs Hollis and Ray bring this claim on behalf of themselves and the Arkansas State Class against all Defendants.

494.    Plaintiffs and Arkansas State Class members are "persons" within the meaning of Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

495.    The LG and Kenmore branded refrigerators are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

496.    The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

497.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Arkansas State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Arkansas State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiff and Arkansas State Class members did not and could not unravel Defendants' deception on their own.

498.    Defendants thus violated the Arkansas DTPA by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities

which they do not have; and representing that they are of a particular standard, quality, and grade when they are not.

499.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Arkansas State Class. Defendants knew or should have known that their conduct violated the Arkansas DTPA.

500.    Defendants owed Plaintiffs and the Arkansas State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

501.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Arkansas State Class.

502.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Arkansas State Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

503.    Defendants' violations present a continuing risk to the Arkansas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

504.    Plaintiffs and the Arkansas State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Arkansas DTPA. All owners of these refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

505.    As a direct and proximate result of Defendants' violations of the Arkansas DTPA, Plaintiffs and members of the Arkansas State Class have suffered injury in fact and/or actual damages.

506.     Plaintiffs and the Arkansas State Class seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs and the Arizona State Class also seek punitive damages because Defendants acted wantonly in causing the injury or with conscious indifference to the consequences.

507.     Plaintiffs and the Arkansas State Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## TENTH CAUSE OF ACTION

**(Breach of Implied Warranty in Violation of the Song-Beverly Consumer Warranty Act)**

*By Plaintiffs Lavin, Schroeder, Wemhoff, Moser, Muchemore, Hernandez, Peighambari, Jelenic, Reichello, Shahab, Ko, Tangco, Cervantes, Wolfe and Ellis, Individually and On Behalf of the California Subclass*

508.     Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

509.     Plaintiffs Lavin, Schroeder, Wemhoff, Moser, Muchemore, Hernandez, Peighambari, Jelenic, Reichello, Shahab, Ko, Tangco, Cervantes, Wolfe and Ellis, and California Subclass members are "buyers" within the meaning of California Civil Code section 1781(b). Each purchased a LG or Kenmore branded refrigerator in California sold by one of the Defendant Retailers.

510.     LG is a manufacturer within the meaning of California Civil Code section 1791 *et seq.* LG was responsible for producing the Refrigerators, and directed and was involved in all stages of their production and manufacturing process.

511.     Defendants Transform, Best Buy, Costco, Home Depot, and Lowe's are "retail sellers," "seller," or "retailer" within the meaning of California Civil Code section 1791 *et seq.* as they engaged in the business of selling the refrigerators directly to retail buyers.

512.     The refrigerators are "consumer goods" within the meaning of California Civil Code section 1791(a).

513.     Defendants impliedly warranted to Lavin, Schroeder, Wemhoff, Moser, Muchemore, Hernandez, Peighambari, Jelenic, Reichello, Shahab, Ko, Tangco, Cervantes, Wolfe, Ellis and California Subclass members that the LG and Kenmore refrigerators were "merchantable" under California Civil Code sections 1791.1(a) and 1792.

514.     Defendants breached the implied warranty of merchantability by producing, manufacturing, and/or selling unmerchantable goods. The refrigerators Plaintiffs purchased were defective. The compressor defect invariably manifests well before the end of the useful life of each refrigerator. When the defect manifests, the result is total failure-the refrigerator is unable to fulfill its core function of cooling. These refrigerators are thus unfit for the ordinary purposes for which a refrigerator is used and would not pass without objection in the refrigerator trade.

515.     The compressor defect is latent. Though the refrigerators appear to be operable when new, the defect existed within each LG and Kenmore refrigerator at the time of sale and throughout the periods of the written and statutory warranties.

516.     Moreover, Defendants had reason to know that at the time of the retail sale of these refrigerators, that Plaintiffs were relying on Defendants' skill or judgment to select, furnish and sell suitable goods to their customers.

517.     Accordingly, discovery of the defect by a purchaser during or after a warranty period does not bar a Song-Beverly claim for breach of the statutory implied warranty.

518.     Any attempt by Defendants to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to their failure to adhere to California Civil Code sections 1792.3 and 1792.4. Those sections provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer, distributor or retailer must "in simple and concise language" state: (1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair. Defendants attempted warranty disclaimer does not conform to sections 1792.3 and 1792.4.

519.   As a direct and proximate result of Defendants' breaches of the Song-Beverly Act, Plaintiffs and the California Subclass members have been damaged in an amount to be proven at trial. They are entitled to recover, among other damages, all amounts paid towards the purchase of the refrigerators, and other relief as appropriate.

520.   Defendants knew of the defect before selling the refrigerators and therefore, their Song-Beverly violations were willful. Plaintiffs Lavin, Schroeder, Wemhoff, Moser, Muchemore, Hernandez, Peighambari, Jelenic, Reichello, Shahab, Ko, Tangco, Cervantes, Wolfe, Ellis and California Subclass members accordingly seek a civil penalty of twice their actual damages.

521.   Plaintiffs Lavin, Schroeder, Wemhoff, Moser, Muchemore, Hernandez, Peighambari, Jelenic, Reichello, Shahab, Ko, Tangco, Cervantes, Wolfe and Ellis also seeks costs and expenses, including reasonable attorneys' fees, as provided under California Civil Code section 1794.

## ELEVENTH CAUSE OF ACTION

### (Violation of the Consumer Legal Remedies Act (CLRA) – Civil Code § 1750, *et seq.*)

*By Plaintiffs Lavin, Schroeder, Wemhoff, Moser, Muchemore, Hernandez, Peighambari, Jelenic, Reichello, Shahab, Ko, Tangco, Cervantes, Wolfe and Ellis, Individually and On Behalf of the California Subclass*

522.   Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

523.   Defendants are "persons" as defined by *Civil Code* section 1761(c).

524.   Plaintiffs Lavin, Schroeder, Wemhoff, Moser, Muchemore, Hernandez, Peighambari, Jelenic, Reichello, Shahab, Ko, Tangco, Cervantes, Wolfe and Ellis and each member of the California Class are "consumers" within the meaning of *Civil Code* section 1761(d).

525.   The Consumers Legal Remedies Act applies to Defendants' conduct because it extends to transactions that are intended to or result in the sale or lease of goods or services to consumers.

526.   Defendant violated and continue to violate the CLRA by engaging in the following practices: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the California Class.

527.   Defendants owed Plaintiffs and the California Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised. Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the California State Class.

528.   Defendants engaged in unfair or deceptive acts or practices when, in the course of their business, they, among other acts and practices, knowingly made materially incomplete representations as to the characteristics, uses and benefits of the LG and Kenmore branded refrigerators.

529.   As detailed above, Defendants knew the information concerning the defects of these refrigerators at the time of advertising and selling the refrigerators, all of which was intended to induce consumers to purchase these refrigerators, and intended for Plaintiffs and California Class members to rely on their false representations about the quality and durability of these refrigerators.

530.   Defendants intentionally failed or refused to disclose the defect to consumers.

531.   Defendants' conduct and deceptive omissions were intended to induce Plaintiffs and California State Class members to believe that the refrigerators were adequately designed and adequately manufactured.

532.   Defendants' conduct constitutes unfair acts or practices as defined by the California Consumers Legal Remedies Act (the "CLRA").

533.   Plaintiffs and the other California State Class members have suffered injury in fact and actual damages resulting from Defendants' material omissions.

534.   Plaintiffs and the California State Class seek an order enjoining Defendants' unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available under the CLRA. The claim for equitable relief is brought in the alternative should Plaintiffs not have an adequate remedy at law.

535.   Defendants have been on notice of the issues raised in this count and this Complaint by way of communications received from Plaintiffs and the California Class, as well as through the various prior lawsuits filed against them, in California, with regards to the same issues. As such, Plaintiffs and the California State Class seek all damages and relief to which they are entitled.

## TWELFTH CAUSE OF ACTION

**(Violation of *Business and Professions Code* sections 17200, *et seq*.)**

*By Plaintiffs Lavin, Schroeder, Wemhoff, Moser, Muchemore, Hernandez, Peighambari, Jelenic, Reichello, Shahab, Ko, Tangco, Cervantes, Wolfe and Ellis, Individually and On Behalf of the California Subclass*

536.   Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

537.   Plaintiffs, pursuant to *Business and Professions Code* section 17204, bring this cause of action on behalf of themselves and as a private attorneys general.

538.   *Business and Professions Code* section 17200, *et seq*., also known as the Unfair Competition Law, defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. The Unfair Competition Law imposes strict liability.  Plaintiffs need not prove that Defendants intentionally or negligently engaged in unlawful, unfair or fraudulent business practices – but only that such practices occurred.

*"Unlawful" Prong*

539.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

540.   As detailed in Plaintiffs' Cause of Action above, Defendants' conduct is unlawful in violation of the UCL, as it violates the Song-Beverly Act and the Consumer Legal Remedies Act.

541.   Defendant's unlawful business practices are ongoing, and unless enjoined under *Business & Professions Code* section 17203, and/or under section 17535, are likely to continue to deceive other members of the general public at the expense of Defendants' competitors.

542.   Defendants violated Cal. Bus. & Prof. Code sections 17200, *et seq*. by engaging in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, including:

    a.   Knowingly manufacturing, advertising, and selling refrigerators that are unfit for their most basic function of cooling food and beverages;

    b.   Misrepresenting material information to consumers regarding these refrigerators' quality, and their ability to function properly and be used by consumers;

    c.   Concealing material information from consumers regarding the fact that these refrigerators are defective, so that consumers would not know that these products are faulty and would continue to purchase them;

    d.   Using uniform, deceptive business practices, such as telling consumers via their websites that these refrigerators are of high quality without transparently disclosing that they contain a compressor that fails prematurely.

*"Unfair" Prong*

543.   A business act or practice is "unfair" under the UCL if it offends an established

public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

544.    Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class Members. These business practices include failing to inform its customers about the true nature of the refrigerators being sold to them, including that they contain a faulty compressor that fails prematurely, and engaging in a pattern or practice of concealing those facts and urging their customers to purchase these refrigerators, thereby depriving consumers of sufficient information to make an informed decision when purchasing these refrigerators.

545.    Further, the impact of the practice against Plaintiffs and the Class Members far outweighs any possible justification or motive on the part of Defendants. The impact on Plaintiffs and the Class Members has been described.  Defendants can have no possible justification for engaging in immoral, unethical and substantially injurious act of overcharging Plaintiffs and the Class Members through a misleading and deceptive conduct of failing to disclose that the refrigerators are defective and representing that these refrigerators possess qualities Defendants knew the products did not possess;

546.    Furthermore, Plaintiffs and the Class Members could not have reasonably avoided this injury because they relied on Defendants' advertising as to the quality and characteristics of the products being sold, as all consumers who rely on the verity of product advertising must do;

547.    Specifically, Plaintiffs paid hefty prices for Defendants' refrigerators, believing that they were high-quality products that were going to last for years;

548.    Defendants minimized the scope and severity of the problems with the refrigerators, refusing to acknowledge that the compressor is defective, failing to provide consumers with adequate relief, and suggesting to consumers that they should resolve the problem by replacing the compressor when they knew that such a replacement would not be effective;

549.    The harm to Plaintiffs and Class members outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

550.    The refrigerators suffer from a latent defect, and Defendants failed to disclose these defects even after receiving a large volume of consumer complaints and reports of compressor failure from their authorized repair personnel. Plaintiffs did not know of, and had no reasonable means of discovering, that these refrigerators are defective.

551.    There were reasonably available alternatives that would have furthered Defendants' legitimate business interests of satisfying and retaining customers while maintaining profitability, such as  (a) acknowledging the defect and providing a permanent, effective fix for the defective refrigerators; (b) adequately disclosing the defect to prospective purchasers; (c) offering refunds or suitable non-defective replacement refrigerators to consumers with failed refrigerators; (d) and in the case of the Defendant Retailers, refusing to sell these defective refrigerators until Defendant LG assured them that it was no longer manufacturing refrigerators with defective compressors.

**"Fraudulent" Prong**

552.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

553.    Defendants' conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer. Among other fraudulent conduct, Defendants:

a. knowingly concealed from Plaintiffs that the Refrigerators contain a latent defect that gives them a propensity to fail;

b. volunteered information to Plaintiffs through their website, press releases, sales associates, and other means that the refrigerators-and their linear compressors-were functional, premium products without disclosing facts that would have materially qualified those misleading partial representations; and

c. promoted the refrigerators as being high quality and containing premium features, including a purportedly reliable linear compressor, despite knowing the refrigerators are defective, and failed to correct their misleading representations.

554.    Defendants knew that the refrigerators were defective and prone to premature failure. Defendants acquired such knowledge from multiple sources, including, without limitation, the thousands of consumer complaints that they received, interactions with their authorized repair personnel, media reports, and the *multiple* class action lawsuits filed in the past few years.

555.    Defendants owed a duty to disclose that the refrigerators are defective because they had superior knowledge of the compressor defect.

556.    Defendants had ample means and opportunities to disclose to Plaintiffs prior to purchase that the refrigerators are defective, including through advertisements, on their websites, and through their sales associates at their retail stores. Despite their exclusive knowledge of and these opportunities to disclose the refrigerators' defective nature, Defendants failed to disclose the compressor defect to Plaintiffs before their respective buyers' remorse periods expired.

557.    Defendants' misrepresentations and fraudulent omissions were material.

558.    Defendants' fraud led to consumers paying for products that they would not have paid for if they knew the truth about the fact that these products were defective and would break down after approximately one to three years of use.

559.    As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Class Members were injured and lost money.  They did not receive the benefit of the bargain in purchasing the refrigerators, and they spent their own time and money dealing with consequences of being sold defective refrigerators.

560.    Defendants acted intentionally, knowingly, and maliciously in violation of California's Unfair Competition Law.

561.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed

by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs, injunctive relief, and other appropriate equitable relief.

562.    In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs also seek, in addition to damages, restitution and other equitable relief, to recover attorney fees under (i) section 1021.5 of the *Code of Civil Procedure*, and/or (ii) the "common fund" doctrine available to prevailing Plaintiffs who confer a benefit on the general public.

## THIRTEENTH CAUSE OF ACTION

**(Violation of the Colorado Consumer Protection Act – Col. Rev. Stat. § 6-1-101, *et seq.*)**

*By Plaintiff Cowan, Individually and On Behalf of the Colorado Subclass*

563.    Plaintiff Cowan realleges and incorporates here by reference each of the foregoing paragraphs, and further allege as follows.

564.    Plaintiff Cowan brings this claim on behalf of herself and the Colorado State Class against all Defendants.

565.    Defendants are "persons" within the meaning of Col. Rev. Stat. § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101, et seq.

566.    Plaintiff and Colorado State Class members are "consumers" within the meaning of Col. Rev. Stat. § 6-1-113(1)(a) who purchased LG or Kenmore branded refrigerators.

567.    The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Defendants engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the refrigerators that had the capacity or tendency to deceive Colorado State Class members; (2) representing that the refrigerators are of a particular standard, quality, and grade even though Defendants knew or should have known they are not; (3) advertising the refrigerators with the intent no to sell them as advertised; and (4) failing to disclose material information concerning the refrigerators, known to Defendants at the time of advertisement or sale with the intent to induce Plaintiff and Colorado Class members to purchase these refrigerators.

---

568.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiff and Colorado State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Colorado State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiff and Colorado State Class members did not and could not unravel Defendants' deception on their own.

569.    Defendants thus violated the Colorado CPA by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not.

570.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiff and the Colorado State Class.

571.    Defendants knew or should have known that their conduct violated the Colorado CPA.

572.    Defendants owed Plaintiff and the Colorado State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

573.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiff and the Colorado State Class.

574.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Colorado Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

575.    Defendants' violations present a continuing risk to the Colorado State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

576.     Plaintiff and the Colorado State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Colorado CPA.

## FOURTEENTH CAUSE OF ACTION

**(Violation of the Florida Unfair & Deceptive Trade Practices Act – Fla. Stat. § 501.201, *et seq.*)**

*By Plaintiffs Schleich, Henderson, Brown, Griner-Comproski, Cannon, Borden and Leedekerken, Individually and On Behalf of the Florida Subclass*

577.     Plaintiffs Schleich, Henderson, Brown, Griner-Comproski, Cannon, Borden and Leedekerken reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

578.     Plaintiffs Schleich, Henderson, Brown, Griner-Comproski, Cannon, Borden and Leedekerken bring this claim on behalf of themselves and the Florida State Class against all Defendants.

579.     Plaintiffs and Florida State Class members are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7) who purchased LG or Kenmore branded refrigerators.

580.     Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

581.     FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

582.     In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Florida State Class members had no way of discerning that Defendants' representations were false and misleading

because Plaintiffs and Florida State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Florida State Class members did not and could not unravel Defendants' deception on their own.

583.   Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not.

584.   Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Florida State Class.

585.   Defendants knew or should have known that their conduct violated the FUDTPA.

586.   Defendants owed Plaintiffs and the Florida State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

587.   Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Florida State Class.

588.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Florida Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

589.   Defendants' violations present a continuing risk to the Florida State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

590.   Plaintiffs and the Florida State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the FUDTPA.

591.     As a direct and proximate result of Defendants' violations of the FUDTPA, Plaintiffs and members of the Florida State Class have suffered injury-in-fact and/or actual damage.

592.     Plaintiffs and the Florida State Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

593.     Plaintiffs and the Florida State Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

## FIFTEENTH CAUSE OF ACTION

**(Violation of Georgia's Fair Business Practices Act – Ga. Code Ann. § 10-1-390, *et seq*.)**

*By Plaintiffs Strickland, Frame, Campbell, Sack and Carey, Individually and On Behalf of the Georgia Subclass*

594.     Plaintiffs Strickland, Frame, Campbell, Sack and Carey reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

595.     Plaintiffs Strickland, Frame, Campbell, Sack and Carey bring this claim on behalf of themselves and the Georgia State Class against all Defendants.

596.     The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-1-393(b).

597.     In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Georgia State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Georgia State Class members did not have access to the same information

that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Georgia State Class members did not and could not unravel Defendants' deception on their own.

598.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not.

599.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Georgia State Class.

600.    Defendants knew or should have known that their conduct violated the Georgia FBPA.

601.    Defendants owed Plaintiffs and the Georgia State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

602.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Georgia State Class.

603.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Georgia Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

604.    Defendants' violations present a continuing risk to the Georgia State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

605.    Plaintiffs and the Georgia State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Georgia FBPA.

606.     As a direct and proximate result of Defendants' violations of the Georgia FBPA, Plaintiffs and members of the Georgia State Class have suffered injury-in-fact and/or actual damage.

607.     Plaintiffs and the Georgia State Class are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).

608.      Plaintiffs and the Georgia State Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code. Ann. § 10-1-399.

609.     Defendants have been on notice of the issues raised in this count and this Complaint by way of communications received from Plaintiff and the Georgia Class, as well as through the various prior lawsuits they have been a part of with regards to the same issue. Plaintiff and the Georgia State Class seek all damages and relief to which they are entitled.

## SIXTEENTH CAUSE OF ACTION

**(Unfair and Deceptive Acts in Violation of Hawaii Law – Haw. Rev. Stat. § 480, *et seq*.)**

*By Plaintiff Painton, Individually and On Behalf of the Hawaii Subclass*

610.     Plaintiff Painton realleges and incorporates here by reference each of the foregoing paragraphs, and further allege as follows.

611.     Plaintiff Painton brings this claim on behalf of himself and the Hawaii State Class against all Defendants.

612.     Plaintiff and Hawaii State Class members are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1, who purchased LG or Kenmore branded refrigerators.

613.     Defendants are "person[s] under Haw. Rev. Stat. § 480-1.

614.     Defendants' acts or practices as set forth above occurred in the conduct of trade or commerce.

615.     The Hawaii Act § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."

616.   In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiff and Hawaii State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Hawaii State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiff and Hawaii State Class members did not and could not unravel Defendants' deception on their own.

617.   Defendants thus violated the Hawaii Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not.

618.   Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiff and the Hawaii State Class. Defendants knew or should have known that their conduct violated Hawaii law.

619.   Defendants owed Plaintiff and the Hawaii State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

620.   Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Hawaii State Class.

621.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Hawaii State Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

622.   Defendants' violations present a continuing risk to the Hawaii State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

623.   Plaintiffs and the Hawaii State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of

and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under Hawaii law. All owners of these refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

### SEVENTEENTH CAUSE OF ACTION

**(Violation of the Idaho Consumer Protection Act – Idaho Code § 48-601, et seq.)**

*By Plaintiff Nelson, Individually and On Behalf of the Idaho Subclass*

624.     Plaintiff Nelson realleges and incorporates here by reference each of the foregoing paragraphs, and further allege as follows.

625.     Plaintiff Nelson brings this claim on behalf of himself and the Idaho State Class against all Defendants.

626.     Defendants are "person[s]" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-602(1).

627.     Defendants' acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code § 48-602(2).

628.     Defendants participated in misleading, false, or deceptive acts that violated the Idaho CPA.

629.     In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiff and Idaho State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Idaho State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiff and Idaho State Class members did not and could not unravel Defendants' deception on their own.

630.     Defendants thus violated the Idaho CPA by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they

are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiff and the Idaho State Class.

631.    Defendants knew or should have known that their conduct violated the Idaho CPA.

632.    Defendants owed Plaintiff and the Idaho State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

633.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiff and the Idaho State Class.

634.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Idaho Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

635.    Defendants' violations present a continuing risk to the Idaho State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

636.    Plaintiffs and the Idaho State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Idaho CPA.

637.    As a direct and proximate result of Defendants' violations of the Idaho CPA, Plaintiff and members of the Idaho State Class have suffered injury-in-fact and/or actual damage.

638.    Pursuant to Idaho Code § 48-608, the Idaho State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Idaho State Class member.

639.    The Idaho State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

640.    The Idaho State Class also seeks punitive damages against Defendants because Defendants conduct evidences an extreme deviation from reasonable standards. Defendants flagrantly and fraudulently misrepresented the durability of the refrigerators, deceived Class members, and concealed material facts that only they knew—all to avoid the expense and public relations nightmare of correcting a flaw in the refrigerators. Defendants' unlawful conduct constitutes oppression and fraud warranting punitive damages.

**EIGHTEENTH CAUSE OF ACTION**

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act – 815 ILCS 505/1, *et seq.*)**

*By Plaintiffs Hawotte, Burge, Holdgrafer and Weisberg, Individually and On Behalf of the Illinois Subclass*

641.    Plaintiffs Hawotte, Burge, Holdgrafer and Weisberg reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

642.    Plaintiffs Hawotte, Burge, Holdgrafer and Weisberg bring this claim on behalf of themselves and the Illinois State Class against all Defendants.

643.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

644.    Members of the Illinois State Class are "consumers" as that term is defined in 815 ILCS 505/1(e).

645.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact. . . in the conduct of trade or commerce. . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

646.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Illinois State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Illinois State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Illinois State Class members did not and could not unravel Defendants' deception on their own.

647.    Defendants thus violated the Illinois CFA by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Illinois State Class.

648.    Defendants knew or should have known that their conduct violated the Illinois CFA.

649.    Defendants owed Plaintiffs and the Illinois State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

650.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Illinois State Class.

651.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Illinois Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

652.    Defendants' violations present a continuing risk to the Illinois State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

653.    Plaintiffs and the Illinois State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of

and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Illinois CFA.

654. As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiffs and members of the Illinois State Class have suffered injury-in-fact and/or actual damage.

655. Pursuant to 815 ILCS 505/10a(a), the Illinois State Class seeks monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

656. Plaintiffs and the Illinois State Class also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

<u>NINETEENTH CAUSE OF ACTION</u>

**(Violation of the Indiana Deceptive Consumer Sales Act – Ind. Code § 24-5-0.5-3)**

*By Plaintiffs Bell, Jameson, Hebner and Davis, Individually and On Behalf of the Indiana Subclass*

657. Plaintiffs Bell, Jameson, Hebner and Davis reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

658. Plaintiffs Bell, Jameson, Hebner and Davis bring this claim on behalf of themselves and the Indiana State Class against all Defendants.

659. In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Indiana State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Indiana State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Indiana State Class members did not and could not unravel Defendants' deception on their own.

660.     Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Illinois State Class.

661.     Defendants knew or should have known that their conduct violated the Indiana DCSA.

662.     Defendants owed Plaintiffs and the Indiana State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

663.     Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Indiana State Class.

664.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Indiana Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

665.     Defendants' violations present a continuing risk to the Indiana State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

666.     Plaintiffs and the Indiana State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Indiana DCSA.

667.     As a direct and proximate result of Defendants' violations of the Indiana DCSA, Plaintiffs and members of the Indiana State Class have suffered injury-in-fact and/or actual damage.

668.     Pursuant to Ind. Code § 24-5-0.5-4, the Indiana State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Indiana State Class member, including treble damages up to $1,000 for Defendants' willfully deceptive acts.

669.     The Indiana State Class also seeks punitive damages based on the outrageousness and recklessness of the Defendants' conduct and Defendants' high net worth.

670.     Defendants have been on notice of the issues raised in this count and this Complaint by way of communications received from Plaintiff and the Indiana Class, as well as through the various prior lawsuits they have been a part of with regards to the same issue. Plaintiff and the Indiana State Class seek all damages and relief to which they are entitled.

## TWENTIETH CAUSE OF ACTION

**(Violation of the Kentucky Consumer Protection Act – Ky. Rev. Stat. Ann § 367.110, *et seq*.)**

*By Plaintiffs Eaton and Sawyers, Individually and On Behalf of the Kentucky Subclass*

671.     Plaintiffs Eaton and Sawyers reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

672.     Plaintiffs Eaton and Sawyers bring this claim on behalf of themselves and the Kentucky State Class against all Defendants.

673.     Defendants, Plaintiffs and the Kentucky State Class are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

674.     Defendants engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

675.     The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." Ky. Rev. Stat. § 367.170(1). Defendants participated in misleading, false, or deceptive acts that violated the Kentucky CPA. By failing to disclose and by actively concealing the defects

identified herein, and marketing these refrigerators as reliable, efficient, and of high quality, Defendants engaged in deceptive business practices prohibited by the Kentucky CPA.

676.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Kentucky State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Kentucky State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Kentucky State Class members did not and could not unravel Defendants' deception on their own.

677.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Kentucky State Class.

678.    Defendants knew or should have known that their conduct violated the Kentucky CPA.

679.    Defendants owed Plaintiffs and the Kentucky State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

680.    Defendants' fraudulent concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Kentucky State Class.

681.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Kentucky Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

682.   Defendants' violations present a continuing risk to the Kentucky State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

683.   Plaintiffs and the Kentucky State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Kentucky CPA.

684.   As a direct and proximate result of Defendants' violations of the Kentucky CPA, Plaintiffs and members of the Kentucky State Class have suffered injury-in-fact and/or actual damage.

685.   Pursuant to Ky. Rev. Stat. Ann. § 367.220, the Kentucky State Class seeks to recover actual damages in an amount to be determined at trial; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## TWENTY-FIRST CAUSE OF ACTION

### (Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law – La. Stat. Ann. § 51.1401, et seq.)

*By Plaintiff Scott, Individually and On Behalf of the Louisiana Subclass*

686.   Plaintiff Scott realleges and incorporates here by reference each of the foregoing paragraphs, and further allege as follows.

687.   Plaintiff Scott brings this claim on behalf of himself and the Louisiana State Class against all Defendants.

688.   Defendants, Plaintiffs and the Louisiana State Class are "persons" within the meaning of the La. Rev. Stat. § 51:1402(1).

689.   Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

690.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). Defendants participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

691.   In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Louisiana State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Louisiana State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Louisiana State Class members did not and could not unravel Defendants' deception on their own.

692.   Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Louisiana State Class.

693.   Defendants knew or should have known that their conduct violated the Louisiana CPL.

694.   Defendants owed Plaintiffs and the Louisiana State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

695.   Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Louisiana State Class.

696.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Louisiana Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

697.    Defendants' violations present a continuing risk to the Louisiana State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

698.    Plaintiffs and the Louisiana State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Louisiana CPL.

699.    As a direct and proximate result of Defendants' violations of the Louisiana CPL, the Louisiana State Class has suffered injury-in-fact and/or actual damage.

700.    Pursuant to La. Rev. Stat. § 51:1409, the Louisiana State Class seeks to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

## TWENTY-SECOND CAUSE OF ACTION

### (Violation of the Maryland Consumer Protection Act – Md. Code Com. Law § 13-101 *et seq.*)

*By Plaintiffs Mullikin, Rivera and Adewole, Individually and On Behalf of the Maryland Subclass*

701.    Plaintiffs Mullikin, Rivera and Adewole reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

702.    Plaintiffs Mullikin, Rivera and Adewole bring this claim on behalf of themselves and the Maryland State Class against all Defendants.

703.    Defendants, and the Maryland State Class are "persons" within the meaning of the Code Com. Law § 13-101(h).

704.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md.

Code Com. Law § 13-303. Defendants participated in misleading, false, or deceptive acts that violated the Maryland CPA.

705.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Maryland State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Maryland State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Maryland State Class members did not and could not unravel Defendants' deception on their own.

706.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Maryland State Class.

707.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Maryland State Class. Defendants knew or should have known that their conduct violated the Maryland CPA.

708.    Defendants owed Plaintiffs and the Maryland State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

709.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Louisiana State Class.

710.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Maryland Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

711.    Defendants' violations present a continuing risk to the Maryland State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

712.    Plaintiffs and the Maryland State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Maryland CPA.

713.    As a direct and proximate result of Defendants' violations of the Maryland CPA, the Maryland State Class has suffered injury-in-fact and/or actual damage.

714.    Pursuant to Md. Code Com. Law § 13-408, the Maryland State Class seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**TWENTY-THIRD CAUSE OF ACTION**

**(Violation of Massachusetts Consumer Protection Law – Mass. Gen. Laws Ch. 93a, § 1, *et seq*.)**

***By Plaintiff Sacharin, Individually and On Behalf of the Massachusetts Subclass***

715.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

716.    Plaintiff Sacharin brings this claim under Massachusetts law on behalf of herself and the Massachusetts State Class.

717.    Massachusetts Consumer Protection Law ("MCPL") declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. ch. 93A, § 2(a).

718.    Defendants violated the MCPL by engaging in unfair or deceptive practices in the conduct of trade or commerce.

719.    Defendants represented to Plaintiff Sacharin and the Massachusetts Subclass members that they were purchasing high-quality refrigerators that would last many years, when

in fact they were selling defective refrigerators that had a short life-span of at times less than two years.

720.    Defendants failed to disclose the defective nature of these refrigerators and as such, and as a result of their uniform misrepresentations and omissions, misled customers into believing that they were purchasing long-lasting working refrigerators when in fact they were purchasing faulty and defective products that they would not have purchased had they known the truth about.

721.    Defendants' practices are likely to mislead a reasonable consumer and therefore were materially misleading.

722.    Defendants' conduct alleged herein was done knowingly and willfully.

723.    As a result of Defendants' misconduct, all Massachusetts Subclass members, including Plaintiff Sacharin, suffered an identifiable, economic injury-namely that Defendants' unfair or deceptive conduct caused them to overpay on refrigerators that lasted a fraction of the expected life of a refrigerator.

724.    On information and belief, Defendants have not refunded Plaintiff Sacharin or any other Massachusetts Subclass member for the wrongfully retained overcharge on the defective refrigerators sold to consumers, despite Defendants' clear knowledge of the defective nature of these products.

725.    As such, Plaintiff Sacharin and the Massachusetts Subclass members seek actual damages or statutory damages, whichever is greater, double or treble damages and reasonable attorneys' fees and costs.

## TWENTY-FOURTH CAUSE OF ACTION

**(Violation of the Michigan Consumer Protection Act – Mich. Comp. Laws § 445.903, *et seq.*)**

*By Plaintiffs Tapin and Mauk, Individually and On Behalf of the Michigan Subclass*

726.    Plaintiffs Tapin and Mauk reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

727.    Plaintiffs Tapin and Mauk bring this claim on behalf of themselves and the Michigan State Class against all Defendants.

728.    Plaintiffs, and the Michigan State Class are "persons" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

729.    Defendants are "person[s]" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

730.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." Mich. Comp. Laws § 445.903(1). Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have. . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

731.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Michigan State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Michigan State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Michigan State Class members did not and could not unravel Defendants' deception on their own.

732.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are

not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Michigan State Class.

733.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Michigan State Class. Defendants knew or should have known that their conduct violated the Michigan CPA.

734.    Defendants owed Plaintiffs and the Michigan State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

735.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Michigan State Class.

736.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Michigan Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

737.    Defendants' violations present a continuing risk to the Michigan State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

738.    Plaintiffs and the Michigan State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information in the course of Defendants' business. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Michigan CPA.

739.    As a direct and proximate result of Defendants' violations of the Michigan CPA, the Michigan State Class has suffered injury-in-fact and/or actual damage.

740.    Plaintiffs and the Michigan State Class seeks injunctive relief to enjoin Defendants from continuing its unfair and deceptive acts; monetary relief against Defendants measured as the

greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each Michigan State Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

741.    Plaintiffs and the Michigan State Class also seeks punitive damages against Defendants because it carried out despicable conduct with willful and conscious disregard of the rights of others. Defendants intentionally and willfully misrepresented the reliability of the refrigerators and concealed material facts that only they knew—all to avoid the expense and public relations nightmare of correcting a flaw in them. Defendants' unlawful conduct constitutes oppression and fraud warranting punitive damages.

## TWENTY-FIFTH CAUSE OF ACTION

**(Violation of the Minnesota Prevention of Consumer Fraud Act – Minn. Stat. § 325F.68, *et seq.*)**

*By Plaintiff Finkbeiner, Individually and On Behalf of the Minnesota Subclass*

742.    Plaintiff Finkbeiner realleges and incorporates here by reference each of the foregoing paragraphs, and further allege as follows.

743.    Plaintiff Finkbeiner brings this claim on behalf of himself and the Minnesota State Class against all Defendants.

744.    The refrigerators constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

745.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . . ." Minn. Stat. § 325F.69(1). Defendants participated in misleading, false, or deceptive acts that violated the Minnesota CFA.

746.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiff and Minnesota State Class

members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Minnesota State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiff and Minnesota State Class members did not and could not unravel Defendants' deception on their own.

747. Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiff and the Minnesota State Class.

748. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Minnesota State Class. Defendants knew or should have known that their conduct violated the Minnesota CFA.

749. Defendants owed Plaintiffs and the Minnesota State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

750. Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiff and the Minnesota State Class.

751. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Minnesota Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

752. Defendants' violations present a continuing risk to the Minnesota State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

753. Minnesota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain

from unfair and deceptive practices under the Minnesota CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

754.   As a direct and proximate result of Defendants' violations of the Minnesota CFA, Minnesota State Class members have suffered injury-in-fact and/or actual damage.

755.   Pursuant to Minn. Stat. § 8.31(3a), Minnesota State Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

756.   Minnesota State Class members also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights of others.

## TWENTY-SIXTH CAUSE OF ACTION

**(Violation of Mississippi Consumer Protection Act – Miss. Code. Ann. § 75-24-1, et seq.)**

*By Plaintiffs Feinstein and Lee, Individually and On Behalf of the Mississippi Subclass*

757.   Plaintiffs Feinstein and Lee reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

758.   Plaintiffs Feinstein and Lee bring this claim on behalf of themselves and the Mississippi State Class against all Defendants.

759.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised." Miss. Code. Ann. § 75-24-5. Defendants participated in deceptive trade practices that violated the Mississippi CPA as described herein, including representing that the refrigerators have characteristics, uses, benefits, and qualities

which they do not have; representing that the refrigerators are of a particular standard and quality when they are not; and advertising the refrigerators with the intent not to sell them as advertised.

760.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Mississippi State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Mississippi State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Mississippi State Class members did not and could not unravel Defendants' deception on their own.

761.   Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Mississippi State Class.

762.   Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Mississippi State Class. Defendants knew or should have known that their conduct violated the Mississippi CPA.

763.    Defendants owed Plaintiffs and the Mississippi State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

764.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Mississippi State Class.

765.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Mississippi Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

766.    Defendants' violations present a continuing risk to the Mississippi State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

767.    Mississippi State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Mississippi CPA. All owners of the refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

768.    As a direct and proximate result of Defendants' violations of the Mississippi CPA, Mississippi State Class members have suffered injury-in-fact and/or actual damage.

769.    Plaintiffs' and the Mississippi Class seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

## TWENTY-SEVENTH CAUSE OF ACTION

**(Violation of the Missouri Merchandising Practices Act – Mo. Rev. Stat. § 407.010, et seq.)**

*By Plaintiffs Freeman and Springston, Individually and On Behalf of the Missouri Subclass*

770.    Plaintiffs Freeman and Springston reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

771.    Plaintiffs Freeman and Springston bring this claim on behalf of themselves and the Missouri State Class against all Defendants.

772.    Defendants, Plaintiffs, and the Missouri State Class are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

773.    Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

774.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation,

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise Mo. Rev. Stat. § 407.020.

775.     In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Missouri State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Missouri State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Missouri State Class members did not and could not unravel Defendants' deception on their own.

776.     Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Missouri State Class.

777.     Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Missouri State Class. Defendants knew or should have known that their conduct violated the Missouri MPA.

778.     Defendants owed Plaintiffs and the Missouri State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

779.     Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Missouri State Class.

780.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Missouri Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

781. Defendants' violations present a continuing risk to the Missouri State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

782. Missouri State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Missouri MPA. All owners of the refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

783. As a direct and proximate result of Defendants' violations of the Missouri MPA, Plaintiff and Missouri State Class members have suffered injury-in-fact and/or actual damage.

784. Defendants are liable to Plaintiff and the Missouri State Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## **TWENTY-EIGHTH CAUSE OF ACTION**

**(Violation of the Nevada Deceptive Trade Practices Act – Nev. Rev. Stat. § 598.0903, et seq.)**

*By Plaintiffs Harris and Hopfensitz, Individually and On Behalf of the Nevada Subclass*

785. Plaintiffs Harris and Hopfensitz reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

786. Plaintiffs Harris and Hopfensitz bring this claim on behalf of themselves and the Nevada State Class against all Defendants.

787. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et seq.* prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses,

benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

788.     In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Nevada State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Nevada State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Nevada State Class members did not and could not unravel Defendants' deception on their own.

789.     Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Nevada State Class.

790.     Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Nevada State Class. Defendants knew or should have known that their conduct violated the Nevada DTPA.

791.     Defendants owed Plaintiffs and the Nevada State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

792.     Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Nevada State Class.

793.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Nevada Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

794.    Defendants' violations present a continuing risk to the Nevada State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

795.    Nevada State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Nevada DTPA. All owners of the refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

## TWENTY-NINTH CAUSE OF ACTION

### (Violation of the New Hampshire Consumer Protection Act – N.H. Rev. Stat. § 358-A:1, *et seq.*)

*By Plaintiff Hargon, Individually and On Behalf of the New Hampshire Subclass*

796.    Plaintiff Hargon realleges and incorporates here by reference each of the foregoing paragraphs, and further allege as follows.

797.    Plaintiff Hargon brings this claim on behalf of himself and the New Hampshire State Class against all Defendants.

798.    The New Hampshire State Class and Defendants are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

799.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

800.    The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but . . . not limited to, the following: . . . (V) Representing that goods or services have . . . characteristics, . . . uses,

benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. § 358-A:2.

801.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiff and New Hampshire State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and New Hampshire State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiff and New Hampshire State Class members did not and could not unravel Defendants' deception on their own.

802.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiff and the New Hampshire State Class.

803.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the New Hampshire State Class. Defendants knew or should have known that their conduct violated the New Hampshire CPA.

804.    Defendants owed Plaintiffs and the New Hampshire State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

805.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiff and the New Hampshire State Class.

806.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the New Hampshire Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

807.    Defendants' violations present a continuing risk to the New Hampshire State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

808.    New Hampshire State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the New Hampshire CPA. All owners of the refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

## THIRTIETH CAUSE OF ACTION

**(Violation of the New Jersey Consumer Fraud Act – N.J. Stat. Ann § 56:8-1, *et seq*.)**

*By Plaintiffs Reeser and Purcell, Individually and On Behalf of the New Jersey Subclass*

809.    Plaintiffs Reeser and Purcell reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

810.    Plaintiffs Reeser and Purcell bring this claim on behalf of themselves and the New Jersey State Class against all Defendants.

811.    Plaintiffs and New Jersey State Class members and Defendants are "persons" under the New Jersey Consumer Fraud Act ("New Jersey CFA"), N.J. Stat. § 56:8-1(d).

812.    Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. §56:8-1(c), (e). Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

813.    The New Jersey CFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of

such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. § 56:8-2.

814.   In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and New Jersey State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and New Jersey State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and New Jersey State Class members did not and could not unravel Defendants' deception on their own.

815.   Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the New Jersey State Class.

816.   Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the New Jersey State Class. Defendants knew or should have known that their conduct violated the New Jersey CFA.

817.   Defendants owed Plaintiffs and the New Jersey State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

818.   Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the New Jersey State Class.

819.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the New Jersey Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

820.    Defendants' violations present a continuing risk to the New Jersey State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

821.    New Jersey State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the New Jersey CFA. All owners of the refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

822.    As a direct and proximate result of Defendants' violations of the New Jersey CFA, Plaintiffs and the New Jersey State Class have suffered injury-in-fact and/or actual damage in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, treble damages, an order enjoining Defendants' deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

### THIRTY-FIRST CAUSE OF ACTION
### (Violation of New York General Business Law § 349)
*By Plaintiffs McDonnell, Hetcher, and E. Mitchell, Individually and On Behalf of the New York Subclass*

823.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

824.    Plaintiffs McDonnell, Hetcher and E. Mitchell bring this claim on behalf of themselves and the New York State Class, under New York law as New York's General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. G.B.L. § 349(a).

825.    Defendants violated § 349 by engaging in deceptive acts and practices.

826.    Defendants engaged in this misconduct on a standard and routine basis, affecting a significant number of similarly situated customers-namely, all customers residing in New York who purchased said refrigerators.

827.    Defendants represented to Plaintiffs McDonnell, Hetcher and E. Mitchell and New York Subclass members that they were purchasing high-quality refrigerators that would last many years, when in fact they were selling defective refrigerators that had a short life-span.

828.    Defendants failed to disclose the defective nature of these refrigerators and as such misled customers into believing that they were purchasing long-lasting working refrigerators when in fact they were purchasing faulty and defective products.

829.    Defendants' practices are likely to mislead a reasonable consumer and therefore were materially misleading as Defendants' unfair or deceptive conduct caused Plaintiffs and the New York Subclass to overpay on refrigerators that lasted a fraction of the expected life of a refrigerator.

830.    Defendants' conduct alleged herein was knowing and willful.

831.    All New York Subclass members, including Plaintiffs McDonnell, Hetcher and E. Mitchell, suffered ascertainable losses that necessarily flowed directly from Defendants' fraud and deceit in their scheme to  sell defective refrigerators that were worth far less than the amount they were purchased for.

832.    Plaintiffs and the New York Subclass members seek actual damages or statutory damages, whichever is greater, treble damages, punitive damages and reasonable attorneys' fees.

### THIRTY-SECOND CAUSE OF ACTION

**Violation of New York General Business Law § 350**

*By Plaintiffs McDonnell, Hetcher, and E. Mitchell, Individually and On Behalf of the New York Subclass*

833.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

834.    Plaintiffs McDonnell, Hetcher and E. Mitchell bring this claim on behalf of themselves and the New York State Class against all Defendants.

835.    Defendants were engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA").

836.    The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a.

837.    Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by Defendants, or that through the exercise of reasonable care should have been known by Defendants, to be untrue or misleading to the New York State Class.

838.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and New York State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and New York State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and New York State Class members did not and could not unravel Defendants' deception on their own.

839.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the New York State Class.

840.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the New York State Class.

841.    Defendants' false advertising was likely to and did in fact deceive regulators and reasonable consumers, including the New York State Class, about the illegality and true characteristics of the refrigerators, the quality of Defendants' brand and the true value of the refrigerators.

842.    Defendants' violations of the NY FAA present a continuing risk to New York State Class members and to the general public. Defendants' deceptive acts and practices affect the public interest.

843.    The LG and Kenmore branded refrigerators do not perform as advertised, making them far less valuable than advertised.

844.    New York State Class members have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendants' false advertising in violation of the NY FAA.

845.    The New York State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York State Class members. Because Defendants' conduct was committed willingly and knowingly, New York State Class members are entitled to recover three times actual damages, up to $10,000.

846.    The New York State Class also seeks an order enjoining Defendants' false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

## THIRTY-THIRD CAUSE OF ACTION

**(Violation of the North Carolina Unfair and Deceptive Acts and Practices Act – N.C. Gen. Stat. § 75-1.1, *et seq*.)**

*By Plaintiffs Rallo, Jamal, Gordon, Owen Brooks and Kivlin, Individually and On Behalf of the North Carolina Subclass*

847.    Plaintiffs Rallo, Jamal, Gordon, Owen Brooks and Kivlin, reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

848.    Plaintiffs Rallo, Jamal, Gordon, Owen Brooks and Kivlin bring this claim on behalf of themselves and the North Carolina State Class against all Defendants.

849.    Plaintiffs and North Carolina State Class members are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("NCUDTPA").

850.    Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

851.    The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

852.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and North Carolina State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and North Carolina State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and North Carolina State Class members did not and could not unravel Defendants' deception on their own.

853.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the North Carolina State Class.

854.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the North Carolina State Class. Defendants knew or should have known that their conduct violated the NCUDTPA.

855.    Defendants owed Plaintiffs and the North Carolina State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were

manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

856.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the North Carolina State Class.

857.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the North Carolina Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

858.    Defendants' violations present a continuing risk to the North Carolina State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

859.    Plaintiffs and North Carolina State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the NCUDTPA. All owners of the subject refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

860.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the North Carolina State Class has been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available under N.C. Gen. Stat. § 75-16.

## THIRTY-FOURTH CAUSE OF ACTION

**(Violation of the Ohio Consumer Sales and Practices Act – Ohio Rev. Code § 1345.01, *et seq.*)**

*By Plaintiffs Boster, Stoflinsky and Kenyon, Individually and On Behalf of the Ohio Subclass*

861.    Plaintiffs Boster, Stoflinsky and Kenyon, reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

862.    Plaintiffs Boster, Stoflinsky and Kenyon bring this claim on behalf of themselves and the Ohio State Class against all Defendants.

863.    Defendants, Plaintiffs, and Ohio State Class members are "persons" within the meaning of Ohio Rev. Code § 1345.01(B). Defendants are "supplier[s]" as defined by Ohio Rev. Code § 1345.01(C).

864.    Plaintiffs and the Ohio State Class are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchase of the refrigerators with the defective parts installed in them are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

865.    Ohio Rev. Code § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Ohio CSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

866.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Ohio State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Ohio State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Ohio State Class members did not and could not unravel Defendants' deception on their own.

867.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Ohio State Class.

868.   Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Ohio State Class. Defendants knew or should have known that their conduct violated the Ohio CSPA.

869.   Defendants owed Plaintiffs and the Ohio State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

870.   Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Ohio State Class.

871.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Ohio Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

872.   Defendants' violations present a continuing risk to the Ohio State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

873.   Plaintiffs and North Carolina State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Ohio CSPA. All owners of the subject refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

874.   Pursuant to Ohio Rev. Code § 1345.09, Plaintiff and the Ohio State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, actual damages - trebled, and attorneys' fees, costs, and any other just and proper relief, to the extend available under the Ohio CSPA.

## THIRTY-FIFTH CAUSE OF ACTION

**(Violation of the Oklahoma Consumer Protection Act – Okla. Stat. Tit. 15 § 751, et seq.)**

*By Plaintiffs Marshall, Breedlove and Shriver, Individually and On Behalf of the Oklahoma Subclass*

875.    Plaintiffs Marshall, Breedlove and Shriver, reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

876.    Plaintiffs Marshall, Breedlove and Shriver bring this claim on behalf of themselves and the Oklahoma State Class against all Defendants.

877.    Defendants and the Oklahoma State Class are "persons" within the meaning of Okla. Stat. Tit. 15 § 752.1.

878.    Defendants engaged in "the course of [its] business" within the meaning of Okla. Stat. Tit. 15 § 752.3 with respect to the acts alleged herein.

879.    The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits, in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics . . ., uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." Okla. Stat. Tit. 753.

880.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Oklahoma State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Oklahoma State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Oklahoma State Class members did not and could not unravel Defendants' deception on their own.

881.     Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Oklahoma State Class.

882.     Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Oklahoma State Class. Defendants knew or should have known that their conduct violated the Oklahoma CPA.

883.     Defendants owed Plaintiffs and the Oklahoma State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

884.     Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Oklahoma State Class.

885.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Oklahoma Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

886.     Defendants' violations present a continuing risk to the Oklahoma State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

887.     Oklahoma State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Oklahoma CPA. All owners of the subject refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

888.   Pursuant to Okla. Stat. Tit. 15 § 761.1, the Oklahoma State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oklahoma CPA.

### THIRTY-SIXTH CAUSE OF ACTION

**(Violation of the Oregon Unlawful Trade Practices Act – Or. Rev. Stat. § 646.605, *et seq*.)**

*By Plaintiffs D. Nelson and Gilmer, Individually and On Behalf of the Oregon Subclass*

889.   Plaintiffs D. Nelson and Gilmer, reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

890.   Plaintiffs D. Nelson and Gilmer bring this claim on behalf of themselves and the Oregon State Class against all Defendants.

891.   Plaintiffs, Defendants, and the Oregon State Class are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

892.   Defendants are engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

893.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or deceptive acts conduct in trade or commerce . . . ." Or. Rev. Stat. § 646.608(1).

894.   In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Oregon State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Oregon State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Oregon State Class members did not and could not unravel Defendants' deception on their own.

895.   Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are

not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Oregon State Class.

896.   Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Oregon State Class. Defendants knew or should have known that their conduct violated the Oregon UTPA.

897.   Defendants owed Plaintiffs and the Oregon State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

898.   Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Oregon State Class.

899.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Oregon Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

900.   Defendants' violations present a continuing risk to the Oregon State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

901.   Oregon State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Oregon UTPA. All owners of the subject refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

902.   Pursuant to Or. Rev. Stat. § 646.638, the Oregon State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

## THIRTY-SEVENTH CAUSE OF ACTION

**(Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law – 73 P.S. § 201-1 *et seq.*)**

*By Plaintiffs Taylor, P. Martin, Tyger and Albertelli, Individually and On Behalf of Pennsylvania Subclass*

903.    Plaintiffs Taylor, P. Martin, Tyger and Albertelli, reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

904.    Plaintiffs Taylor, P. Martin, Tyger and Albertelli bring this claim on behalf of themselves and the Pennsylvania State Class against all Defendants.

905.    Plaintiffs, Defendants, and the Pennsylvania State Class are "persons" within the meaning of 73 P.S. § 201-2(2).

906.    Defendants engaged in "trade" or "commerce" within the meaning of 73 P.S. § 201-2(3).

907.    The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201 3.

908.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Pennsylvania State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Pennsylvania State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Pennsylvania State Class members did not and could not unravel Defendants' deception on their own.

909.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Pennsylvania State Class.

910.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Pennsylvania State Class. Defendants knew or should have known that their conduct violated the Pennsylvania UTPA.

911.    Defendants owed Plaintiffs and the Pennsylvania State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

912.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Pennsylvania State Class.

913.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Pennsylvania Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

914.    Defendants' violations present a continuing risk to the Pennsylvania State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

915.   Pennsylvania State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA. All owners of the subject refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

916.    As a direct and proximate result of Defendants' violations of the Pennsylvania UTPA, Pennsylvania State Class members have suffered injury-in-fact and/or actual damage.

917.   Pursuant to 73 P.S. § 201-9.2(a), Plaintiffs and the Pennsylvania State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

## THIRTY-EIGHTH CAUSE OF ACTION

### (Violation of the South Dakota Trade Practices and Consumer Protection Law – S.D.
### Codified Laws § 37-24-6)

*By Plaintiff Parks, Individually and On Behalf of the South Dakota Subclass*

918.    Plaintiff Parks, reallege and incorporates here by reference each of the foregoing paragraphs, and further allege as follows.

919.    Plaintiff Parks bring this claim on behalf of herself and the South Dakota State Class against all Defendants.

920.   Defendants and the South Dakota State Class are "persons" within the meaning of S.D. Codified Laws § 37-24-1(8).

921.    Defendants are engaged in "trade" or "commerce" within the meaning of S.D. Codified Laws § 37-24-1(13).

922.    The South Dakota Deceptive Trade Practices and Consumer Protection ("South Dakota CPA") prohibits "deceptive acts or practices, which are defined to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. Codified Laws § 37-24-6(1).

923.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiff and South Dakota State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and South Dakota State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiff and South Dakota State Class members did not and could not unravel Defendants' deception on their own.

924.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are

not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiff and the South Dakota State Class.

925.   Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the South Dakota State Class. Defendants knew or should have known that their conduct violated the South Dakota CPA.

926.   Defendants owed Plaintiff and the South Dakota State Class a duty to disclose the defective nature of these refrigerators as they possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

927.   Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiff and the South Dakota State Class.

928.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the South Dakota Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

929.   Defendants' violations present a continuing risk to the South Dakota State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

930.   South Dakota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the South Dakota CPA. All owners of the subject refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

931.   Pursuant to S.D. Codified Laws § 37-24-31, the South Dakota State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the South Dakota CPA.

## THIRTY-NINTH CAUSE OF ACTION

**(Violation of the Tennessee Consumer Protection Act – Tenn. Code Ann. § 47-18-101, *et seq.*)**

*By Plaintiffs Gilliland and Morse, Individually and On Behalf of Tennessee Subclass*

932.     Plaintiffs Gilliland and Morse, reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

933.     Plaintiffs Gilliland and Morse bring this claim on behalf of themselves and the Tennessee State Class against all Defendants.

934.   Tennessee State Class members are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2). Defendants are "person[s]" within the meaning of Tenn. Code § 47-18-103(9).

935.     Defendants are engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

936.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

937.     In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Tennessee State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Tennessee State Class members did not have access to the same information that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Tennessee State Class members did not and could not unravel Defendants' deception on their own.

938.     Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Tennessee State Class.

939.   Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Tennessee State Class. Defendants knew or should have known that their conduct violated the Tennessee CPA.

940.   Defendants owed Plaintiffs and the Tennessee State Class a duty to disclose the defective nature of these refrigerators as they   possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

941.   Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Tennessee State Class.

942.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Tennessee Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

943.   Defendants' violations present a continuing risk to the Tennessee State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

944.   Tennessee State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Tennessee CPA. All owners of the subject refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

945.   Pursuant to Tenn. Code § 47-18-109, the Tennessee State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, pursuant to § 47-18-109(a)(3), punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the Tennessee CPA.

**FORTIETH CAUSE OF ACTION**

**(Violation of the Deceptive Trade Practices Act – Tex. Bus. & Com. Code § 17.41,** *et seq.***)**

*By Plaintiffs Miller, Gerbo, Ward, Jordan, Johnson, Suleiman, McAnderson, M. Martin, Garcia, Hubbard, Cook, Smith, Lemus and Munsch, Individually and On Behalf of the Texas Subclass*

946.    Plaintiffs Miller, Gerbo, Ward, Jordan, Johnson, Suleiman, McAnderson, M. Martin, Garcia, Hubbard, Cook, Smith, Lemus and Munsch, reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

947.    Plaintiffs Miller, Gerbo, Ward, Jordan, Johnson, Suleiman, McAnderson, M. Martin, Garcia, Hubbard, Cook, Smith, Lemus and Munsch bring this claim on behalf of themselves and the Texas State Class against all Defendants.

948.    Plaintiffs and the Texas State Class are individuals, partnerships or corporations with assets of less than $25 million, *see* Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4). Defendants are "person[s]" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

949.    Defendants engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a).

950.    The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

951.    In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Texas State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Texas State Class members did not have access to the same information that

Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Texas State Class members did not and could not unravel Defendants' deception on their own.

952.   Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Texas State Class.

953.   Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Texas State Class. Defendants knew or should have known that their conduct violated the Texas DTPA.

954.   Defendants owed Plaintiffs and the Texas State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

955.   Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Texas State Class.

956.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Texas Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

957.   Defendants' violations present a continuing risk to the Texas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

958.   Texas State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of the subject refrigerators

suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

959.   Pursuant to Tex. Bus. & Com. Code § 17.50, the Texas State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

960.   Defendants have been on notice of the issues raised in this count and this Complaint by way of communications received from Plaintiffs and the Texas Class, as well as through the various prior lawsuits they have been a part of with regards to the same issue. Plaintiffs and the Texas State Class seek all damages and relief to which they are entitled.

## FORTY-FIRST CAUSE OF ACTION

### (Violation of the Virginia Consumer Protection Act – Va. Code Ann. § 59.1-196, *et seq.*)

*By Plaintiffs Mitchell and Schultz, Individually and On Behalf of the Virginia Subclass*

961.   Plaintiffs Mitchell and Schultz, reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

962.   Plaintiffs Mitchell and Schultz bring this claim on behalf of themselves and the Virginia State Class against all Defendants.

963.   Defendants and the Virginia State Class are "persons" within the meaning of Va. Code § 59.1-198.

964.   Defendants are "supplier[s]" within the meaning of Va. Code § 59.1-198. 2550. The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

965.   In the course of their business, Defendants concealed and suppressed material facts concerning the LG and Kenmore branded refrigerators. Plaintiffs and Virginia State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and Virginia State Class members did not have access to the same information

that Defendants possessed at the time they purchased the refrigerators. Plaintiffs and Virginia State Class members did not and could not unravel Defendants' deception on their own.

966.    Defendants thus violated the Act by, at minimum: representing that the LG and Kenmore branded refrigerators have characteristics, uses, benefits, and qualities which they do not have; and representing that they are of a particular standard, quality, and grade when they are not. Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead Plaintiffs and the Virginia State Class.

967.    Defendants intentionally and knowingly misrepresented material facts regarding the refrigerators with intent to mislead the Virginia State Class. Defendants knew or should have known that their conduct violated the Virginia CPA.

968.    Defendants owed Plaintiffs and the Virginia State Class a duty to disclose the defective nature of these refrigerators as they  possessed exclusive knowledge as they were manufacturing, selling, and distributing these refrigerators throughout the United States, and knew that they were not as durable as advertised.

969.    Defendants' concealment of the true defective nature of the compressors contained by these refrigerators was material to Plaintiffs and the Virginia State Class.

970.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Virginia Class, about the defective nature of these refrigerators, the quality of these refrigerators, and their true value.

971.    Defendants' violations present a continuing risk to the Virginia State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

972.    Virginia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Virginia CPA. All owners of the subject

refrigerators suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

973. Pursuant to Va. Code § 59.1-204(A)–(B), the Virginia State Class is entitled to the greater of actual damages or $500 for each Virginia State Class member, attorneys' fees, and costs. Because Defendants' actions were willful, Virginia State Class members should each receive the greater of treble damages or $1,000. *Id.*

### FORTY-SECOND CAUSE OF ACTION

**(Violation of the Washington Consumer Protection Act ("WCPA") – Wash. Rev. Code Ann. § 19.86.010, *et seq*.)**

***By Plaintiffs Koohpai, McDougal and Perkins, Individually and On Behalf of the Washington State Subclass***

974. Plaintiffs Koohpai, McDougal and Perkins, reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

975. Plaintiffs Koohpai, McDougal and Perkins assert this claim on behalf of themselves and the Washington State Subclass.

976. Plaintiffs Koohpai, McDougal and Perkins, the Washington Subclass, and all Defendants are "persons" under Wash. Rev. Code § 19.86.010(1).

977. Defendants acts or practices, as set forth above, occurred in the conduct of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

978. Washington law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or practices." Wash. Rev. Code §§ 19.86.020.

979. Defendants' acts and practices, described herein, are unfair and deceptive in violation of Washington law for the reasons stated in paragraphs 1 through 105, incorporated by reference, as if fully stated herein.

980.    By selling defective refrigerators with exclusive knowledge of the defect, and by failing to disclose the defect or honor warranty claims in good faith, Defendants acted unscrupulously in a manner that is substantially oppressive and injurious to consumers.

981.    Defendants committed deceptive acts and practices with the intent that consumers, such as Koohpai, McDougal and Perkins and Washington Subclass members, would rely upon Defendants' representations and omissions when deciding whether to purchase a Kenmore or LG branded refrigerator.

982.    Koohpai, McDougal, Perkins and Washington Subclass members suffered ascertainable loss as a direct and proximate result of Defendants' unfair and deceptive acts or practices. Had Koohpai, McDougal, Perkins and Washington Subclass members known that the Kenmore/LG refrigerators were defective, they would not have purchased these refrigerators or would have paid significantly less for one. Among other injuries, Koohpai, McDougal, Perkins and Washington Subclass members overpaid for their refrigerators, and their refrigerators suffered a diminution in value.

983.    Defendants' violations of the WCPA present a continuing risk to Koohpai, McDougal, Perkins, and Washington Subclass members, as well as to the general public. Defendants' unlawful acts and practices adversely affect the public interest.

984.    Under Wash. Rev. Code § 19.86.090, Koohpai, McDougal, Perkins and the Washington Subclass seek an order enjoining Defendants' unfair and deceptive acts or practices, providing for appropriate monetary relief, including trebled damages, and awarding reasonable attorney's fees and costs.

985.    In accordance with Wash. Rev. Code § 19.86.095, a copy of this Complaint has been served on the Attorney General of Washington.

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, pray for relief and judgment against Defendants as follows:

(a)     An order certifying the first Nationwide Class and Plaintiffs as Class Representatives and their counsel as Class Counsel;

(b)     An order certifying the second Nationwide Class and Plaintiffs as Class Representatives and their counsel as Class Counsel;

(b)     Awarding Plaintiffs and the proposed Class members actual or compensatory damages according to proof, as well as any consequential damages suffered as a result of Defendants' unlawful practices;

(c)     Awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

(d)     Awarding declaratory and injunctive relief as permitting by law or equity to individual Plaintiffs, including enjoining Defendants from continuing the unlawful practices set forth herein, and directing Defendants to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

(e)     Exemplary and punitive damages sufficient to punish and deter the Defendants and others from future wrongful practices;

(f)     Pre-judgment and post-judgment interest;

(g)     Any and all applicable statutory and civil penalties;

(g)     Awarding attorneys' fees and costs; and

(h)     Providing such further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury of all issues raised in this Complaint.

DATED: September 22, 2023          **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**

*/s/ Azar Mouzari*
Azar Mouzari, Esq.
Nilofar Nouri, Esq.
Attorneys for Plaintiffs

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court Central District of California by using the CM/ECF system on September 23, 2023.

I further certify that all participants in the case appear to have been registered CM/ECF users and that service should therefore be accomplished by the CM/ECF system via electronically mail to all counsel of record.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 23, 2023, in Los Angeles, California.

/s/ Nilofar Nouri
Nilofar Nouri

*PLAINTIFFS' FOURTH AMENDED COMPLAINT [CLASS-ACTION]*